1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

10

11 | LUXUL TECHNOLOGY INC.,

Case No. 14-CV-03656-LHK

12 |          Plaintiff,

**ORDER GRANTING IN PART AND**

13 |          v.

**DENYING IN PART MOTION TO**
**DISMISS**

14 | NECTARLUX, LLC, et al.,

Re: Dkt. No. 21

15 |          Defendants.

16

17          Plaintiff Luxul Technology Inc. ("Plaintiff" or "Luxul") brings this action against

18 Defendants Nectarlux, LLC, JKeeney Consulting, Inc., and James Keeney (collectively,

19 "Defendants"). Before the Court is Defendants' motion to dismiss. ECF No. 21. Plaintiff filed an

20 opposition. ECF No. 22. Defendants filed a reply. ECF No. 23. Having considered the

21 submissions of the parties, the record in this case, and the relevant law, and for good cause shown,

22 the Court hereby grants in part and denies in part Defendants' motion.

**I.      BACKGROUND**

24       **A.      Factual Background**

25          Plaintiff Luxul Technology Inc. is a California corporation with a principal place of

26

27

1

28

United States District Court
Northern District of California

business in Santa Clara, California. First Am. Compl. ("FAC"), ECF No. 19, ¶ 1. Defendant

NectarLux, LLC ("NectarLux") is a New York limited liability company with a principal place of

business in Syracuse, New York. *Id.* ¶ 2. Defendant JKeeney Consulting, Inc. ("JKeeney

Consulting") is a Florida corporation with a principal place of business in Philadelphia,

Pennsylvania. *Id.* ¶ 3. Defendant James Keeney ("Keeney") is an individual and a resident of

Pennsylvania. *Id.* ¶ 4.

Luxul is a producer of energy efficient light emitting diode ("LED") products. *Id.* ¶ 9.

Luxul's patented LED tube lamps, "EazyLux" are "true retrofit replacements" for fluorescent tube

lamps because Luxul's products do not require re-wiring as part of installation. *Id.* ¶ 11.

On April 6, 2014, Luxul entered into a written "Sales Representation and Marketing

Consulting Agreement" ("Agreement") with Defendant NectarLux. *Id.* ¶ 13.; *see* Declaration of

Adam Lilien submitted in support of Defendants' motion to dismiss, ECF No. 21, Exh. A.[1] Under

the Agreement, NectarLux served as Luxul's "exclusive, independent representative for the sale of

Luxul products" in certain regions, for certain customers. *Id.* Plaintiff was responsible for

maintaining manufacturing quality and a positive brand presence, working with NectarLux to

identify sales opportunities, delivering products to meet sales commitments, and managing partner

agreements. *Id.* ¶ 14; Agreement ¶ 1.a. As a general matter, Defendant NectarLux was responsible

for soliciting sales of Luxul products and managing sales accounts. Agreement ¶ 1. More

specifically, NectarLux was obligated to make good faith efforts to meet its sales commitments,

work with Luxul to accelerate sales, understand "deal flow," and establish factory and distribution

channels on the east coast. *Id.* ¶ 15; Agreement ¶ 1.a. NectarLux and Luxul were jointly obligated

---

[1] As Plaintiff's FAC references the terms of the Agreement between Plaintiff and Defendant NectarLux, the Court considers the actual Agreement as submitted by Defendants. *See Parrino v. FHP, Inc.*, 146 F.3d 699, 706 n.4 (9th Cir. 1988), *superseded by statute on other grounds*, (noting that where a "document is integral to the plaintiff's claims and its authenticity is not disputed," courts may properly consider the document on a motion to dismiss because the document has been incorporated into the complaint by reference); *see also* FAC ¶¶ 13–18, 45–53.

Case No.: 14-CV-03656-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

to "work together to ensure that Sales Commitments" were achieved and to meet regularly. Agreement ¶ 1.a.

The Agreement also provided for Luxul to disclose certain confidential information to NectarLux, including information relating to building science technologies, trade secrets, product design, manufacturing, pricing, marketing, distribution, business opportunities and relationships, industry experts, legal entities, and individuals. *Id.* ¶ 16. Under Section 3 of the Agreement, NectarLux agreed that Luxul was "the owner of all right, title, and interest in the Confidential information, including all tangible copies and . . . electronic versions thereof." *Id.* ¶ 17. NectarLux agreed that it would not disclose confidential information unless necessary to satisfy its obligations under the Agreement. *Id.* ¶ 4.

In April 2014, Dr. James Pan, Luxul's chief executive officer, and Adam Lilien, NectarLux's Managing Director of Nectar Energy, met with a potential manufacturer in New York. *Id.* ¶ 27. Luxul continued to negotiate directly with the New York manufacturer. *Id.* Luxul alleges that in July 2014, Lilien and Keeney contacted the same New York manufacturer to discuss alternative proposals and set up meetings with competing LED companies. *Id.* ¶ 28. Luxul further alleges that NectarLux and Keeney "made and continue to make false representations to actual and potential customers," regarding alleged legal problems faced by Luxul. *Id.* ¶ 29.

In June 2014, Lawrence Bisagni, Director of Marketing and Public Relations for Luxul, visited the LinkedIn profiles of Defendants Keeney and JKeeney Consulting. *Id.* ¶ 19. Bisagni observed that a document titled "NectarLux - HOA Whitepaper AG" was posted on JKeeney Consulting's profile, and that the document used several images that Luxul "uses to represent and promote its technology." *Id.* ¶ 20. Some of those images, including the "Easy 4-step Installation" graphic, are images copyrighted by Luxul Taiwan Inc., the parent company of Plaintiff. *Id.* ¶ 25. The documents also contained a statement by Pan about the LED technology. *Id.* ¶ 23. Plaintiff alleges that Defendants' use of Pan's image and quotation is misleading as to whether NectarLux

3

1    is responsible for the technological innovation behind the "EasyLux" LED tube lamps. *Id.* Bisangi

2    also observed that products and images identical to those on Luxul's website appeared on

3    NectarLux's website, but the "Luxul" brand name had been replaced with "Nectar." *Id.* ¶ 21.

4            On August 12, 2014, Luxul terminated the Agreement with NectarLux.

5            **B.    Procedural Background**

6            Plaintiff filed its original Complaint on August 12, 2014. ECF No. 1. Defendants filed a

7    motion to dismiss on September 26, 2014. ECF No. 15. Plaintiff filed a First Amended Complaint

8    ("FAC") pursuant to stipulation on October 31, 2014. ECF No. 19. Defendants filed an amended

9    motion to dismiss on November 21, 2014. ECF No. 21. Plaintiff filed its opposition on December

10   5, 2014, ECF No. 22. Defendants filed their reply on December 12, 2014. ECF No. 23.

