United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LUXUL TECHNOLOGY INC.,<br>  Plaintiff,<br>       v.<br>NECTARLUX, LLC, et al.,<br>  Defendants. | Case No.  14-CV-03656-LHK<br><br>**ORDER DENYING MOTION TO STRIKE AND GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 45 |

Plaintiff and Counterdefendants Luxul Technology, Inc. ("Luxul") and Third Party Defendant Dr. James Pan ("Pan") move to strike portions of the Counterclaims and Third Party Complaint filed by Defendant and Counterclaimant NectarLux LLC ("NectarLux."). ECF No. 45 ("Mot."). Luxul and Pan also move to dismiss NectarLux's unjust enrichment counterclaim against Luxul and Nectarlux's third party claims against Pan. *Id.*; ECF No. 42 (Answer to Second Amended Complaint, Counterclaims, and Third Party Complaint) (collectively, "Ans."). The Court finds this matter suitable for decision without oral argument under Civil Local Rule 7–1(b) and hereby VACATES the motion hearing set for September 3, 2015 at 1:30 p.m. For the reasons explained below, the Court DENIES the motion to strike and GRANTS the motion to dismiss.

1

14-CV-03656-LHK
ORDER DENYING MOTION TO STRIKE AND GRANTING MOTION TO DISMISS

## I. BACKGROUND

### A. Factual Background

#### 1. Luxul's Allegations Against NectarLux

Plaintiff Luxul Technology Inc. is a California corporation with a principal place of business in Santa Clara, California. Sec. Am. Compl. ("SAC"), ECF No. 38, ¶ 1. Defendant NectarLux, LLC is a New York limited liability company with a principal place of business in Syracuse, New York. *Id.* ¶ 2. Luxul is a producer of energy efficient light emitting diode ("LED") products. *Id.* ¶ 9.

On April 6, 2014, Luxul entered into a written "Sales Representation and Marketing Consulting Agreement" ("Agreement") with Defendant NectarLux. *Id.* ¶ 13.; *see* Declaration of Adam Lilien submitted in support of Defendants' motion to dismiss, ECF No. 21, Exh. A. Under the Agreement, NectarLux served as Luxul's "exclusive, independent representative for the sale of Luxul products" in certain regions, for certain customers. SAC ¶ 13. NectarLux and Luxul were jointly obligated to "work together to ensure that Sales Commitments" were achieved and to meet regularly. Agreement ¶ 1.a.

The Agreement also provided for Luxul to disclose certain confidential information to NectarLux, including information relating to building science technologies, trade secrets, product design, manufacturing, pricing, marketing, distribution, business opportunities and relationships, industry experts, legal entities, and individuals. SAC ¶ 16. Under Section 3 of the Agreement, NectarLux agreed that Luxul was "the owner of all right, title, and interest in the Confidential information, including all tangible copies and . . . electronic versions thereof." *Id.* ¶ 17. NectarLux agreed that it would not disclose confidential information unless necessary to satisfy its obligations under the Agreement. *Id.* ¶ 18.

In April 2014, Pan, Luxul's chief executive officer, and Adam Lilien, NectarLux's Managing Director of Nectar Energy, met with a potential manufacturer in New York. *Id.* ¶ 27. Luxul continued to negotiate directly with the New York manufacturer. *Id.* Luxul alleges that in July 2014, Lilien and Keeney contacted the same New York manufacturer to discuss alternative

proposals and set up meetings with competing LED companies. *Id.* ¶ 28.

On August 12, 2014, Luxul terminated the Agreement with NectarLux. *Id.* ¶ 30.