**II.    LEGAL STANDARD**

**A.    Rule 12(b)(1)**

13           A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant

14   to Federal Rule of Civil Procedure 12(b)(1). A motion to dismiss for lack of subject matter

15   jurisdiction will be granted if the complaint on its face fails to allege facts sufficient to establish

16   subject matter jurisdiction. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th

17   Cir. 2003). If the plaintiff lacks standing under Article III of the U.S. Constitution, then the court

18   lacks subject matter jurisdiction, and the case must be dismissed. *See Steel Co. v. Citizens for a*

19   *Better Env't*, 523 U.S. 83, 101–02 (1998). In considering a Rule 12(b)(1) motion, the Court "is not

20   restricted to the face of the pleadings, but may review any evidence, such as affidavits and

21   testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v.*

22   *United States*, 850 F.2d 558, 560 (9th Cir. 1988). Once a party has moved to dismiss for lack of

23   subject matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of

24   establishing the court's jurisdiction, *see Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d

25   1115, 1122 (9th Cir. 2010), by putting forth "the manner and degree of evidence required" by

26

27                                                         4

     Case No.: 14-CV-03656-LHK
28   ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

1   whatever stage of the litigation the case has reached, *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

2   561 (1992); *see also Barnum Timber Co. v. Envtl. Prot. Agency*, 633 F.3d 894, 899 (9th Cir. 2011)

3   (at the motion to dismiss stage, Article III standing is adequately demonstrated through allegations

4   of "specific facts plausibly explaining" why the standing requirements are met).

**B.     Rule 12(b)(2)**

6        Where a defendant moves to dismiss a suit for lack of personal jurisdiction pursuant to

7   Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing that

8   jurisdiction is proper. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Where, as here,

9   the defendant's motion is based on written materials rather than an evidentiary hearing, the

10  plaintiff need only make a prima facie showing of jurisdictional facts to withstand a motion to

11  dismiss for lack of personal jurisdiction. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218,

12  1223 (9th Cir. 2011) (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127

13  (9th Cir. 2010)). At this stage of the proceeding, "uncontroverted allegations in plaintiff's

14  complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits

15  must be resolved in plaintiff's favor." *Brayton Purcell*, 606 F.3d at 1127 (internal quotation marks,

16  citations, and alterations omitted).

17  **C.     Rule 12(b)(6)**

18       Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an

19  action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell*

20  *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the

21  plaintiff pleads factual content that allows the court to draw the reasonable inference that the

22  defendant is liable for the misconduct alleged. The plausibility standard is not akin to a

23  'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

24  unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). For purposes

25  of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as

26

27

28

5

1   true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek*

2   *v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

3       Nonetheless, the Court need not accept as true allegations contradicted by judicially

4   noticeable facts, and the "[C]ourt may look beyond the plaintiff's complaint to matters of public

5   record" without converting the Rule 12(b)(6) motion into one for summary judgment. *Shaw v.*

6   *Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir.), *cert. denied*, 516 U.S. 964 (1995); *see Van Buskirk v.*

7   *Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Shwarz*, 234 F.3d at 435. Nor is the

8   Court required to "'assume the truth of legal conclusions merely because they are cast in the form

9   of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *W. Mining*

10  *Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and

11  unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355

12  F.3d 1179, 1183 (9th Cir. 2004) (internal quotation marks and citations omitted); *accord Iqbal*,

13  556 U.S. at 663–64.

14      **D.    Leave to Amend**

15      If the Court determines that the complaint should be dismissed, it must then decide whether

16  to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend

17  "should be freely granted when justice so requires," bearing in mind that "the underlying purpose

18  of Rule 15. . . [is] to facilitate decision on the merits, rather than on the pleadings or

19  technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation

20  marks omitted). Nonetheless, a court "may exercise its discretion to deny leave to amend due to

21  'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure

22  deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , [and]

23  futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC,* 629 F.3d 876, 892–93 (9th Cir.

24  2010) (alterations in original) (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

25

26

27

28

United States District Court
Northern District of California

6

## III.   DISCUSSION

Plaintiff Luxul alleges claims against Defendant NectarLux individually, and against Defendants NectarLux, Keeney, and JKeeney Consulting collectively. Against all Defendants, Plaintiff avers that Defendants falsely designated the origin of Luxul tube lamps and engaged in false advertising under the Lanham Act, 15 U.S.C. § 1125; engaged in unfair competition under California Business & Professions Code § 17200; engaged in false advertising under California Business & Professions Code § 17500; and infringed Plaintiff's copyrights under 17 U.S.C. § 104. *See generally* FAC (claims 1, 2, 5, 6, 7). Plaintiff further alleges claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and account stated against Defendant NectarLux. *See* FAC (claims 3, 4, 8).

In their motion to dismiss, Defendants contend that: (1) Plaintiff lacks standing under Article III; (2) Plaintiff lacks standing to assert claims under the Lanham Act; (3) the Lanham Act claims fail as a matter of law; (4) Plaintiff lacks standing under California's Unfair Competition Law ("UCL") and False Advertising Law ("FAL"); (5) the UCL claim fails as a matter of law; (6) the copyright infringement claim is insufficiently pled; (7) the breach of contract claim is insufficiently pled; (8) the account stated claim insufficiently pled; and (9) the Court lacks personal jurisdiction over Defendants Keeney and JKeeney Consulting. *See* Motion at i.

The Court begins by addressing Defendants' threshold argument that Plaintiff lacks standing to pursue this action under Article III.

### A.   Article III Standing

Defendants argue that Plaintiff has failed to allege an injury-in-fact, as required to satisfy the "case or controversy" requirement of Article III of the United States Constitution. *See Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013). To satisfy Article III standing, a plaintiff must allege: (1) injury-in-fact, e.g., the invasion of a legally protected interest, that is concrete and particularized, as well as actual or imminent; (2) that the injury is fairly traceable to the challenged

United States District Court
Northern District of California

7

action of the defendant; and (3) that the injury is redressable by a favorable ruling. *Monsanto Co.*
*v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010); *Friends of the Earth, Inc. v. Laidlaw Envtl.*
*Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). "The party invoking federal jurisdiction bears
the burden of establishing these elements . . . with the manner and degree of evidence required at
the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).
At the pleading stage, "[g]eneral allegations of injury may suffice . . . ." *Friends of the Earth*, 528
U.S. at 198.

In the instant case, Plaintiff has sufficiently alleged an injury-in-fact for Article III standing
purposes to survive a motion to dismiss. Plaintiff alleges the existence of an enforceable contract
between itself and Defendant NectarLux. FAC ¶ 46. NectarLux allegedly breached the contract by
altering Luxul products to bear the name "Nectar," displaying Luxul images without permission
and/or altering those images to misrepresent their source, misrepresenting Luxul technology and
products as belonging to Defendants, and selling or offering to sell Luxul products to customers
by "misappropriating the Luxul name and logo in order to profit from the sale directly." *Id.* ¶ 48.
NectarLux also allegedly falsely represented that Plaintiff had legal issues, and approached Luxul
customers with third-party products. *Id.* ¶¶ 50–51. While there was apparently no contract with
Defendants Keeney and JKeeney Consulting, Plaintiff alleges that Defendants collectively
engaged in the aforementioned wrongful conduct. As a result of NectarLux's alleged breaches,
and Defendants' actions, Plaintiff incurred monetary damages in the form of lost customers and
sales revenue, and damage to its reputation and brand. *Id.* ¶ 52. Plaintiff further alleges that
NectarLux owes Plaintiff $19,285.27 for invoices and purchase orders issued by Luxul. *See id.*
¶ 94.