### 2. Nectarlux's Allegations Against Luxul

Nectarlux presents a different version of the allegations summarized above. Nectarlux alleges that Luxul acquired Nectarlux's propriety information, including "pricing, marketing and distribution, business opportunities, business relationships influential in purchasing decisions, business entities who may be interested in OEM/resale relationships, as well as other like terms," and then Luxul wrongfully terminated the parties' contracts. Ans. ¶ 1. Nectarlux alleges that Luxul "misappropriated NectarLux's information to employ these confidential strategies and to market and sell light bulbs in NectarLux's exclusive territorial regions and to NectarLux's protected clients without compensating NectarLux for the sales." *Id.*

Nectarlux agrees that parties entered into an Agreement related to sales of Luxul's LED bulbs through Nectarlux's distribution network. *Id.* ¶ 1. However, Nectarlux begins its allegations with reference to an earlier contract between the parties, entered into on January 29, 2014. *Id.* ¶ 20. The January 2014 contract was negotiated by Adam Lilien; Shawn Colvin, a Luxul representative; and Dennis Malone of DM Lighting. *Id.* ¶¶ 15, 18, 19 ("Colvin, Malone, and Lilien discussed and negotiated a potential partnership between Luxul and NectarLux."). The January 2014 contract "appointed NectarLux as the exclusive representative for the sale of Luxul products" for certain clients and certain geographic areas. *Id.* ¶ 20. To carry out the contract, Nectarlux "shared with Luxul its confidential client lists, marketing strategies, and sales presentations." *Id.* ¶ 24.

"On or about March 18, 2014, Luxul informed NectarLux the contract was invalid because Colvin had no authority to execute contracts on behalf of Luxul." *Id.* ¶ 22. As alleged by Nectarlux:

> [Pan] falsely accused Colvin of impersonating a Luxul employee and embezzlement, and had him arrested by Santa Clara police. The Santa Clara police, however, quickly determined that Pan's accusations against Colvin were not well founded and that Colvin was being detained under false pretenses. The police released Colvin filing no charges against him. Further, the police advised

3
14-CV-03656-LHK
ORDER DENYING MOTION TO STRIKE AND GRANTING MOTION TO DISMISS

>Colvin they would recommend to the District Attorney that charges be filed against Pan for filing a false police report and reporting false charges[.]
>
>After Pan orchestrated the false arrest of Colvin he then represented to NectarLux that NectarLux's contract with Luxul was not valid because Colvin was not authorized to enter into contracts on behalf of Luxul.

*Id.* ¶¶ 3-4. In support of these allegations, Nectarlux attaches Colvin's cross-complaint against Luxul filed in *Luxul Technology Inc. v. Get Lit. LED Lighting, Inc.*, Case No. 14-cv-264487 (California Superior Court, Santa Clara County, filed September 9, 2014) (referred as the "Colvin matter"). *See* ECF No. 42-1 (Colvin matter cross-complaint).

Thereafter, the parties entered into the April 6, 2014 Agreement discussed above, but "Luxul and Pan used duress and wrongfully coerced NectarLux to materially modify the terms of the contract to Luxul's and Pan's benefit." Ans. ¶ 25.

### B. Procedural Background

Plaintiff filed its original Complaint on August 12, 2014. ECF No. 1. Plaintiff filed a First Amended Complaint ("FAC") pursuant to stipulation on October 31, 2014. ECF No. 19. Defendants filed a motion to dismiss on November 21, 2014. ECF No. 21. The Court granted in part and denied in part the motion to dismiss, ECF No. 36, and Plaintiff filed a Second Amended Complaint on February 13, 2015, ECF No. 38. Nectarlux filed an Answer to the Second Amended Complaint, Third Party Complaint against Pan, and Counterclaims against Luxul on February 27, 2015. ECF No. 42. Nectarlux's Answer alleges four counterclaims against Luxul and four cross-claims against Pan. *Id.*

Luxul and Pan filed the instant motion to strike and motion to dismiss on March 27, 2015. ECF No. 45. Luxul and Pan move to strike one of Nectarlux's counterclaims and all of Nectarlux's cross-claims. *Id.* Nectarlux filed its opposition on April 17, 2015. ECF No. 54 ("Opp."). Luxul and Plan filed their reply on May 1, 2015. ECF No. 57 ("Reply").