The Court therefore concludes that Plaintiff has therefore alleged the invasion of a legal
right that has resulted in an actual concrete injury: lost customers, sales revenue, and outstanding
funds owed. At the motion to dismiss stage, these allegations are sufficient to show Plaintiff has

8

United States District Court
Northern District of California

1    suffered an injury-in-fact as called for by Article III's "case or controversy" requirement. *See*

2    *Friends of the Earth*, 528 U.S. at 198. Defendants do not dispute that Plaintiff has otherwise

3    sufficiently alleged causation and redressability.

4         In sum, the Court concludes Plaintiff has sufficiently alleged a concrete and particularized

5    injury at the pleading stage.

6         **B.      Lanham Act Claims**

7         The Court now turns to Plaintiff's Lanham Act claims for false designation of origin and

8    false advertising. Defendants contest whether Plaintiff has adequately alleged standing under the

9    Lanham Act or cognizable Lanham Act claims.

10        **1.      Standing**

11        Defendants argue that Plaintiff lacks standing under the Lanham Act because Plaintiff

12   cannot show commercial injury and because Defendants are not competitors. Plaintiff alleges

13   claims under both the "false designation of origin" prong of § 43 of the Lanham Act and the "false

14   advertising" prong of § 43 of the Lanham Act. *See* 15 U.S.C. § 1125(a).

15        "[D]ifferent causes of action alleged pursuant to the different subsections of 15 U.S.C.

16   § 1125(a) have different standing requirements." *Jack Russell Terrier Network of N. Cal. v. Am.*

17   *Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir. 2005). Under the "false association" prong of

18   § 43 of the Lanham Act, a plaintiff "need only allege commercial injury based upon the deceptive

19   use of a trademark or its equivalent to satisfy standing requirements." *Id.* The parties do not need

20   to be "competitors 'in the traditional sense.'" *Id.* A claim under the "false advertising" prong of

21   § 43(a) requires a plaintiff to show: (1) an "injury to a commercial interest in sales or business

22   reputation; (2) that is "proximately caused by the defendant's misrepresentations." *Lexmark Int'l,*

23   *Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1395 (2014). A plaintiff alleging

24   competitive injury under the "false advertising" prong "need only believe that he [or she] is *likely*

25   to be injured in order to bring a Lanham Act claim." *TrafficSchool.Com, Inc. v. Edriver Inc.*, 653

26

27                                             9

28

United States District Court
Northern District of California

1    F.3d 820, 825 (9th Cir. 2011).

2        As to the false designation of origin claim, Plaintiff alleges that Defendants'

3 misrepresentations regarding the source of the LED tube lamps resulted in harm to the

4 distinctiveness of Plaintiff's product, brand, goodwill, and reputation. FAC ¶¶ 37, 70. Plaintiff also

5 alleges that NectarLux replaced "Luxul" with "Nectar" on the actual goods themselves.[2] FAC

6 ¶ 36. Plaintiff further alleges the loss of potential customers and sales. Accordingly, Plaintiff has

7 alleged the likelihood of commercial injury based upon Defendants' misbranding of Luxul

8 products. *See TrafficSchool.Com*, 653 F.3d at 825. Defendants argue that the marketing materials

9 at issue were "created and used to sell Plaintiff's light bulbs, and to benefit Plaintiff." Mot. at 12.

10 That argument does not address whether Plaintiff has adequately pled the existence of commercial

11 injury; e.g., that as a result of Defendants' misbranding of Luxul products, Luxul has suffered lost

12 sales and damage to its brand.

13        Defendants also appear to contend that Plaintiff lacks standing to bring either the false

14 designation of origin or false advertising claims because Defendants are marketing consultants,

15 and the parties are therefore not competitors. Mot. at 13. However, under the false association

16 prong, the parties need not be direct competitors for a plaintiff to have standing. *See Am. Kennel*

17 *Club*, 407 F.3d at 1037. Moreover, the United States Supreme Court has recently held that a

18 plaintiff need not be a direct competitor with a defendant to bring a false advertising claim under

19 the Lanham Act. *See Lexmark*, 134 S. Ct. at 1392 ("It is thus a mistake to infer that because the

20 Lanham Act treats false advertising as a form of unfair competition, it can protect *only* the false-

21 advertiser's direct competitors."). At the pleading stage, a plaintiff must allege "an injury to a

22 commercial interest in sales or business reputation proximately caused by the defendant's

23

24 ─────────────────

[2] Defendants submitted a declaration from Adam Lilien, President of NectarLux, LLC, asserting

25 that NectarLux does not "design or manufacture" light bulbs and that NectarLux "has never sold a 'NectarLux' light bulb." However, the Court does not consider this evidence because this is a

26 motion to dismiss, not a motion for summary judgment. *See North Star Int'l. v. Arizona Corp. Com'n*, 720 F.2d 578, 581–82 (9th Cir. 1983).

27

Case No.: 14-CV-03656-LHK

28 ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

misrepresentations." *Id.* at 1395. Here, Plaintiff has alleged lost sales and profits, and damage to its reputation, as a result of Defendants' misbranding of Plaintiff's products, false advertising, and misrepresentations to third-parties regarding Plaintiff's alleged legal troubles. These allegations are sufficient to show commercial injury. *See id.* at 1395 ("[W]hen a party claims reputational injury from disparagement, competition is not required for proximate cause . . . .").

In support of their argument, Defendants also rely on *Marvelous Day Elec. Co. v. Holiday Bright Lights, Inc.*, 900 F. Supp. 2d 835 (N.D. Ill. 2012), *vacated in part on other grounds*, 2013 WL 2356008 (N.D. Ill. May 28, 2013). In *Marvelous*, the court concluded that the plaintiff lacked standing to bring a false advertising claim because it failed to allege it was a commercial competitor. In doing so, the *Marvelous* court relied on language from the Seventh Circuit's decision in *L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc*, 9 F.3d 561 (7th Cir. 1993). However, *L.S. Heath* was abrogated by the Supreme Court's decision in *Lexmark*. *See Lexmark*, 134 S. Ct. at 1392. As discussed above, whether a plaintiff has standing to bring a false advertising claim under the Lanham Act does not turn on whether the plaintiff is a competitor with the defendant, but instead requires a plaintiff to allege injury to a commercial interest and proximate cause. *Id.* at 1395. Here, the Court concludes that Plaintiff has sufficiently alleged standing under the Lanham Act for both its false designation of origin and false advertising claims.

## 2.      False Designation of Origin and False Advertising Claims

Defendants contend that Plaintiff's false designation of origin claim must be dismissed as a matter of law because Plaintiff fails to allege that Defendants removed Plaintiff's trademark from an actual product and that Defendants then sold the product. Mot. at 14.

To establish a claim for either trademark infringement or false designation of origin under § 43(a)(1)(A), 15 U.S.C. § 1125(a)(1)(A), a plaintiff must prove that the defendant (1) used in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or mistake, or to deceive, as to

11

1    sponsorship, affiliation, or the origin of the goods or services in question. See *Freecycle Network,*

2    *Inc. v. Oey*, 505 F.3d 898, 902–04 (9th Cir. 2007); *see also Int'l Order of Job's Daughters v.*

3    *Lindeburg & Co.*, 633 F.2d 912, 917 (9th Cir. 1980).