## II. LEGAL STANDARDS

### A. Rule 12(f) Motion to Strike

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an

4
14-CV-03656-LHK
ORDER DENYING MOTION TO STRIKE AND GRANTING MOTION TO DISMISS

insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A Rule 12(f) motion to strike serves to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney–Vinstein v. A.H. Robins Co.,* 697 F.2d 880, 885 (9th Cir. 1983). Motions to strike are generally disfavored and "should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation." *Platte Anchor Bolt, Inc. v. IHI, Inc.,* 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004) (citations omitted). "With a motion to strike . . . the court should view the pleading in the light most favorable to the nonmoving party." *Id.* "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Cruz v. Bank of New York Mellon,* No. 12-CV-00846-LHK, 2012 WL 2838957, at *2 (N.D. Cal. July 10, 2012).

### B. Rule 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008).

Nonetheless, the Court is not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn,* 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *W. Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson,* 355 F.3d 1179, 1183 (9th Cir. 2004) (internal quotation marks and citations omitted); *accord Iqbal,* 556 U.S. at 663-64.

### C. Leave to Amend

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and alterations omitted). When dismissing a complaint for failure to state a claim, "'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Id.* at 1127 (quoting *Doe v. United States,* 58 F.3d 494, 497 (9th Cir. 1995)). Generally, leave to amend shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## III. ANALYSIS

Luxul moves to strike all allegations relating to the alleged false arrest of Colvin from the Answer. Luxul further moves to dismiss Nectarlux's unjust enrichment counterclaim and Nectarlux's third party claims against Pan.

### A. Motion to Strike

Luxul moves to strike Paragraphs 2 through 5; Paragraph 22 lines 26-27; Paragraph 50, lines 17-19 and 24-25; Paragraph 51, lines 1-3; Paragraph 56, lines 3-4; Paragraph 59, lines 19-20; and Paragraph 62, lines 8-9 from NectarLux's Counterclaims and Third Party Complaint. Mot. at 4. The paragraphs at issue relate to allegations about Colvin's alleged false arrest and the Colvin matter pending in state court:

> 2. This is not the only instance where Luxul entered into a contract for the purpose of extracting labor and information only to then breach the contract and avoid honoring its end of the bargain. Luxul is facing similar claims in another lawsuit pending as *Luxul Technology Inc. v. Get Lit. LED Lighting, Inc.*, Case No. 14-cv264487 (California Superior Court, Santa Clara County, filed September 9, 2014) (referred [to] as the "Colvin matter"). The complaint against Luxul in the Colvin matter is attached hereto as Exhibit 1.

> 3. The Colvin matter is important here. Luxul hired Shawn Colvin to establish a nationwide sales network. Colvin recruited NectarLux to join the sales network. On behalf of Luxul, and with Pan's knowledge and agreement, Colvin negotiated and executed the contract at issue with NectarLux. After Colvin established the sales network, Luxul extracted confidential client lists and sales related labor and intellectual property from members of the sales network, Luxul's President and CEO, Pan, then falsely accused Colvin of impersonating a Luxul employee and embezzlement, and had him arrested by Santa Clara police. The Santa Clara police, however, quickly determined that Pan's accusations against Colvin were not well founded and that Colvin was being detained under false pretenses. The police released Colvin filing no charges against him. Further, the police advised Colvin they would recommend to the District Attorney that charges be filed against Pan for filing a false police report and reporting false charges, which were felonies.
>
> 4. After Pan orchestrated the false arrest of Colvin he then represented to NectarLux that NectarLux's contract with Luxul was not valid because Colvin was not authorized to enter into contracts on behalf of Luxul. Pan used this false representation to force NectarLux to sign a new contract more favorable to Luxul.
>
> 5. Pan resorted to such outrageous tactics for several reasons. First, Pan was under substantial pressure from Luxul investors to boost Luxul's profitability. Pan schemed and decided he could increase Luxul's apparent profitability if he caused Luxul to breach its contracts with Colvin and NectarLux, and thereby avoid the expense of paying those parties the contractually agreed and rightfully owed money from light bulb sales. Second, Pan succumbed to greed. He wrongfully caused Luxul to breach its contract with NectarLux to increase his personal profits from the sale of light bulbs. Third, Pan had several Luxul employees conspire to falsify the company's financial books by entering NectarLux purchase orders – one of which was for $264,000 and forwarded to NectarLux by mistake – where no purchase order existed. Upon information and belief, this was not a unique occurrence. The booking of false financial records may have been carried on for some time. NectarLux believes the pressure to account for false booked sales caused Pan to claim rogue sales agents were responsible for under achievement and discrepancies in accounting. Fourth, upon information and belief, Pan also incorporated NectarLux's proprietary information in his own presentations to existing investors and prospective investors. NectarLux believes this enabled Pan to raise additional funding to support his operation. . . .
>
> 22. . . NectarLux was further informed that Pan had Colvin arrested for impersonating a Luxul employee. . . .
>
> 50. . . [Pan] wrongfully induced Luxul to breach the contract because he was upset with Colvin and apparently wanted to damage Colvin and undue the work Colvin had done with Luxul. Pan was also under pressure from investors. . . Pan also induced Luxul to breach the contract to further his personal dispute and vendetta