4           Defendants do not address whether Plaintiff has alleged the elements of a false designation

5    of origin claim, but instead characterize Plaintiff's claim as a "reverse passing off" claim.

6    "Reverse passing off" occurs when a defendant "misrepresents someone else's goods or services

7    as his [or her] own." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 27 n.1

8    (2003). Defendants argue that Plaintiff must show that Defendants physically removed the

9    "Luxul" trademark from the LED tube lamps and then sold the altered products. Mot. at 13 (citing

10   *Cleary v. News Corp.*, 30 F.3d 1255 (9th Cir. 1994); *Shaw v. Linheim*, 919 F.2d 1353 (9th Cir.

11   1990)). Defendants are correct that in this circuit, a reverse passing off claim requires the

12   alteration of a product and a subsequent sale. However, Plaintiff does allege that Defendants

13   replaced "Luxul" with "Nectar" on the actual goods and sold the goods to consumers. FAC ¶ 35–

14   37. That Defendants dispute the truthfulness of Plaintiff's allegations does not defeat Plaintiff's

15   claim on a motion to dismiss.

16          Moreover, Plaintiff also alleges that Defendants' alteration of the images of Luxul LED

17   tube lamps to read "Nectar" instead of "Luxul" is likely to cause confusion or to deceive as to the

18   affiliation of Luxul products with NectarLux and the origin of the LED tube lamps. FAC ¶¶ 36,

19   37. While these allegations do not fall neatly within a traditional reverse passing off claim,

20   Plaintiff has pled a plausible claim that potential purchasers of LED tube lamps may be deceived

21   by Nectar's misbranding of Luxul products. Plaintiff further alleges that this confusion negatively

22   affects the goodwill and value of Luxul's brand. Defendants again challenge the truthfulness of

23   Plaintiff's factual allegations regarding confusion, but at the motion to dismiss stage, the Court

24   construes Plaintiff's allegations in the most favorable light. *See Manzarek*, 519 F.3d at 1031.

25          Defendants also argue that their voluntary cessation of their marketing activities defeats

26

27                                                  12

28

United States District Court
Northern District of California

1    Plaintiff's likelihood of confusion argument, and cite *Think Computer Corp. v. Dwolla, Inc.*, No.

2    13-cv-02054-EJD, 2014 WL 1266213, at *3 (N.D. Cal. Mar. 24, 2014), in support of this

3    contention. In *Dwolla*, the plaintiff had voluntarily shut down its own business operations before

4    any of the alleged wrongful conduct by the defendant. *Id.* at *3. The plaintiff could not claim any

5    competitive injury because it was no longer doing business at the time the defendant allegedly

6    began selling a similar service. Here, in contrast, Plaintiff has not terminated its own business, and

7    alleges that Defendants' wrongful conduct resulted in lost customers, profits, and harm to the

8    value of its still-existing brand. The Court concludes Plaintiff has sufficiently alleged a claim for

9    false designation of origin under § 43 of the Lanham Act.

10    Defendants further contend that Plaintiff's false designation of origin claim is preempted

11    and barred under federal copyright law. In *Dastar*, the United States Supreme Court held that a

12    plaintiff may not use the Lanham Act to circumvent federal copyright and patent law. 539 U.S. at

13    37–38. At issue was a television series, "Crusade in Europe," based on General Eisenhower's

14    book by the same title. *Id.* at 26. The previously copyrighted television series had fallen into the

15    public domain when the rightsholder failed to renew the copyright. *Id.* Defendant Dastar took the

16    public domain television series and used it to create a much shorter series, "World War II

17    Campaigns," which it then packaged and sold as a Dastar produced product. *Id.* at 26–27. The

18    plaintiffs, including the rightsholders to the copyrighted book, alleged Dastar had engaged in

19    reverse passing off because Dastar had taken the plaintiffs' intellectual property, made some

20    changes, and then repackaged it without giving credit to plaintiffs. *Id.* at 27–28. At bottom, the

21    issue was whether Dastar's claim that it was the producer of "World War II Campaigns" was a

22    false designation of origin that was likely to cause confusion as to the origin of the goods. *Id.* at

23    31. To answer that question, the Supreme Court examined the statutory meaning of "origin," and

24    held that "origin" of "goods" as used in the Lanham Act refers to "the producer of the tangible

25    product sold." *Id.* at 31–32. The Supreme Court rejected plaintiffs' argument that for a

13

Case No.: 14-CV-03656-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

1    communicative product, "origin of goods" in § 43 must include the "creator of the content that the

2    physical item conveys," e.g., the author. *Id.* As Dastar was, in fact, the producer of the tangible

3    video tapes being sold in the marketplace, it could not be held liable under the Lanham Act for

4    failing to designate the origin of the intellectual property embodied by its video series.

5           Here, Defendants' reliance on *Dastar* is misplaced. The gravamen of Plaintiff's claim as to

6    the digital image alteration is that Defendants' marketing materials falsely designate Defendants as

7    the source of the LED tube lamps for sale, instead of Plaintiff. Plaintiff contends that Defendants'

8    use of marketing materials that have replaced "Luxul" with "Nectar," falsely designates the origin

9    of the goods pictured, the LED tube lamps, such that it is likely to cause consumer confusion.

10   Defendants contend that they are the "origin" of the marketing materials. However, the "good" at

11   issue is the LED tube lamp pictured in the marketing materials, not the marketing materials

12   themselves. Plaintiff does not allege consumer confusion as to the origin of the marketing

13   materials, but rather the origin of the LED tube lamps. Unlike in *Dastar*, where the defendant

14   independently created a tangible good to sell and was therefore the "origin" of the "good" being

15   sold, here Defendants do not and cannot contend that they are the "origin" of the LED tube lamps.

16          Moreover, to the extent Defendants rely on *Dastar* and the Ninth Circuit's decision in

17   *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008), to contend that

18   Plaintiff cannot allege both copyright and Lanham Act claims, Defendants are mistaken. In

19   *Sybersound*, the Ninth Circuit held that the Lanham Act could not be construed so broadly as to

20   allow plaintiffs to functionally bring copyright infringement actions against competitors, despite

21   the plaintiffs having no right to bring such an action under copyright law. *Id.* at 1144. As in

22   *Dastar*, allowing such a broad Lanham Act claim would have allowed plaintiffs to circumvent

23   copyright law: in *Dastar* it was the expiration of copyright protection, and in *Sybersound* it was

24   the lack of third-party standing to challenge copyright infringement. *Dastar*, 539 U.S. at 233–34;

25   *Sybersound*, 517 F.3d at 1144. Here, in contrast, Defendants identify no such conflict between the

*United States District Court*
*Northern District of California*

14

1   scope of Plaintiff's Lanham Act claims and copyright law. Moreover, at the pleading stage, the

2   Court is not persuaded that Plaintiff's Lanham Act claims are precluded merely because Plaintiff

3   also alleges copyright infringement.