7
14-CV-03656-LHK
ORDER DENYING MOTION TO STRIKE AND GRANTING MOTION TO DISMISS

> against Colvin . . .
>
> 51. Pan intended to cause Luxul to breach the contract. The false police reports and false arrest of Colvin demonstrate that Pan's motives were improper and unlawful. Pan used the false arrest of Colvin as a pretext to cause Luxul to breach the contract. . . .
>
> 56. Therefore, Pan, had Colvin falsely arrested . . .
>
> 59. Pan engaged in wrongful conduct by, among other things, falsely having Colvin arrested . . .
>
> 62. Pan engaged in wrongful conduct by among other things, falsely having Colvin arrested . . .

*See* Ans. at 9-25. Luxul makes two arguments in support of its motion to strike. First, Luxul argues that the above-listed allegations relating to Pan's conduct as CEO of Luxul and the Colvin matter have no relationship to the issues pending in the instant case, are inflammatory, and serve no purpose other than to cast Pan in a derogatory light. Mot. at 4. Second, Luxul argues that Nectarlux's allegations relating to the false arrest are not supported "by information and belief," but instead are only supported by allegations made in the Colvin matter. *Id.* at 5. The Court considers each argument in turn.

### 1. The Allegations Relating to Pan and the Colvin Matter Are Not Immaterial, Impertinent, or Scandalous

Luxul argues that the allegations relating to Pan and the Colvin matter should be struck as "immaterial, impertinent, or scandalous matter" under Rule 12(f). Nectarlux opposes, arguing that Pan and the Colvin matter are relevant to Nectarlux's counterclaims against Luxul, and that the allegations are not scandalous. The Court agrees with Nectarlux.

First, the allegations relating to Pan's conduct as CEO and the Colvin matter may be relevant to the issues in the instant case. A motion to strike "should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation." *Platte Anchor Bolt,* 352 F. Supp. 2d at 1057. Here, Nectarlux brings counterclaims for breach of contract and breach of the duty of good faith and fair dealing against Luxul. Ans. ¶¶ 32-40. Nectarlux specifically alleges that "Luxul breached the implied covenant of good faith and fair dealing by refusing to honor the NectarLux contract, claiming that Colvin was not authorized to execute the

8
14-CV-03656-LHK
ORDER DENYING MOTION TO STRIKE AND GRANTING MOTION TO DISMISS

1 contract, and misappropriating Luxul's labor and intellectual property for its own profit." *Id.* ¶ 40.
2 Thus, Luxul's relationship with Colvin and Pan's treatment of Colvin are relevant to the
3 circumstances surrounding Luxul's termination of the original Luxul-Nectarlux contract. *See, e.g.,*
4 *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010) (one
5 element of a claim for breach of the duty of good faith and fair dealing is that "defendant unfairly
6 interfered with the plaintiff's rights to receive the benefits of the contract.").