4          With regards to Plaintiff's false advertising claim under § 43(a), Defendants argue that

5   Plaintiff has failed to allege the elements of a false advertising claim. A claim for false advertising

6   under § 43 requires that a plaintiff show that (1) a statement made in an advertisement is false or

7   misleading; (2) that "it actually deceives or has the tendency to deceive a substantial segment of its

8   audience"; (3) that it is "likely to influence purchasing decisions"; and (4) that the "plaintiff has

9   been or is likely to be injured by the false advertisement." *TrafficSchool.com*, 653 F.3d at 828–29.

10  In the FAC, Plaintiff alleges that Defendant falsely claimed that the "Nectar product is UL

11  certified with the intent to induce prospective customers of Luxul to purchase Defendant's product

12  in lieu of Luxul's product." FAC ¶ 62. The remainder of Plaintiff's allegations are bare recitations

13  of the elements of a false advertising claim, bereft of any factual allegations.[3] *See* FAC ¶¶ 63–70.

14  While the Court takes as true Plaintiff's factual allegations on a motion to dismiss, mere

15  "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to

16  dismiss." *Adams*, 355 F.3d at 1183. However, as it is possible that Plaintiff could amend its

17  complaint to add sufficient factual allegations to support its claim, the Court grants Plaintiff leave

18  to amend its false advertising claim.

19         In sum, the Court denies Defendants' motion to dismiss Plaintiff's false designation of

20  origin claim. The Court grants Defendants' motion to dismiss Plaintiff's false advertising claim.

21

22  _____

23  [3] Plaintiff argues for the first time in its opposition that Defendants' digital alteration of the images
    of the LED tube lamps to read "Nectar" rather than "Luxul" constitutes false advertisement. While
    that theory is alleged under Plaintiff's false designation of origin claim, that theory is not alleged

24  as part of Plaintiff's false advertising claim. *See* FAC ¶¶ 62–69 (mentioning only the UL
    certification claim). As this theory of false advertising is not alleged in the FAC, the Court

25  declines to entertain it for the first time as part of Plaintiff's opposition to Defendants' motion to
    dismiss, as Defendants have not yet had an opportunity to respond to this iteration of Plaintiff's

26  claim.  *See Provencio v. Vazquez*, 258 F.R.D. 626, 639 (E.D. Cal. 2009).

15

27  Case No.: 14-CV-03656-LHK

28  ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

1

### C.     UCL and FAL Claims

2        Plaintiff alleges that Defendants violated California Business & Professions Code § 17200

3   by engaging in "unlawful and/or unfair" business practices. More specifically, Plaintiff contends

4   that Defendants acted wrongfully by rebranding Luxul LED tube lamps as "Nectar" products and

5   wrongfully representing to third-parties that Luxul's business and products were affected by false

6   legal issues.

7        Defendant makes two arguments: (1) that Plaintiff has failed to allege "lost money or

8   property" as required to show standing under the UCL; and (2) that Plaintiff has failed to

9   adequately plead either an unlawful or unfair UCL claim. The Court addresses each argument

10  below.

11

### 1.     UCL and FAL Standing

12        The UCL broadly prohibits "any unlawful, unfair or fraudulent business act or practice."

13  Cal. Bus. & Prof. Code § 17200. In order to have standing to bring a claim under the UCL or FAL,

14  a plaintiff must demonstrate that she "suffered injury in fact and [ ] lost money or property as a

15  result of the unfair competition." Cal. Bus. & Prof. Code § 17204; *Kwikset Corp. v. Superior*

16  *Court*, 51 Cal. 4th 310 (Cal. 2011). Defendants do not appear to contest that Plaintiff has alleged

17  injuries in the form of lost potential sales as a result of Defendants' alleged wrongful conduct.

18        Instead, Defendants argue that if a "private plaintiff has no claim for restitution . . . it lacks

19  standing" under the UCL. Mot. at 17 (citing *Walker v. Geico Gen. Ins. Co.*, 558 F.3d 1025 (9th

20  Cir. 2009); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (Cal. 2003)).

21  However, these cases pre-date the California Supreme Court's decision in *Kwikset Corp. v.*

22  *Superior Court*. In *Kwikset*, the California Supreme Court held that "the standards for establishing

23  standing under section 17204 and eligibility for restitution under section 17203 are wholly

24  distinct." 51 Cal. 4th at 335–36. Citing *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758 (Cal. 2010), the

25  *Kwikset* court explained that Defendants' argument that a restitution claim is required for standing

26

27

28

Case No.: 14-CV-03656-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

1    "conflates the issue of standing with the issue of the remedies to which a party may be entitled.

2    That a party may ultimately be unable to prove a right to damages (or, here, restitution) does not

3    demonstrate that it lacks standing to argue for its entitlement to them." *Kwikset*, 51 Cal. 4th at 336.

4    Here, Plaintiff has alleged an economic injury in the form of lost customers and sales revenue. *See*

5    *id.* at 336–37 (providing examples). That is sufficient to satisfy standing under the UCL.

6                          **2.     Unlawful and Unfair UCL Claims**

7            California's UCL provides a cause of action for business practices that are (1) unlawful,

8    (2) unfair, or (3) fraudulent. Cal. Bus. & Prof. Code § 17200. The UCL's coverage is "sweeping,"

9    and its standard for wrongful business conduct "intentionally broad." *In re First Alliance Mortg.*

10   *Co.*, 471 F.3d 977, 995 (9th Cir. 2006) (citing *Cel-Tech Commc'ns., Inc. v. L.A. Cellular Tel. Co.*,

11   20 Cal. 4th 163 (1999)). The unlawful prong of the UCL "borrows violations of other laws and

12   treats them as unlawful practices," which the UCL then "makes independently actionable." *Cel-*

13   *Tech*, 20 Cal. 4th at 180 (internal quotation marks and citations omitted). A business practice

14   violates the unfair prong of the UCL if it is contrary to "established public policy or if it is

15   immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs

16   its benefits." *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (2006). In determining

17   whether a business practice is unfair under this approach, California courts balance the "impact on

18   its alleged victim" against "the reasons, justifications, and motives of the alleged wrongdoer." *Id.*

19           The Court finds that Plaintiff has sufficiently alleged a UCL claim under the unlawful

20   prong. Defendants' argument assumes that Plaintiff is unable to allege a Lanham Act claim. As the

21   Court has denied Defendants' motion to dismiss with respect to Plaintiff's false designation of

22   origin claim, Plaintiff has sufficiently alleged a UCL claim. *See Cel-Tech*, 20 Cal. 4th at 180.

23           The Court similarly concludes that Plaintiff has alleged a UCL claim under the unfair

24   prong. Plaintiff alleges that Defendant "wrongfully and unfairly represented to third parties that

25   Luxul's business and/or products are affected by legal issues that do not exist." FAC ¶ 42. More

26                                           17

27   Case No.: 14-CV-03656-LHK

28   ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

specifically, Plaintiff avers that Defendants made representations to actual and potential customers, including a "potential customer in California," regarding an alleged patent action against Luxul in Taiwan. *Id.* ¶ 29. Under the "sweeping" coverage of the UCL, a practice does not need to be unlawful to be unfair. *See In re First Alliance Mortg. Co.*, 471 F.3d at 995. Rather, the Court must balance "the impact" of Defendants' alleged wrongful conduct on Plaintiff against Defendants' justifications. Here, Plaintiff has adequately pled that Defendants' representations have resulted in lost customers and damaged the value of Plaintiff's brand. Defendants offer no justifications, and certainly none that would defeat Plaintiff's claim as a matter of law at the pleading stage.