7 Second, the allegations relating to the alleged false arrest of Colvin and Pan's conduct as
8 CEO of Luxul are not scandalous. Scandalous material has been defined as allegations that cast a
9 "cruelly derogatory light" on a party or person. *See Righthaven LLC v. Democratic Underground,*
10 *LLC,* 791 F. Supp. 2d 968, 977 (D. Nev. 2011); *In re 2TheMart.com, Inc. Sec. Litig.,* 114 F. Supp.
11 2d 955, 965 (C.D. Cal. 2000). "Allegations may be stricken as 'scandalous' if the matter is
12 unrelated to the controversy or is unduly prejudicial." *Shinde v. Nithyananda Found.*, No. 13-CV-
13 0363 JGB SPX, 2013 WL 1953707, at *8 (C.D. Cal. May 10, 2013) (striking unsupported,
14 inflammatory allegations relating to sexual conduct and religious practices) (citing *Wilkerson v.*
15 *Butler,* 229 F.R.D. 166, 170 (E.D. Cal. 2005), and *Talbot v. Robert Matthews Distrib. Co.,* 961
16 F.2d 654, 664 (7th Cir. 1992)).

17 Here, the allegations relating to Colvin and Pan are related to the claims at issue in the
18 case. Specifically, Nectarlux alleges that Pan used the false arrest of Colvin to "wrongfully
19 coerce[] NectarLux to materially modify the terms of the contract to Luxul's and Pan's benefit."
20 Ans. ¶ 25. Such allegations may support Nectarlux's counterclaims. Any prejudice resulting from
21 the allegations is outweighed by their probative value on key issues in the instant case. The
22 allegations thus do more than cast a "cruelly derogatory light" on Pan, and should not be struck
23 from the Answer. *See Righthaven LLC*, 791 F. Supp. 2d at 977; *Shinde*, 2013 WL 1953707 at *8.

24 Accordingly, the Court the finds that the allegations Luxul seeks to strike are not
25 "immaterial, impertinent, or scandalous matter" under Rule 12(f), and denies the motion to strike
26 on that basis.

27
28

9
14-CV-03656-LHK
ORDER DENYING MOTION TO STRIKE AND GRANTING MOTION TO DISMISS

### 2. Nectarlux Appropriately Relies on Allegations From the Colvin Matter

Luxul's second argument in support of its motion to strike is that the Colvin allegations "rely upon the factual assertions of a complaint in a totally separate action as the basis for allegations in this suit." Mot. at 5. Specifically, Luxul accuses Nectarlux of relying entirely on the complaint filed in the Colvin matter as support for Nectarlux's allegations in the Answer.

Luxul points to *In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d 996 (N.D. Cal. 2008), to argue that Nectarlux's allegations should be struck as improperly relying on another party's complaint. *Connetics* is inapposite here. The court in *Connetics* was evaluating whether plaintiffs' attorneys had conducted a reasonable investigation into the allegations of plaintiffs' complaint as required by Rule 11. *Id.* at 1004. Rule 11 requires that factual contentions made in a pleading be based on "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances." In contrast, Rule 12(f) only authorizes striking "immaterial, impertinent, or scandalous matter." The court in *Connetics* found that by "lifting allegations from an SEC complaint," and conducting no independent investigation into the factual allegations of their complaint, the plaintiffs' attorneys violated Rule 11. 542 F. Supp. 2d at 1004-05.

Here, to the extent that Luxul makes an argument based on Rule 11, Nectarlux affirmatively pleads that it learned of Colvin's false arrest independently of the allegations contained in the complaint filed in the Colvin matter. Specifically, Nectarlux pleads that "[o]n or about March 18, 2014, Luxul informed NectarLux the contract was invalid because Colvin had no authority to execute contracts on behalf of Luxul. NectarLux was further informed that Pan had Colvin arrested for impersonating a Luxul employee." Ans. ¶ 22. Nectarlux also supports its allegations based on conduct specifically involving Pan and Nectarlux, such as allegedly fraudulent purchase orders from Luxul, *id.* ¶ 31, and negotiations between the parties, *id.* ¶ 25. Thus, Luxul's contention that "[Nectarlux's] counsel incorporated the Colvin Complaint as a basis of NectarLux claims for relief without any substantive or independent factual investigation," Mot. at 5, is belied by the allegations contained in the Answer. Moreover, to the extent that Nectarlux supports its own investigation and knowledge of the Colvin matter with the Colvin complaint,

10
14-CV-03656-LHK
ORDER DENYING MOTION TO STRIKE AND GRANTING MOTION TO DISMISS

such reliance is appropriate as an attorney "may rely in part on other sources, such as a newspaper article, [ ] as part of his or her investigation into the facts." *Connectics*, 542 F. Supp. 2d at 1005 (citation omitted). Accordingly, as the allegations in the Answer show that Nectarlux complied with Rule 11, the Court denies the motion to strike on that basis.