In sum, the Court concludes that Plaintiff has adequately alleged UCL claims under both the unfair and unlawful prongs.

### D.   Copyright Claims

Plaintiff alleges that Defendants created unauthorized derivative works based on Plaintiff's copyrighted images. Defendants raise two arguments: (1) that statutory damages are unavailable as a matter of law; and (2) that Plaintiff has failed to allege a plausible copyright infringement claim.

Defendants are correct that Plaintiff has pled facts precluding statutory damages under 17 U.S.C. § 504. Under 17 U.S.C. § 504(a) and (c), a copyright owner may elect to recover statutory damages instead of actual damages and profits. Under § 412(2), statutory damages are limited to instances where the copyrighted work was registered *prior* to commencement of the infringement, unless the work was registered within three months of first publication. *See Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 699 (9th Cir. 2008). Defendants note that Plaintiff alleges in the FAC that Defendants used Plaintiff's copyrighted materials in June 2014. Mot. at 18; FAC ¶ 19. Moreover, in Plaintiff's original Complaint, Plaintiff alleged that it registered its copyrights in July 2014, one month after Defendants' alleged infringement. *See* ECF No. 1, ¶ 24. Plaintiff does not argue that it registered these works within three months of first publication and concedes that

18

1   it cannot seek statutory damages under § 412.

2         Defendants further argue that Plaintiff has failed to allege actual damages. To state a claim

3   for copyright infringement, a plaintiff must allege "(1) ownership of a valid copyright, and (2)

4   copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tele.*

5   *Serv. Co.*, 499 U.S. 340, 361 (1991). Plaintiff alleges that the owner of the copyrights at issue,

6   Luxul Taiwan, Inc., has assigned all rights in the copyrighted works to Plaintiff. FAC ¶ 82.

7   Plaintiff further alleges that Defendants created unauthorized derivative works that utilize either

8   all of, or nearly all of the underlying works. FAC ¶¶ 21–26, 85. Defendants do not contest these

9   allegations, but instead argue that Plaintiff has failed to allege any actual damages from the alleged

10  copyright infringement. Mot. at 19. More specifically, Defendants argue that because NectarLux

11  was marketing on behalf of Plaintiff's products, any use of Plaintiff's copyrighted works was to

12  Plaintiff's benefit. *Id.* Whether or not this is the case, the Court concludes that Plaintiff has

13  sufficiently alleged ownership of a valid copyright and infringement. Defendants may put forth a

14  defense based on an implied license, but that does not go to the plausibility of Plaintiff's claim on

15  a motion to dismiss.[4]

16        In sum, the Court concludes that while Plaintiff has pled itself out of a statutory damages

17  claim, Plaintiff has sufficiently alleged a claim for copyright infringement.

18        **E.      Breach of Contract**

19        Plaintiff alleges breach of contract and breach of implied covenant of good faith and fair

20  dealing claims against Defendant NectarLux. NectarLux contests whether Plaintiff has sufficiently

21

22  _____

23  [4] Defendants have submitted a screenshot showing that Plaintiff's Marketing Director, Bisigani, "liked" Keeney's LinkedIn profile page. *See* ECF No. 21, Exh. B. The Court concludes that

24  Exhibit B may appropriately be considered on a motion to dismiss as Plaintiff attached a portion of Keeney's LinkedIn profile page as an exhibit to the FAC. *See, e.g.*, *Ramanujam v. Reunion*

25  *Mortg., Inc.*, 2010 WL 668036, at *2 (N.D. Cal. Feb. 19, 2010). Defendants contend that Bisigani's "liking" of Keeney's LinkedIn profile page somehow defeats Plaintiff's copyright

26  infringement claim. However, Defendants cite no authority for this proposition, and the Court finds this argument to be unpersuasive.

27

28

United States District Court
Northern District of California

1    alleged damages and a material breach of the agreement between NectarLux and Plaintiff.

2        Under California law, to state a claim for breach of contract a plaintiff must plead "the

3    contract, plaintiffs' performance (or excuse for nonperformance), defendant's breach, and damage

4    to plaintiff therefrom." *Gautier v. General Tel. Co.*, 44 Cal. Rptr. 404, 407 (Ct. App. 1965). To

5    establish contractual damages, a plaintiff must establish "appreciable and actual damage."

6    A*guilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000); *Patent Scaffolding*

7    *Co. v. William Simpson Const. Co.*, 64 Cal. Rptr. 187 (Ct. App. 1967) ("A breach of contract

8    without damage is not actionable."). Nominal damages, speculative harm, or threat of future harm

9    do not suffice to show legally cognizable injury. *See Aguilera*, 223 F.3d at 1015; *see also Ruiz v.*

10   *Gap, Inc.*, 622 F. Supp. 2d 908, 917 (N.D. Cal. 2009).

11        In the instant case, Plaintiff alleges the existence of a valid, written contract. FAC ¶ 13.

12   According to Plaintiff, NectarLux breached the Agreement by altering Luxul's product to bear the

13   name "Nectar" without permission, misrepresenting Luxul technology as developed,

14   manufactured, and branded by NectarLux, misusing confidential information Plaintiff disclosed to

15   NectarLux to poach a potential customer, and approaching Plaintiff's customers with offers to sell

16   third-party products. FAC ¶¶ 29, 33, 48–50; Opp. at 12–13. As a result of these alleged breaches,

17   Plaintiff avers that that Plaintiff lost potential sales and customers and damage to the value of its

18   brand. FAC ¶¶ 28–29, 52. Plaintiff further alleges that it is entitled to attorney's fees pursuant to a

19   provision of the Agreement. *Id.* ¶ 53. Defendant NectarLux again contests the veracity of

20   Plaintiff's allegations, including whether NectarLux marketed to Plaintiff's customers. These

21   factual disputes are not relevant in determining whether Plaintiff has alleged sufficient facts to

22   establish plausible claims for breach of contract and the implied covenant of good faith and fair

23   dealing. Taking Plaintiff's factual allegations as true, the Court concludes that Plaintiff has

24   adequately alleged claims for breach of contract and breach of the implied covenant of good faith

25   and fair dealing. *See Manzarek*, 519 F.3d at 1031.

26

27

28

United States District Court
Northern District of California

20

Case No.: 14-CV-03656-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

1

2

### F.      Account Stated

Plaintiff's final claim against Defendant NectarLux is for a claim for account stated. "An

3  account stated is an agreement, based on prior transactions between the parties, that the items of an

4  account are true and that the balance struck is due and owing." *Maggio, Inc. v. Neal*, 196 Cal.