In sum, the Court finds that (1) the allegations relating to Pan's conduct as CEO of Luxul and the false arrest of Colvin could be relevant to the claims and counterclaims in this case, and (2) Nectarlux's allegations appear to based on an independent investigation of the facts relating to Colvin. Therefore, the Court DENIES the motion to strike.

### B. Motion to Dismiss

Luxul and Pan move to dismiss Nectarlux's unjust enrichment counterclaim[1] and all four of Nectarlux's cross claims against Pan. The Court first addresses the counterclaim and then addresses the cross claims.

#### 1. Counterclaim 3: Unjust Enrichment Against Luxul

Luxul moves to dismiss the third counterclaim, unjust enrichment, on the basis that "California state and federal courts do not recognize a stand-alone cause of action for unjust enrichment." Mot. at 6. In opposition, Nectarlux argues that "unjust enrichment is an equitable principle that underlies various legal doctrines and remedies." Opp. at 11. The Court grants the motion to dismiss the unjust enrichment counterclaim because the counterclaim is based on a breach of contract, which is improper under California law.

As the Ninth Circuit recently explained in *Astiana v. Hain Celestial Group, Inc.*, a stand-alone unjust enrichment claim is properly construed "as a quasi-contract claim seeking restitution." 783 F.3d 753, 762 (9th Cir. 2015) (quoting *Rutherford Holdings, LLC v. Plaza Del Rey,* 166 Cal. Rptr. 3d 864, 872 (Cal. App. 2014)). However, "unjust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties." *Paracor Finance, Inc. v. General Elec. Capital Corp.*, 96 F.3d 1151, 1167

---

[1] Luxul does not move to dismiss Nectarlux's counterclaims for breach of contract, breach of the duty of good faith and fair dealing, or for an accounting.

11
14-CV-03656-LHK
ORDER DENYING MOTION TO STRIKE AND GRANTING MOTION TO DISMISS

(9th Cir. 1996) (citation omitted).

Here, the unjust enrichment counterclaim is based on a breach of the contract between Luxul and Nectarlux. The counterclaim alleges that "Luxul would be unjustly enriched if it were permitted to retain the unlawfully withheld compensation from Nectarlux." Ans. ¶ 43. Nectarlux seeks "restitution to NectarLux of all compensation withheld by Luxul for sales of Luxul products made within the contractually agreed upon territory and with respect to the protected clients as defined by the contract." *Id.* As Nectarlux has affirmatively pled that Nectarlux and Luxul entered into a contract, Nectarlux cannot assert an unjust enrichment or quasi-contract claim against Luxul as a matter of law. *See Paracor*, 96 F.3d at 1167 (an unjust enrichment claim "does not lie when an enforceable, binding agreement exists defining the rights of the parties."). Accordingly, the Court DISMISSES WITH PREJUDICE the unjust enrichment counterclaim. *Leadsinger*, 512 F.3d at 532 (leave to amend need not be given where amendment would be futile).

### 2. Third Party Cross Claims Against Pan

Nectarlux alleges four cross claims against Pan: (1) Inducing a Breach of Contract; (2) Intentional Interference with Contractual Relations; (3) Intentional Interference with Prospective Economic Relations; and (4) Negligent Interference with Contractual Relations. Ans. ¶¶ 48-63. The Court first addresses the cross claim for inducing a breach of contract, and then addresses the three "interference" cross claims.