5  App. 3d 745, 752 (Ct. App. 1987) (citation omitted). "An account stated need not cover all the

6  dealings or claims between the parties. There may be a partial settlement and account stated as to

7  some of the transactions." *Gleason v. Klamer*, 103 Cal. App. 3d 782, 790 (Ct. App. 1980) (citing

8  C*al. Milling Corp. v. White*, 229 Cal. App. 2d 469, 477 (Ct. App. 1964)). There are three essential

9  elements of a claim for account stated: "(1) previous transactions between the parties establishing

10  the relationship of debtor and creditor; (2) an agreement between the parties, express or implied,

11  on the amount due from the debtor to the creditor; (3) a promise by the debtor, express or implied,

12  to pay the amount due." *Zinn v. Fred R. Bright Co.*, 271 Cal. App. 2d 597, 600 (Ct. App. 1969).

13  NectarLux offers a single sentence of argument that Plaintiff's claim for account stated

14  should be dismissed because the FAC "does not contain any of the requisite allegations

15  necessary." Mot. at 21. Plaintiff alleges that "[d]uring their business relationship, NectarLux

16  placed orders for LED lighting tubes with Luxul. Luxul issued purchase orders and invoices . . .

17  [and] shipped the LED lighting tubes to NectarLux for distribution." FAC ¶ 93. Plaintiff further

18  alleges that NectarLux has received the invoices and purchase orders but has failed to satisfy or

19  otherwise object to the outstanding invoices and pay amounts due to Luxul in the amount of

20  $19,285.27. *Id.* ¶¶ 94–95. In light of Defendant's conclusory argument and Plaintiff's factual

21  allegations, the Court concludes that Plaintiff has sufficiently pled a claim for an account stated.

22  *See, e.g.*, *Maggio*, 196 Cal. App. 3d at 753 ("When a statement is rendered to a debtor and no

23  reply is made in a reasonable time, the law implies an agreement that the account is correct as

24  rendered.").

25  The Court therefore denies Defendant NectarLux's motion to dismiss Plaintiff's account

26

21

27

28

United States District Court
Northern District of California

1    stated claim.

2        **G.        Personal Jurisdiction over Defendants Keeney and JKeeney Consulting**

3        Defendants Keeney and JKeeney Consulting move to dismiss Plaintiff's claims against

4    them under Rule 12(b)(2). Keeney and JKeeney Consulting contend that Plaintiff has failed to

5    allege sufficient facts supporting this Court's exercise of personal jurisdiction. Defendant JKeeney

6    Consulting is a Florida corporation with a principal place of business in Pennsylvania, and Keeney

7    is a resident of Pennsylvania.

8        To determine the propriety of asserting personal jurisdiction over a nonresident defendant,

9    the Court examines whether such jurisdiction is permitted by the applicable state's long-arm

10   statute and comports with the demands of federal due process. *Harris Rutsky & Co. Ins. Servs.,*

11   *Inc. v. Bell & Clements, Ltd.*, 328 F.3d 1122, 1128–29 (9th Cir. 2003). Because California's long-

12   arm statute, Cal. Civ. Proc. Code § 410.10, is coextensive with federal due process requirements,

13   the jurisdictional analyses under state law and federal due process are the same. *See* Cal. Civ.

14   Proc. Code § 410.10 ("[A] court of this state may exercise jurisdiction on any basis not

15   inconsistent with the Constitution of this state or of the United States."); *Mavrix Photo*, 647 F.3d

16   at 1223. For a court to exercise personal jurisdiction over a nonresident defendant consistent with

17   due process, that defendant must have "certain minimum contacts" with the relevant forum "such

18   that the maintenance of the suit does not offend 'traditional notions of fair play and substantial

19   justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311

20   U.S. 457, 463 (1940)). In addition, "the defendant's 'conduct and connection with the forum State'

21   must be such that the defendant 'should reasonably anticipate being haled into court there.'" *Sher*

22   *v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) (quoting *World-Wide Volkswagen Corp. v.*

23   *Woodson*, 444 U.S. 286, 297 (1980)).

24       A court may exercise either general or specific jurisdiction over a nonresident defendant.

25   *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 473 (9th Cir. 1995). General jurisdiction exists where a

26

27                                                          22

28   Case No.: 14-CV-03656-LHK
     ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

1  nonresident defendant's activities in the state are "continuous and systematic" such that said

2  contacts approximate physical presence in the forum state. *See Schwarzenegger v. Fred Martin*

3  *Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (internal quotation marks and citation omitted).

4  Where general jurisdiction is inappropriate, a court may still exercise specific jurisdiction where

5  the nonresident defendant's "contacts with the forum give rise to the cause of action before the

6  court." *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001).

7          Plaintiff does not claim that the Court has general jurisdiction over Defendants Keeney and

8  JKeeney Consulting; rather, Plaintiff argues only for specific jurisdiction. To determine whether a

9  defendant's contacts with the forum state are sufficient to establish specific jurisdiction, the Ninth

10  Circuit employs a three-part test:

11          (1) The non-resident defendant must purposefully direct his [or her] activities or
          consummate some transaction with the forum or resident thereof; or perform some
12          act by which he [or she] purposefully avails him [or her]self of the privilege of
          conducting activities in the forum, thereby invoking the benefits and protections of
13          its laws;

14          (2) the claim must be one which arises out of or relates to the defendant's forum-
          related activities; and
15

16          (3) the exercise of jurisdiction must comport with fair play and substantial justice,
          i.e. it must be reasonable.
17

18  *Schwarzenegger*, 374 F.3d at 802 (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).

19  Plaintiff bears the burden of satisfying the first two prongs. *Sher*, 911 F.2d at 1361. If Plaintiff

20  does so, then the burden shifts to Defendants to "set forth a 'compelling case' that the exercise of

21  jurisdiction would not be reasonable." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066,

22  1076 (9th Cir. 2011) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 47–78 (1985)).

23          **1.      Purposeful Availment/Purposeful Direction**

24          The first prong is satisfied by either purposeful availment or purposeful direction. *Brayton*

25  *Purcell*, 606 F.3d at 1128. For suits sounding in contract, courts typically apply the "purposeful

26  availment" test, which asks whether the defendant has "performed some type of affirmative

                                            23

27

28

United States District Court
Northern District of California

1  conduct which allows or promotes the transaction of business within the forum state.'" *Sher*, 911

2  F.2d at 1361 (quoting *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988)). By

3  contrast, for cases involving tortious conduct, courts most often employ a purposeful direction

4  analysis, which asks whether the defendant has "'purposefully direct[ed] his [or her] activities at

5  the forum state, applying an "effects" test that focuses on the forum in which the defendant's

6  actions were felt, whether or not the actions themselves occurred within the forum.'"

7  *CollegeSource*, 653 F.3d at 1077 (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d

8  1199, 1206 (9th Cir. 2006) (en banc)). Here, Plaintiff claims a type of intentional tort, alleging that

9  Defendants Keeney and JKeeney Consulting knowingly committed copyright infringement and

10  unfair competition under the Lanham Act, and thus purposeful direction analysis is applicable. *See*

11  *Brayton Purcell*, 606 F.3d at 1128 (characterizing copyright infringement as a tort).

12       The Ninth Circuit evaluates purposeful direction using the three-part "*Calder*-effects" test.

13  *See Schwarzenegger,* 374 F.3d at 803; *see also Calder v. Jones,* 465 U.S. 783 (1984). Under this

14  test, "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at

15  the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum

16  state." *Yahoo! Inc.*, 433 F.3d at 1206 (internal quotation marks omitted).