#### a. Inducing a Breach of Contract

Luxul moves to dismiss the cross claim for inducing a breach of contract on the basis that Pan, acting as agent for Luxul in entering the Luxul-Nectarlux contract, cannot be liable for inducing a breach of that same contract. Nectarlux admits that Pan was acting as an agent of Luxul when he committed the alleged acts: "Pan is the CEO and President of Luxul. Pan committed the acts alleged herein personally and on behalf of Luxul." Ans. ¶ 8; *see also* Opp. at 12 (acknowledging that "Dr. Pan acted as a corporate agent for Luxul."). Nonetheless, Nectarlux argues that Pan is liable because the "general rule in California and elsewhere is that an agent is liable for his tortious acts that injure a third party." Opp. at 12.

12
14-CV-03656-LHK
ORDER DENYING MOTION TO STRIKE AND GRANTING MOTION TO DISMISS

1  The elements of inducing a breach of contract under California law are "the existence of a valid contract, defendant's intent to induce a breach of the contract, and a breach resulting from defendant's unjustifiable or wrongful conduct." *Bledsoe v. Watson*, 106 Cal. Rptr. 197, 198 (Cal. App. 1973). However, it is "well established that corporate agents and employees acting for and on behalf of a corporation cannot be held liable for inducing a breach of the corporation's contract." *Shoemaker v. Myers*, 801 P.2d 1054, 1068 (Cal. 1990).

Here, Pan was acting as an agent of Luxul, as Nectarlux admits. Opp. at 12 (acknowledging that "Dr. Pan acted as a corporate agent for Luxul"); Ans. at ¶ 8 ("Pan committed the acts alleged herein personally and on behalf of Luxul."). Pan therefore cannot, as a matter of law, be liable for inducing a breach of the contract between Luxul and Nectarlux. *Shoemaker*, 801 P.2d at 1068.

In arguing that *Shoemaker* does not apply here, Nectarlux cites *Woods v. FoxBroadcasting Sub., Inc.*, 28 Cal. Rptr. 3d 463 (Cal. App. 2005). Nectarlux argues that, under *Woods*, California "courts have allowed contract interference claims to be stated against owners, officers, and directors of the company whose contract was the subject of the litigation." Opp. at 13 (quoting *Woods*, 28 Cal. Rptr. 3d at 473). The Court does not find *Woods* persuasive here.

 The court in *Woods* permitted a claim for inducing a breach of contract against "a powerful shareholder" who "allegedly interferes in a contract between the corporation whose shares it owns and some other person or entity." 28 Cal. Rptr. 3d at 470. The court in *Woods* distinguished the shareholder-defendant from an agent-defendant, noting that in prior cases rejecting an inducing claim, "it was clear that the defendant was either a contracting party or its agent who could not be liable for interference." *Id.* at 469. In *Woods*, the defendant-shareholder was *not* a contracting party or agent, and therefore could be liable. *Id.* at 470. The court further expressly acknowledged the *Shoemaker* rule that "corporate agents could not be liable for inducing their employer to breach a contract." *Id.* at 496 (citing *Shoemaker*, 801 P.2d at 1068).

Here, Nectarlux both alleges in its Answer and admits in its Opposition to the motion to dismiss that Pan was acting as an agent of Luxul in entering into the Luxul-Nectarlux contract.

Ans. ¶ 8; Opp. at 12. Accordingly, the rule laid out in *Shoemaker* that "corporate agents and employees acting for and on behalf of a corporation cannot be held liable for inducing a breach of the corporation's contract" prohibits Nectarlux's cross claim against Pan as a matter of law. 801 P.2d at 1068. Accordingly, the court GRANTS the motion to dismiss WITH PREJUDICE. *Leadsinger*, 512 F.3d at 532 (leave to amend need not be given where amendment would be futile).

### b. Intentional Interference with Contractual Relations; Negligent Interference with Contractual Relations; and Intentional Interference with Prospective Economic Relations

Luxul moves to dismiss the three interference cross claims because Pan was acting as Luxul's agent when Nectarlux and Luxul entered into the contract at issue. Mot. at 7. Luxul argues that because Pan was acting as Luxul's agent, "Dr. Pan stands in the place of Luxul and acted on its behalf with respect to contracts entered into with NectarLux." Luxul concludes that Pan therefore cannot be liable for interfering with Luxul's contracts. Mot. at 8. Again, there is no dispute that Pan was Luxul's agent. Ans. ¶ 8; Opp. at 12.

The parties also do not dispute that an element of each of the three interference cross claims is a contract or existing or prospective economic relationship between plaintiff and a third party. *See SCEcorp v. Superior Court*, 4 Cal. Rptr. 2d 372, 374-75 (Cal. 1992) (one element of intentional interference with contractual relations is "a valid contract between plaintiff and a third party"); *Id.* at 375 (one element of negligent interference with contractual relations is "an economic relationship existed between the plaintiff and a third party") (discussing *J'Aire Corp. v. Gregory*, 598 P.2d 60 (Cal. 1979)); *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 950 (Cal. 2003) (one element of intentional interference with prospective economic relations is "an economic relationship between the plaintiff and some third party") (citations omitted). Because Pan was Nectarlux's agent, Luxul argues that Nectarlux has not alleged a contract between Nectarlux and a third party, thus negating an element of each cross claim. In essence, according to Luxul, Nectarlux has merely alleged a contract between plaintiff (Nectarlux) and defendant (Luxul), and not a third party. Neither party separately addresses an existing or prospective

14
14-CV-03656-LHK
ORDER DENYING MOTION TO STRIKE AND GRANTING MOTION TO DISMISS

economic relationship between Nectarlux and Luxul, or between Nectarlux and a third party.

The Court agrees that Nectarlux cannot state an interference claim as a matter of law. As explained in *Mintz v. Blue Cross of California*, "the representative of a contracting party may not be held liable for the tort of interfering with its principal's contract." 92 Cal. Rptr. 3d 422, 432 (Cal. App. 2009). This is because California only "recognizes a cause of action against *noncontracting parties* who interfere with the performance of a contract." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 869 P.2d 454, 459 (Cal. 1994) (emphasis in original). Here, because Pan was Luxul's agent, he "may not be held liable for the tort of interfering with [Luxul's] contract." *Mintz*, 92 Cal. Rptr. 3d at 432; *see also United Nat. Maint., Inc. v. San Diego Convention Ctr., Inc.*, 766 F.3d 1002, 1008 (9th Cir. 2014) cert. denied, 135 S. Ct. 980, 1 (2015) (recognizing that California does not recognize a claim for interference where "the defendant was either a contracting party or its agent.") (citation omitted).

In opposition, Nectarlux invokes the "general rule in California . . . that an agent is liable for his tortious acts that injure a third party." Opp. at 12. However, Nectarlux does not address, and makes no effort to distinguish, the decisions in *Mintz*, *Shoemaker*, or *Applied Equipment*, which each hold that "the representative of a contracting party may not be held liable for the tort of interfering with its principal's contract." *Mintz*, 92 Cal. Rptr. 3d at 432; *Shoemaker*, 801 P.2d at 1068 ("corporate agents and employees acting for and on behalf of a corporation cannot be held liable for inducing a breach of the corporation's contract"); *Applied Equip.*, 869 P.2d at 459 ("the tort cause of action for interference with contract does not lie against a party to the contract"). The Court sees no reason to disregard the specific holdings of those cases.

Accordingly, consistent with *Mintz*, *Shoemaker*, and *Applied Equipment*, the Court concludes that Nectarlux's three interference cross claims must be dismissed. Pan's status as an agent of Luxul negates an element of each cross claim: the existence of a contract or economic relationship between Nectarlux and a third party. As such, Nectarlux cannot state a claim as a matter of law. The Court therefore GRANTS the motion to dismiss WITH PREJUDICE. *Leadsinger*, 512 F.3d at 532 (leave to amend need not be given where amendment would be

1  futile).

2  **IV.    ORDER**

3      For the reasons explained above, the Court DENIES the motion to strike and GRANTS

4  WITH PREJUDICE the motion to dismiss the third counterclaim, and the fifth, sixth, seventh, and

5  eighth cross claims.

6      **IT IS SO ORDERED.**

7  Dated: August 6, 2015

8                             LUCY H. KOH

9                             United States District Judge