17       In the instant case, the "intentional act" element is satisfied as Plaintiff alleges that

18  Defendants Keeney and JKeeney Consulting committed an intentional act when they used

19  Plaintiff's copyrighted works on their LinkedIn profiles. FAC ¶¶ 19–26, 86. Second, Plaintiff has

20  sufficiently alleged "individualized targeting" to satisfy the requirement "express aiming"

21  requirement. Defendants are correct that "[i]t is beyond dispute in this circuit that maintenance of

22  a passive website alone cannot satisfy the express aiming prong." *Brayton Purcell*, 606 F.3d at

23  1128 (citing *Holland Am. Line Inc. v. Warsila n. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007)).

24  Here, however, Plaintiff further alleges that Defendants Keeney and JKeeney Consulting engaged

25  in willful copyright infringement targeted at Plaintiff. *See Brayton Purcell*, 606 F.3d at 1128.

26

27

28

24

United States District Court
Northern District of California

Plaintiff alleges that Keeney and JKeeney Consulting used Plaintiff's copyrighted works in order to solicit sales for their own benefit, or for the benefit of third-party light producers. Additionally, Plaintiff further argues that Defendants Keeney and JKeeney Consulting had actual knowledge of Plaintiff's interest in marketing LED tube lamps to its customers, and that they made false representations to a potential customer in California regarding Plaintiff's alleged legal problems. Opp. at 17–18; FAC ¶ 29. These allegations are sufficient to show that Defendants Keeney and JKeeney Consulting committed an intentional act, expressly aimed at California, that caused harm in California. *See Brayton Purcell*, 606 F.3d at 1128 (holding that "express aiming" was satisfied where defendant "individually targeted [the plaintiff] by making commercial use of [the plaintiff's] copyrighted material for the purpose of competing with [the plaintiff]"); *see also Panavision, Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1319–24 (9th Cir. 1998).

Defendants cite *Boschetto* and *Cybersell, Inc. v. Cybersell, Inc.*, 1330 F.3d 414 (9th Cir. 997), in support of their argument that this Court lacks personal jurisdiction over Keeney and JKeeney Consulting. However, *Boschetto* is inapposite. The personal jurisdiction question in *Boschetto* turned on whether the defendants had purposefully availed themselves of the privilege of doing business in California based on a single contract action. *See* 539 F.3d at 1017 (discussing the single sale of a vehicle using eBay). Here, in contrast, Plaintiff alleges that Defendants Keeney and JKeeney Consulting are subject to this Court's jurisdiction based on tortious conduct, including alleged conduct that involved disparaging Plaintiff to a potential California customer. This conduct also renders *Cybersell* distinguishable. In *Cybersell*, "there was not evidence that the defendant even knew of the existence of plaintiff." *Brayton Purcell*, 606 F.3d at 1128. Here, as in *Brayton Purcell*, Plaintiff alleges that Defendants Keeney and JKeeney Consulting knew of Plaintiff's existence, targeted its business, and directly competed with Plaintiff for customers.

### 2.     Arising Out of or Relating to Forum-Related Activities

The second prong of the test for specific jurisdiction requires that "the claim asserted in the

25

United States District Court
Northern District of California

litigation arises out of the defendant's forum related activities." *Panavision Int'l,* 141 F.3d at 1322. This requires a showing of "but for" causation. *Id.* Here, the Court finds that "but for" Defendants' alleged copyright infringement and disparagement, Plaintiff would not have been injured in California. *See id.* Accordingly, the second requirement for specific jurisdiction is satisfied. Plaintiff has therefore established a prima facie case of personal jurisdiction over Defendants.

### 3. Reasonableness

Finally, the Court must consider whether it is reasonable to exercise personal jurisdiction over Defendants. An otherwise valid exercise of specific jurisdiction is presumed reasonable, unless defendants "'present a *compelling case* that the presence of some other considerations would render jurisdiction unreasonable.'" *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995) (quoting *Burger King*, 471 U.S. at 477). Here, Defendants offer no argument as to why the Court's exercise of personal jurisdiction would be unreasonable. As such, the Court concludes that personal jurisdiction is appropriate here.

The Court therefore denies Defendants' motion to dismiss Keeney and JKeeney Consulting for lack of personal jurisdiction.

### H. Venue

As an aside, Defendants Keeney and JKeeney Consulting assert that venue in this judicial District is improper.

The venue of suits for infringement of copyright is not determined by the general provision governing suits in the federal district courts. *See* 28 U.S.C. § 1400(a); *Lumiere v. Mae Edna Wilder, Inc.*, 261 U.S. 174, 176 (1923). Section 1400(a) provides that "[c]ivil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works or designs may be instituted in the district in which the defendant or his agent resides or may be found." The Ninth Circuit has interpreted the statute to mean that venue "is proper in any

26

1   judicial district in which the defendant would be amenable to personal jurisdiction if the district

2   were a separate state." *Columbia Pictures Television v. Krypton Broadcasting of Birmingham,*

3   *Inc.*, 106 F.3d 284, 288 (9th Cir. 1997), *overruled on other grounds by Feltner v. Columbia*

4   *Pictures Television*, 523 U.S. 340 (1998); *see also VE Holding Corp. v. Johnson Gas Appliance*

5   *Co.*, 917 F.2d 1574, 1583 (Fed. Cir. 1990) (venue is proper in any district in which there is

6   personal jurisdiction over the defendant).

7          Here, the Court has concluded that it may properly exercise personal jurisdiction over

8   Defendants Keeney and JKeeney Consulting. Defendants offer no additional reason why venue

9   would be improper besides their allegation that personal jurisdiction is improper. The Court

10   therefore denies Defendants' motion to dismiss for improper venue.

11   **IV.   CONCLUSION**

12          For the reasons stated above, the Court grants in part and denies in part Defendants'

13   motion to dismiss. The Court dismisses without prejudice Plaintiff's claim for false advertising

14   under § 43 of the Lanham Act, as Plaintiff may be able to allege facts supporting its claim. *See*

15   *Lopez,* 203 F.3d at 1127. The Court dismisses with prejudice Plaintiff's claim for statutory

16   damages under § 504 of the Copyright Act as Plaintiff has affirmatively pled facts precluding

17   recovery of such damages. Should Plaintiff elect to file a Second Amended Complaint curing the

18   deficiencies identified herein, Plaintiff shall do so within 21 days of the date of this Order. Failure

19   to meet the 21-day deadline to file a Second Amended Complaint or failure to cure the

20   deficiencies identified in this Order will result in a dismissal with prejudice of Plaintiff's claim for

21   false advertising under § 43 of the Lanham Act. Plaintiffs may not add new causes of action or

22   parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil

23   Procedure 15.

24          In all other respects, the Court denies Defendants' motion to dismiss.

25

26

27                                        27

Case No.: 14-CV-03656-LHK

28   ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

**IT IS SO ORDERED**.

Dated: January 26, 2015

_Lucy H. Koh_
LUCY H. KOH
United States District Judge

United States District Court
Northern District of California

Case No.: 14-CV-03656-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS