1  SCHNEIDER WALLACE COTTRELL
   KONECKY WOTKYNS LLP
2  Todd M. Schneider (SBN 158253)
3  Michael C. McKay (Pro Hac Vice)
   Kyle G. Bates (SBN 299114)
4  2000 Powell Street, Suite 1400
   Emeryville, California 94608
5  Telephone: (415) 421-7100
   Facsimile: (415) 421-7105
6  tschneider@schneiderwallace.com
7  mmckay@schneiderwallace.com
   kbates@schneiderwallace.com
8
9  Attorneys for NectarLux, LLC; JKeeney
   Consulting, Inc.; and James Keeney
10

11           IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF CALIFORNIA
12                   SAN JOSE DIVISION

13

14  LUXUL TECHNOLOGY INC., a California        Case No. 5:14-cv-03656-LHK
    corporation,
15                                             NOTICE OF MOTION AND
                   Plaintiff,                  MEMORANDUM OF POINTS AND
16                                             AUTHORITIES IN SUPPORT OF MOTION
    vs.                                        FOR SUMMARY JUDGMENT
17
    NECTARLUX, LLC, a New York limited
18  liability company; JKEENEY CONSULTING,     Date:        May 19, 2016
    INC., a Florida corporation; and           Time:        1:30 p.m.
19  JAMES KEENEY, an individual,               Judge:       Hon. Lucy H. Koh
                                               Courtroom:   Fourth Floor, Room 8
20                 Defendants.
                                               Complaint Filed:   August 12, 2014
21                                             Trial Date:        August 1, 2016
22  AND RELATED CROSS-ACTIONS
23

24

25

26

27

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................... 2

    A.    Luxul Sued Defendants in Bad Faith.................................................................. 2

    B.    Luxul is Hiding Evidence and Defendants Are Seeking Terminating Sanctions ............. 2

    C.    NectarLux's Counterclaims are Well Founded ................................................... 6

II.   PROCEDURAL BACKGROUND .......................................................................... 7

III.  LEGAL STANDARD FOR SUMMARY JUDGMENT ........................................ 7

IV.   STATEMENT ON FACTS ...................................................................................... 8

    A.    The Agreement..................................................................................................... 8

    B.    AT&T.................................................................................................................. 11

    C.    HTC ................................................................................................................... 14

V.    THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF
    DEFENDANTS FOR LACK OF DAMAGES ...................................................... 17

    A.    Luxul's First, Fifth, Sixth, and Seventh Causes of Action Fail for Lack of Damages ....... 17

    B.    Luxul's Second Cause of Action Fails because there is No Evidence Luxul Suffered an
        Economic Injury that was caused by a UCL Violation .................................... 18

    C.    Luxul's Third and Fourth Cause of Action Fail because there is No Evidence that
        NectarLux Breached the Agreement ............................................................... 18

    D.    Luxul's Eighth Cause of Action for Account Stated Lacks Legal and Evidentiary ...........
        Support............................................................................................................... 19

VI.   THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF
    NECTARLUX OVER ALL OF NECTARLUX'S COUNTERCLAIMS............................ 20

    A.    The Facts Show Luxul Materially Breached the Agreement ........................... 20

    B.    The Facts Show Luxul Breached its Duty of Good Faith and Fair Dealing .................. 24

    C.    The Facts Show Luxul is Entitled to an Accounting ....................................... 24

VII.  CONCLUSION ....................................................................................................... 25

1

## TABLE OF AUTHORITIES

**Cases**

*Aguilera v. Pirelli Armstrong Tire Corp.*, 64 Cal. Rptr. 187 (Ct. App. 1967)........................................18

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ..............................................................7, 8

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).......................................................................7

*EPIS, Inc. v. Fid. & Guar. Life Ins. Co.*, 156 F. Supp. 2d 1116, 1124 (N.D. Cal. 2001)....................18

*Galen v. Cnty. of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007).........................................................8

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011)...........................................................18

*Quigley v. Pet, Inc.*, 162 Cal. App. 3d 877, 887-88 (1984)................................................................24

*Shwarz v. U.S.*, 234 F.3d 428, 436 (9th Cir. 2000) ........................................................................8

*Sutherland v. Barclays American/Mortgage Corp.*, 53 Cal. App. 4th 299, 314 (1997).......................24

*United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011)......8

**Rules**

Fed. R. Civ. P. 56(c)...........................................................................................................7

Fed. R. Civ. P. 56(e) ..........................................................................................................8

**Treatises**

Witkin, Summary of California Law, Contracts, §744 (8th ed.) ........................................................24

- ii -

1

<u>NOTICE OF MOTION AND MOTION TO DISMISS</u>

2

PLEASE TAKE NOTICE that on May 19, 2016, at 1:30 p.m. in the Courtroom of the

3

Honorable Lucy H. Koh, at the Robert F. Peckham Federal Building, 280 South First Street,

4

Fourth Floor, Courtroom 8, San Jose, California, that NectarLux, LLC ("NectarLux"); JKeeney

5

Consulting, Inc. ("JKeeney Consulting"); and James Keeney ("Keeney") (collectively,

6

"Defendants") will and hereby do move for summary judgment on grounds that there are no

7

genuine issues on any material fact and Defendants are entitled to judgment as a matter of law.

8

This motion is based on this notice of motion and motion, the memorandum of points

9

and authorities, declarations in support of this motion, the pleadings, papers filed herein, and

10

such other matters as may be presented to the Court at the time of the hearing.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Motion For Summary Judgment
Case No. 5:14-cv-03656

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

### A.   Luxul Sued Defendants in Bad Faith

Luxul Technology, Inc. ("Luxul") sued Defendants in bad faith. The evidence shows *Luxul* breached a contract with NectarLux. Then in bad faith, and in an attempt to force NectarLux into a walkaway settlement, *Luxul* sued NectarLux. Luxul's claims against NectarLux are and always have been meritless. When NectarLux moved to dismiss Luxul's claims, Luxul doubled down and made more false statements and advanced arguments that Luxul knew were false. Then Luxul used abusive discovery tactics – serving over 200 separate document requests – in a failed gambit to uncover anything that might support some of its claims. The Court is no longer bound by Luxul's pleadings or misrepresentations. The Court can now look at the facts. And the facts show, Luxul sued Defendants in bad faith and its claims are meritless.

As a threshold matter, Luxul's Second Amended Complaint repeatedly alleges that Defendants have caused Luxul "irreparable injury" and that Luxul is entitled to "preliminary and permanent injunctions."[1] But Luxul never moved for a preliminary injunction. At this point, there is no question the allegations about a preliminary injunction were disingenuous. Luxul retained Bonnie Goldsmith as an expert opine on its damages. But Goldsmith did not opine that Luxul is entitled to an injunction. To be sure, Luxul has produced no evidence showing that it is entitled to an injunction of any kind. Thus, the evidence shows Luxul's allegations about "irreparable injury" and "preliminary and permanent injunctions" were and are meritless.

Notably, Luxul has paid Goldsmith roughly ▮▮▮▮ for her services (so far).[2] Goldsmith opined – assuming Luxul prevails on all its claims – that Luxul is entitled to ▮▮▮▮[3] Why would

---

[1] Second Amended Complaint ("SAC"), at ¶¶ 37, 38, 72, 73, 74, 92.
[2] Declaration of Michael McKay in Support of Defendants' Motion for Summary Judgment ("McKay Decl.") at ¶ 2, Exhibit 1, Goldsmith Dep. Tr. 47:15-16.
[3] *Id.* at ¶ 3.

Luxul litigate this case for two years, driving up costs, attorney fees, and expert fees (the sum total of which is likely over $1 million) to pursue claims against Defendants that even according to Goldsmith, provide Luxul a best case scenario recovery of ████? The answer is because Luxul filed and pursued its claims against Defendants in bad faith. Defendants respectfully urge the Court to analyze Goldsmith's opening written report. The substantive portion of the report is only six pages long. The report does not correspond to the allegations in Luxul's Second Amended Complaint. ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████ It is rare that a party's expert report undermines a party's allegations, but that is precisely the case here. Goldsmith's report, together with the remainder of undisputed facts show that Luxul sued NectarLux in bad faith.

Luxul's First, Fifth, and Sixth causes of action for False Designation of Origin, 15 U.S.C. § 1125(a); False Advertising 15 U.S.C. § 1125(a); and False Advertising Cal. Bus. & Prof. Code § 17500 fail because there is *no evidence* that Luxul suffered any damages in connection with these causes of action. None. To be sure, NectarLux served Luxul with interrogatories asking Luxul to state the basis and amount of damages in connection with these causes of action. On January 26, 2016, Luxul served *verified* responses to the interrogatories and stated the "exact amount of [its] damages will be calculated by Luxul's damages expert and will be disclosed in Luxul's expert report, which will be produced on or before the deadline on February 19, 2016."[4] ██████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████

---

[4] McKay Decl. at ¶ 4 Exhibit 3, Responses to Interrogatories 8-14.
[5] *Id.* at ¶ 2 Exhibit 1, Goldsmith Dep. Tr. 28-45.

- 3 -

██████████████████████████████████████████████████[6] Luxul, however, has not withdrawn

these meritless causes of action.[7] Instead, Luxul and its counsel continue to sue Defendants in bad

faith.

Luxul's Seventh cause of action for copyright infringement also fails because there is no

evidence that Luxul suffered any damages for copyright infringement. Again, Defendants asked in

an interrogatory for Luxul to state the basis and amount of copyright infringement damages. Luxul

again responded that Goldsmith would opine on and provide an "exact amount" of copyright

infringement damages.[8] ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████       ████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████ This is textbook bad faith litigation

tactics.

Luxul's Second cause of action for Unfair Competition Cal. Bus. & Prof. Code § 17200

fails because there is no evidence Luxul suffered any damages. In addition, the cause of action fails

because Luxul tethered its "unlawful" and "unfair" allegations to its First, Fifth, Sixth, and Seventh

causes of action – and as discussed above – those causes of action are and always have been meritless.

Luxul's Third and Fourth causes of action for breach of contract and breach of the implied

covenant of good faith and fair dealing fail because the facts show that *Luxul* wrongfully breached

and then terminated the parties' Agreement. It is axiomatic that Luxul cannot recover for breach

---

[6] *Id.*

[7] In yet another demonstration of bad faith, just days before this motion was due, Luxul served supplemental responses to NectarLux's interrogatories saying it is going to dismiss its First, Fifth, and Sixth Causes of Action. But Luxul still has not dismissed these meritless claims.

[8] McKay Decl. at ¶ 2 Exhibit 1, Goldsmith Dep. Tr. 22-27.

[9] *Id.*

[10] *Id.*

MOTION FOR SUMMARY JUDGMENT
CASE NO. 5:14-cv-03656

of a contract that it breached. As discussed below, in the private words of Luxul's founder and President, James Pan ("Pan"), Luxul terminated the parties' Agreement because Luxul wanted to do business with a third party (Pinnacle LED Solutions) ███████████████████████████ ███████████████████ Luxul's Second Amended Complaint does not mention this truth. The opposite is true. Luxul's Second Amended Complaint claims Luxul terminated the Agreement for a host of other reasons – there is no evidence to support any of those. Pan's admission coupled with the Second Amended Complaint shows beyond doubt Luxul sued NectarLux in bad faith.

Luxul's Eighth cause of action for Account Stated fails for a lack of evidence. Luxul alleges that NectarLux failed to pay certain invoices for Luxul products. The Second Amended Complaint alleges NectarLux owes $19,285.27.[12] But Luxul's internal accounts receivable and aging documents show different numbers. ██████████████████████████████████████████████ ██████████████████████████████████ All the accounting confusion on Luxul's side notwithstanding, there is no dispute that just before Luxul wrongfully terminated NectarLux's contract, Luxul's founder Pan emailed NectarLux's President, Adam Lilien, and wrote Luxul decided to "withdraw from all of your projects, and recall all of the products we have shipped to you .... Also *Luxul will refund all of the payments we received from your projects.*"[13] ████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████ Worse yet for Luxul, the evidence shows Luxul refunded no payments. Thus, the evidence shows Luxul is suing NectarLux for partially paid invoices on products that Luxul recalled. So not only is Luxul's Account Stated cause of action utterly lacking in evidence, it is conclusively refuted by the undisputed facts.

---

[11] McKay Decl. at ¶ 5, Exhibit 4.
[12] SAC at ¶ 96.
[13] McKay Decl. at ¶ 7, Exhibit 6.
[14] *Id.* at ¶ 2 Exhibit 1, Goldsmith Dep. Tr. at 80-81.

MOTION FOR SUMMARY JUDGMENT
CASE NO. 5:14-cv-03656

Defendants are entitled to judgment as a matter of law on all of Luxul's causes of action.

**B.    Luxul is Hiding Evidence and Defendants are Seeking Terminating Sanctions**

Defendants have concurrently moved for terminating sanctions. Alycia Singleton is a former Luxul employee.[15] She was fired a few weeks ago. Singleton contacted counsel for Defendants and revealed that Luxul is deliberately engaging in deceptive practices that undermine the integrity of this judicial proceeding.[16] In short, Luxul is using phony companies to hide information and limit the damages Luxul owes NectarLux.[17] Luxul's actions were willful, in bad faith, and fraudulent.

**C.    NectarLux's Counterclaims Against Luxul are Well Founded**

NectarLux has three counterclaims against Luxul. The first is for breach of contract. The second is for breach of good faith and fair dealing. The third is for an accounting. On April 7, 2014, Luxul entered into a "Written Sales Representation and Marketing Consulting Agreement" ("Agreement") with NectarLux.[18] Under the Agreement, NectarLux served as Luxul's "exclusive, independent representative for the sale of Luxul products" in certain regions and for certain customers, including AT&T.[19]

The undisputed facts show that Luxul wrongfully terminated the Agreement for two reasons. First, the Agreement provides that AT&T is a NectarLux protected customer. After Luxul executed the Agreement, Luxul was approached by a NectarLux competitor, another LED sales company, named Pinnacle LED Solutions ("Pinnacle"). Pinnacle duped Luxul into believing that it could sell AT&T more of Luxul's product than NectarLux could. So Luxul knowingly began helping Pinnacle sell its products to AT&T. When NectarLux discovered that Luxul was breaching the Agreement, NectarLux objected and asked Luxul to honor the Agreement. But Luxul wanted to

---

[15] Declaration of Alycia Singleton in Support of Motion for Sanctions ¶¶ 11-13 ("Singleton Decl.") (Dkt. No. 86-1).

[16] *Id.*

[17] *Id.*

[18] McKay Decl. at ¶ 6.

[19] *Id.*

MOTION FOR SUMMARY JUDGMENT
CASE NO. 5:14-cv-03656

sell AT&T its product through Pinnacle, so Luxul wrongfully terminated the Agreement. The second reason Luxul terminated the Agreement relates to Human Technology Corporation ("HTC"), a factory that assembles Luxul products in Utica, New York. NectarLux introduced HTC to Luxul. NectarLux, Luxul, and HTC executed a letter of intent whereby they agreed to work together. They regularly exchanged emails discussing their partnership. It was a good opportunity for all involved. But Luxul got greedy. It wanted to cut NectarLux out of the HTC opportunity. The timing was convenient for Luxul because about the same time as Luxul decided to breach the Agreement by selling to Pinnacle, HTC asked Luxul and NectarLux to execute a formal partnership agreement. So by terminating the Agreement, Luxul also avoided having to compensate and partner with NectarLux on the HTC opportunity.

NectarLux's expert witness, Scott Evans, has opined in both his written reports and testified at his deposition that Luxul's wrongful actions have caused NectarLux damages in excess of **$9,384,000**.[20] The declarations of Michael McKay, Adam Lilien, Enzo Caruso, and Josh Novak together with the other evidence discussed below conclusively establish that Luxul's wrongful breach of the Agreement caused NectarLux millions of dollars in damages.

## II.   PROCEDURAL BACKGROUND

Luxul filed its original complaint on August 12, 2014. (Dkt. No. 1.) Defendants moved to dismiss the original complaint. (Dkt. No. 15.) Luxul thereafter filed a first amended complaint. (Dkt. No. 19.) Defendants then moved to dismiss the amended complaint. (Dkt. No. 21.) The Court granted in part and denied in part Defendants' motion to dismiss the amended complaint. (Dkt. No. 36.) Luxul filed a seconded amended complaint. (Dkt. No. 38.) Defendants filed their answer, counterclaims, and third party complaint. (Dkt. No. 42.) Luxul then moved to dismiss and motion to strike. (Dkt. No. 45.) The Court granted the motion to dismiss and denied the motion

---

[20] Declaration of Scott Evans in Support of Defendants' Motion for Summary Judgment ("Evans Decl.") at ¶ 5.

MOTION FOR SUMMARY JUDGMENT
CASE NO. 5:14-cv-03656

1  to strike. (Dkt. No. 61.) The parties spent roughly a year litigating over the sufficiency of the

2  pleadings. Trial is scheduled to begin on August 1, 2016. (Dkt. No. 67.)

3  **III.    LEGAL STANDARD FOR SUMMARY JUDGMENT**

4  Summary Judgment is appropriate where there is no genuine dispute as to any material fact

5  and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp.*

6  *v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must demonstrate that there is no dispute

7  as to the material facts of the case. Courts will focus on the facts that might affect the outcome and

8  will disregard all "facts that are irrelevant or unnecessary." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

9  242, 248 (1986). "When the nonmoving party has the burden of proof at trial, the party moving

10 for summary judgment need only demonstrate that there is an absence of evidence to support the

11 nonmoving party's case." *Shwarz v. U.S.*, 234 F.3d 428, 436 (9th Cir. 2000). The nonmoving party

12 may not rely on "mere allegations or denials..., but must provide affidavits or other sources of

13 evidence that set forth specific facts showing that there is a genuine issue for trial." *Id.* (citing Rule

14 56(e)). "Bald assertions that genuine issues of material fact exist," however, "are insufficient." *Galen*

15 *v. Cnty. of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007); *see also United States ex rel. Cafasso v. Gen.*

16 *Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) ("To survive summary judgment, a

17 plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory

18 allegations."). "If the evidence is merely colorable, or is not significantly probative, summary

19 judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).

20 **IV.    STATEMENT OF FACTS**

21 **A.    The Agreement**

22 As noted above, on April 7, 2014, Luxul executed the Agreement with NectarLux.[21] Under

23 the Agreement, Luxul was responsible for maintaining manufacturing quality and a positive brand

24 presence, working with NectarLux to identify sales opportunities, delivering products to meet sales

25

26 ───────────────────
   [21] McKay Decl. at ¶ 5.

27

commitments, and managing partner agreements. As a general matter, NectarLux was responsible for soliciting sales of Luxul products and managing sales accounts. More specifically, NectarLux was obligated to make good faith efforts to meet sales commitments, work with Luxul to accelerate sales, understand "deal flow," and establish factory and distribution channels on the east coast. Luxul and NectarLux were jointly obligated to "work together to ensure that Sales Commitments" were achieved and to meet regularly.[22] The Agreement had a two year duration period. The Agreement also included sales projections and minimum sales commitments, beginning in the third quarter of 2014. Also of particular importance here, the Agreement specifies how NectarLux will be compensated. NectarLux is entitled to be compensated by purchasing Luxul product at a distributor price and then sell the Luxul product to its customers at a higher price – keeping the difference as its profit, or NectarLux could be compensated by receiving a commission from Luxul if the parties negotiated in good faith and separately agreed to a commission structure.

On April 23, 2014 (roughly two weeks after the Agreement was executed), Pan traveled from San Jose, California to New York, New York to meet with Lilien from NectarLux and James Keeney from JKeeney Consulting.[23] Pan spent four days in New York with Lilien and Keeney visiting NectarLux's clients.[24] Among other things, Lilien and Keeney introduced Pan to senior management at AT&T where Lilien, Keeney, and Pan discussed AT&T purchasing Luxul products for AT&T's 3,700 plus properties.[25] Lilien and Keeney also introduced Pan to the strategic and proprietary plan of assembling Luxul products at HTC in Utica, New York.[26] Lilien and Keeney had previously researched and discovered that there was a tremendous business opportunity for NectarLux and Luxul to obtain state and federal contracts under New York Governor Andrew

---

[22] *Id.*
[23] Declaration of Adam Lilien in Support of Defendants' Motion for Summary Judgment ("Lilien Decl.") at ¶ 2.
[24] *Id.* at ¶ 3.
[25] *Id.*
[26] *Id.* at ¶ 4.

MOTION FOR SUMMARY JUDGMENT
CASE NO. 5:14-cv-03656

Cuomo's StartUp New York program, which is a program that makes it possible for small companies who hire adults with disabilities to obtain exclusive contracts from the state and federal government.[27] Lilien and Keeney shared the details of this opportunity and proposed to Pan that Luxul and NectarLux could establish a joint facility at HTC.[28] Luxul immediately saw the value and embraced the idea. Luxul later struck a deal with HTC. HTC now assembles Luxul products at the very same Utica, New York facility that Pan visited with Lilien and Keeney.[29]

On April 27, 2014, NectarLux provided Pan with several comprehensive sales presentations.[30] These presentations show that NectarLux was focusing its marketing and sales efforts on large institutional clients that would purchase millions of Luxul's products, including AT&T. The presentations contain both the NectarLux and Luxul logos. ███████████████ █████████████████████████████████████████████████████████████████████████████ *Moreover,* without permission from NectarLux, Pan customized the presentation by replacing NectarLux's logo on the materials with Luxul's logo.[31]

Also in April 2014, NectarLux asked Pan for permission to create custom marketing materials that replace the Luxul logo with the NectarLux logo.[32] NectarLux explained to Pan these materials would be used in the initial stages of the sales process to prevent potential customers from shopping competing brands for similar products and lower prices.[33] Pan understood and agreed to allow NectarLux to use custom marketing materials.[34] Pan and Luxul even provided NectarLux with Luxul artwork in digital format so that NectarLux could make the custom materials.[35]

---

[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Id.* at ¶ 5.
[31] McKay Decl. ¶ 7.
[32] Lilien Decl. at ¶ 6.
[33] *Id.*
[34] *Id.*
[35] *Id.*

In April, May, and June of 2014, NectarLux devoted all of its time, money, and resources to market and sell Luxul products.[36] NectarLux was having success.[37] Morgan Stanley was a protected NectarLux client. NectarLux marketed Luxul products to Morgan Stanley. Morgan Stanley later purchased nearly $1 million worth of Luxul products.[38] NectarLux also marketed Luxul products to Cornell University. Cornell was a protected NectarLux client. Cornell purchased Luxul samples from NectarLux and eventually Cornell agreed to retrofit its entire campus with Luxul products.[39] The deal fell through after Luxul terminated the Agreement. NectarLux also recruited other distributors to help sell Luxul products. By way of one example, NectarLux recruited Josh Novak from Hillcrest America in Illinois to sell Luxul products.[40] Novak committed to purchase $2 million of Luxul product, enough Luxul product from NectarLux so that NectarLux would satisfy all of the minimum sales commitments in the Agreement.[41] During this time period, NectarLux was also marketing Luxul products to its most valuable protected customer – AT&T.[42]

### B.    AT&T

In early June of 2014, NectarLux had tentatively committed AT&T to purchase between 1.5 and 2.0 million Luxul tubes from NectarLux at an average price of $40 per tube.[43] Per the Agreement, NectarLux would buy the tubes from Luxul for one price (in this case an average price of $34.50), re-sell the tubes to AT&T for a higher price, and keep the difference as its compensation.[44] As such, when AT&T purchased 1.5 million tubes, NectarLux would make

---

[36] Lilien Decl. at ¶ 8.

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] Declaration of Joshua Novak in Support of Defendants' Motion for Summary Judgment ("Novak Decl.") at ¶ 2.

[41] *Id.* at ¶ 6.

[42] Lilien Decl. ¶ at 7; *see also* Declaration of Enzo Caruso in Support of Defendants' Motion for Summary Judgment ("Caruso Decl.") at ¶¶ 3-6.

[43] *Id.*

[44] *Id.*

$8,250,000 ($5.50 per tube x 1.5 million tubes).[45] The sale did not happen because Luxul breached the Agreement.[46] The following timeline illustrates the same.

- **June 14, 2014**. AT&T informed NectarLux that it had been approached by another party, Pinnacle who was selling Luxul products. Pinnacle was suggesting to AT&T that it could sell Luxul products for cheaper than the prices quoted by NectarLux. NectarLux immediately contacted Luxul via email. NectarLux requested Luxul to honor their Agreement. NectarLux asked Luxul to protect the sales channel and to not sell its products to Pinnacle if Pinnacle was attempting to re-sell the product to AT&T. NectarLux even drafted a cease and desist letter for Luxul to send to Pinnacle.[47]

- ███████████████████████████████████████████
███████████████████████████████████████████████
██████████████████████████████████████████
████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████████████████████
███████████████

- ███████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████

---

[45] Lilien Decl. at ¶ 7; *see also* Evans Decl. at ¶ 2, Exhibit 1 at 3-6.
[46] *Id.*
[47] McKay Decl. at ¶ 9, Exhibit 8.
[48] *Id.* at ¶ 10, Exhibit 9.

MOTION FOR SUMMARY JUDGMENT
CASE NO. 5:14-cv-03656

██████████████████████████████

██████████████████████████████

██████████████████████████████

██████████████████████████████

██████████████████████████████

███████████████

- ██████████████████████████████

██████████████████████████████

██████████████████████████████

█████████████

- ██████████████████████████████[51]

- **June 16, 2014**. Bisagni sends Lilien an email that reads, "Per your representative contract, Nectar will be compensated for each tube purchased for installation into AT&T facilities. Nectar shall be entitled to a commission based on the distributor price sheet established by Luxul technology. Please note prices are subject to change."[52]

- **June 16, 2014**. Lilien calls Bisagni. Lilien protests. He refuses to accept a commission. ███████████████████████ ██████████

- **June 16 – 25, 2014**. Lilien tries to contact Pan. Pan stops communicating with Lilien.[54]

---

[49] *Id.* at ¶ 11, Exhibit 10.
[50] McKay Decl. at ¶ 12, Exhibit 11.
[51] *Id.* at ¶ 13, Exhibit 12.
[52] *Id.* at ¶ 14, Exhibit 13.
[53] *Id.* at ¶ 15, Exhibit 14; *see also* Lilien Decl. ¶ 12.
[54] Lilien Decl. at ¶ 13.

- 13 -



- ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ ■■■■■■■■■■■■■■■"[55]

- ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ ■■■■■■■■■■[56]

- **June 21, 2014**. Pan – *for the first and only time* – tells NectarLux he does not want NectarLux using custom marketing materials that replace Luxul with the NectarLux logo.[57]

- ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ ■■■■■■■■■■■■■■■■■■■■■[58]

- ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■[59]

- ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ ■■■■■■■■■■■[60]

- **August 12, 2014**. Luxul terminates the Agreement.[61]

- ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ ■■■■■■■■■■■■■■■■■■■■■[62]

---

[55] McKay Decl. at ¶ 16, Exhibit 15.
[56] *Id.* at ¶ 18.
[57] McKay Decl. at ¶ 19.
[58] *Id.* at ¶ 23.
[59] *Id.* at ¶ 20.
[60] *Id.* at ¶ 21.
[61] *Id.* at ¶ 22.
[62] *Id.* at ¶ 5.

Motion For Summary Judgment
Case No. 5:14-cv-03656

C.    HTC

The following timeline illustrates how the HTC opportunity caused Luxul to wrongfully terminate the Agreement.

- **April 3, 2014**. Lilien writes to Pan. He shares confidential information about establishing east coast operations through HTC and obtain federal and state procurement advantages by doing so.[63]

- **April 24, 2014**. Pan travels to Utica, New York. NectarLux introduces Pan to HTC. NectarLux presents the concept of establishing a Luxul/HTC/NectarLux partnership.[64]

- **April 25, 2014**. Greg Frank, HTC executive, thanks Pan and Lilien visiting HTC. He writes, I look forward to working with you and Adam to make our plans a reality.[65]

- **April 25, 2014**. Lilien responds to Frank's email. He states, "I look forward to working with you and your team."[66]

- **April 28, 2014**. Lilien discusses the structure of Luxul/HTC/NectarLux partnership.[67]

- **April 29, 2014**. Rick Sebastian, HTC executive, emails Lilien and Pan to express excitement about "a future partnership" between Luxul/HTC/NectarLux.[68]

- **April 30, 2014**. Adam Lilien emails Luxul personnel to obtain information needed by HTC, so HTC could retrofit its facility to assemble Luxul products.[69]

---

[63] *Id.* at ¶ 24.
[64] Lilien Decl. at ¶¶ 1-4.
[65] McKay Decl. at ¶ 25.
[66] *Id.*
[67] *Id.* at ¶ 26.
[68] *Id.* at ¶ 29.
[69] *Id.* at ¶ 27.

- 15 -

- **May 14, 2014**. NectarLux and Luxul send a joint letter to HTC that describes their partnership plans. James Pan tells Adam Lilien the "letter is very well written."[70]

- **June 1, 2014**. Lilien and Pan discuss drafts of press release about Luxul/HTC/Nectar partnership.[71]

- ████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████████████ ███████████████████████[72]

- ████████████████████████████████████████ ████████████████████████████████████████ ████████████████[73]

- ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ████████[4]

- **August 12, 2014**. Luxul terminates the Agreement. ███████████ ████████████████████████████████████████ ████████████████████ Luxul sues NectarLux and alleges in its Second Amended Complaint that NectarLux violated the Agreement by communicating with HTC because NectarLux was "not involved in the business relationship."[75]

---

[70] *Id.* at ¶ 28.
[71] *Id.* at ¶ 30.
[72] McKay Decl. at ¶ 31.
[73] *Id.* at ¶ 32.
[74] *Id.* at ¶ 33.
[75] SAC at ¶ 28.

MOTION FOR SUMMARY JUDGMENT
CASE NO. 5:14-cv-03656

## V.     THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS

### A.     Luxul's First, Fifth, Sixth, and Seventh Causes of Action Fail for Lack of Damages

Luxul's First, Fifth, Sixth, and Seventh causes of action fail because there is *no evidence* that Luxul suffered any damages in connection with these causes of action. Luxul's damages expert agrees. ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████ Defendants took Luxul's deposition under Rule 30(b)(6). Pan testified on behalf of Luxul. Defendants repeatedly asked about what damages Luxul suffered in connection with these claims. ████████████████████████████████[76]

Aside from damages, there is no evidence in the record to support requisite elements of the First, Fifth, Sixth, and Seventh causes of action. These causes of action relate to NectarLux's marketing activities. There is no evidence that NectarLux's marketing activities deceived Luxul. There is no evidence that Defendants' marketing activities deceived anyone. There is no evidence that Defendants' marketing activities had a substantial effect on interstate commerce. There is no evidence that Defendants' marketing activities created a likelihood of confusion among the consuming public. There is no evidence that Defendants use of Luxul's alleged copyrighted materials caused Luxul irreparable harm. There is no evidence that Defendants used any of Luxul's alleged copyrighted materials after Luxul wrongfully terminated the Agreement. There is no evidence NectarLux was trying to compete with Luxul.[77] On the other hand, there is evidence in the record that shows Luxul knew about the marketing activities it now complains about. Pan approved them. Bisagni "Liked" the LinkedIn page. There is evidence that Luxul helped create the marketing materials. Luxul's allegations about NectarLux's marketing activities are a pretext that

---

[76] McKay Decl. at ¶ 34, Exhibit 33, Luxul Dep. Tr. 189-204.

[77] *Id.* at ¶ 35.

MOTION FOR SUMMARY JUDGMENT
CASE NO. 5:14-cv-03656

Luxul is using in an attempt to justify its wrongful termination of the Agreement – the evidence shows that too.

**B.  Luxul's Second Cause of Action Fails because there is No Evidence Luxul Suffered an Economic Injury caused by a UCL Violation**

In *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011) the court held a UCL plaintiff must: "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury,* and (2) show that economic injury was the result of, i.e., *caused by*, the unfair practice or false advertising that is the gravamen of the claim." *Id.* Emphasis in original. There is no evidence Luxul suffered an economic injury caused by a UCL violation. Luxul's expert report is helpful. ███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████ Further, given that the First, Fifth, Sixth, and Seventh causes of action are meritless, there is now no predicate to even allege that NectarLux has engaged in any unlawful or unfair business activities.

**C.  Luxul's Third and Fourth Cause of Action Fail because there is No Evidence that NectarLux Breached the Agreement**

Under California law, "the elements of a breach of contract claim are: (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damage to plaintiff." *EPIS, Inc. v. Fid. & Guar. Life Ins. Co.*, 156 F. Supp. 2d 1116, 1124 (N.D. Cal. 2001) (modifying punctuation). To establish contractual damages, a plaintiff must establish "appreciable and actual damage." *Aguilera v. Pirelli Armstrong Tire Corp.*, 64 Cal. Rptr. 187 (Ct. App. 1967) ("A breach of contract without damage is not actionable.").

As the Court previously held in its Order denying NectarLux's motion to dismiss,

> According to [Luxul], NectarLux breached the Agreement by altering Luxul's product to bear the name "Nectar" without permission, misrepresenting Luxul technology as developed, manufactured, and branded by NectarLux, misusing confidential information [Luxul] disclosed to NectarLux to poach a potential customer, and approaching [Luxul's] customers with offers to sell third-party

- 18 -

products. As a result of these alleged breaches, [Luxul] avers that that
Luxul lost potential sales and damage to the value of its brand.[78]

The Court is no longer bound by Luxul's false allegations. There is no evidence that
NectarLux's alleged breach of contract caused Luxul any damages. There is no evidence of a poached
potential customer. There is no evidence of NectarLux wrongfully offering to sell Luxul customers
third party-products. There is no evidence of lost potential sales or damage to Luxul's brand. Again,
Luxul's expert report proves as much. ████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████ There is also no evidence
about NectarLux misusing confidential information. During Luxul's Rule 30(b)(6) deposition,
Luxul was asked to identify what confidential information NectarLux misused. Luxul answered: ████
██████████████████████████ The record speaks for itself. Luxul had no reluctance to repeatedly
allege in pleadings and then to tell the Court that it suffered serious damages, but under cross
examination, Luxul could provide no evidence to support its allegations or representations to the
Court. The Court should grant NectarLux summary judgment.

**D.    Luxul's Eighth Cause of Action for Account Stated Lacks Legal and Evidentiary
        Support**

Luxul claims in is Second Amended Complaint that NectarLux owes Luxul $19,285.27 for
past unpaid invoices. But Luxul's damages expert Goldsmith ███████████████████████████████
████████████████████████████████████████████████████████████████████████████████████
██████████████████████ he Court in its Second Amended Complaint that Luxul's founder
Pan emailed NectarLux's President, Adam Lilien, and wrote Luxul chose to "withdraw from all of
your projects, and recall all of the products we have shipped to you …. Also *Luxul will refund all of*

---

[78] Order Granting In Part and Denying In Part Motion to Dismiss at 20 (citations omitted) (Dkt.
No. 36).

[79] McKay Decl. ¶ 34, Exhibit 33, Luxul Dep. Tr. at 188.

*the payments we received from your projects.*"[80] ██████████████████████████

████████████████████████████████████████████████████████████████

████████████████ Further, the evidence shows Luxul is engaged in accounting fraud, that it keeps

two sets of accounting records, and that its accounting records are often inaccurate.[82] In addition,

the evidence shows Luxul is suing NectarLux for partially paid invoices on products that Luxul

recalled – and not just recalled, but Luxul agreed to "*refund all of the payments we received from your*

*projects.*" Luxul did not refund the payments. As such, not only is Luxul's Account Stated cause of

action utterly lacking in evidence, it is conclusively refuted by the undisputed facts.

## VI.   THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF NECTARLUX OVER ALL OF NECTARLUX'S COUNTERCLAIMS

### A.   The Facts Show Luxul Materially Breached the Agreement

As demonstrated above, the undisputed facts show Luxul wrongfully terminated the

Agreement. Pan may have put it best when we wrote to Jackie Yang the day after Luxul terminated

the Agreement and sued: ██████████████████████████████████████

████████████████████████████████████████████████[83] █

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

NectarLux has been this saying since day one. And here, Pan admits it. Luxul's former employee

Alycia Singleton avers under penalty of perjury that Luxul "often breaches" its contracts with

distributors who market and sell its products like NectarLux here.[84]

The contemporaneous emails also contain other admissions that Luxul wrongfully breached

then terminated the Agreement. On June 14, 2014, NectarLux discovered Luxul was breaching the

---

[80] *Id.* at ¶ 7.
[81] *Id.* at ¶ 3, Goldsmith Dep. Tr. at 80-81.
[82] *See* Singleton Decl. at ¶¶ 8-9.
[83] McKay Decl. at ¶ 5.
[84] Singleton Decl. at ¶ 4-5.

MOTION FOR SUMMARY JUDGMENT
CASE NO. 5:14-cv-03656

parties' Agreement by selling its product to Pinnacle, who was in turn attempting to sell to AT&T. NectarLux respectfully wrote to Luxul and asked Luxul to honor the Agreement. ███████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████ But

that's not what the Agreement says. The Agreement says NectarLux may be compensated if after good faith negotiations the parties' agree to a commission structure.[85] The Agreement does not provide that Luxul was free at its whim to circumvent the customer exclusivity provisions in the Agreement and unilaterally require NectarLux to accept whatever commission structure Luxul wanted to enforce. But that's exactly what the evidence shows Luxul did here. This is an issue of undisputed material fact that the Court may properly resolve on a motion for summary judgment. Pan's self-serving interpretation of the Agreement is wrong as a matter of law.

Further, the evidence shows that Bisagni sent Lilien an email informing Lilien that Luxul decided to sell its products to Pinnacle for re-sale to AT&T. In that email, Bisagni states bluntly that NectarLux would be paid a commission and Luxul would decide what the commission would be. Bisagni testified at his deposition that Lilien objected and was very unhappy.[86] The evidence shows NectarLux did not negotiate in good faith about a commission or agree to a commission in connection with sales to AT&T.

The evidence shows that immediately thereafter, *the same day*, Luxul started searching for ways to terminate the Agreement. This is consistent with the behavior that Alycia Singleton, a former Luxul employee, describes in her declaration submitted in support of Defendants' motion for terminating sanctions.[87] That is, when Luxul gets caught breaching agreements, it looks for

---

[85] McKay Decl. at ¶ 6.
[86] *Id.* at ¶ 15.
[87] Singleton Decl. ¶¶ 4-5.

MOTION FOR SUMMARY JUDGMENT
CASE NO. 5:14-cv-03656

1   arguments to justify its bad acts. ████████████████████████████████

2   ██████████████████████████████████████████████████████████████████

3   ████████████████████████   But the evidence also shows that Pan had previously given

4   NectarLux permission to use the marketing materials at issue. And it is beyond dispute that there

5   is nothing the Agreement that limits or proscribes the way NectarLux had to market and sell Luxul

6   products.

7   The evidence shows that on June 21, 2014, Pan for the first time – after Luxul had decided

8   to terminate the Agreement – told NectarLux that he did not want NectarLux to use custom

9   marketing materials that obscured Luxul's logo. There is no evidence that NectarLux used any such

10   materials between June 21, 2014 and August 12, 2014 (the date Luxul terminated the Agreement).

11   The Agreement requires Luxul and NectarLux to work in good faith to overcome any issues

12   that may arise. There is no evidence that Luxul ever gave NectarLux notice of any alleged breaches

13   of the Agreement, or an opportunity to cure any such breaches. Rather, the evidence shows the

14   opposite. Luxul got caught breaching the agreement, when NectarLux tried to work in good faith

15   with Luxul, and asked Luxul to cure its breach, Luxul decided to use marketing activities as a pretext

16   to as ████████████████████████

17   As demonstrated above, the HTC opportunity also played a major role in Luxul's decision

18   to wrongfully terminate the Agreement. The undisputed facts show NectarLux shared its

19   proprietary and confidential information about the HTC opportunity with Luxul. The evidence

20   shows Luxul saw the substantial value in the opportunity. Luxul pursued the opportunity with

21   NectarLux and HTC. The facts show the parties repeatedly referred to their developing

22   "partnership" and were excited about all the benefits that would result therefrom. But eventually,

23   Luxul decided to cut NectarLux out. Luxul got greedy. The timing was convenient for Luxul because

24   at about the same time HTC was demanding that Luxul and NectarLux sign a formal partnership

25   agreement with HTC, NectarLux caught Luxul breaching the Agreement with Pinnacle and AT&T.

26   The evidence shows Luxul privately asked HTC to stop communicating with NectarLux. Luxul

27

- 22 -

soon thereafter terminated the Agreement. And yet Luxul sued NectarLux for allegedly interfering with the HTC opportunity? Luxul sued in bad faith. The undisputed facts could hardly be worse for Luxul.

NectarLux's damages expert witness, Scott Evans, has submitted two written reports and been deposed. Evans written reports are attached to his declaration submitted herewith and are incorporated by reference. In sum, Evans opines that Luxul's breach of the Agreement caused damages to NectarLux in the amount of at least **$9,384,000**. Evans' written reports and his sworn declaration are corroborated by the declaration of Adam Lilien who avers that in 2014 AT&T would have purchased from NectarLux at least 1.5 to 2.0 million Luxul tubes at $40 per tube had Luxul not terminated the Agreement. The declaration of Joshua Novak is also material. Novak avers that in 2014 Hillcrest America would have purchased at least $2 million from NectarLux of Luxul tubes had Luxul not terminated the Agreement. The undisputed evidence shows that NectarLux had a long and meaningful relationship with Cornell University. The evidence shows that NectarLux introduced Cornell to Luxul. Cornell purchased from NectarLux Luxul tubes. And Cornell eventually agreed to retrofit its entire campus with Luxul product.[88] The undisputed evidence shows that Luxul lost the Cornell sale after Luxul terminated the Agreement with NectarLux. The undisputed evidence shows that Morgan Stanley was a Luxul protected customer under the Agreement. The undisputed evidence shows that NectarLux marketed Luxul products to Morgan Stanley. Morgan Stanley eventually purchased roughly $1 million worth of Luxul tubes. The Morgan Stanley sale was one of the most significant and sizable sales of Luxul products ever made.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████ In sum, the undisputed facts

---

[88] Lilien Decl. at ¶ 8.

MOTION FOR SUMMARY JUDGMENT
CASE NO. 5:14-cv-03656

1   plainly show that Luxul breached the Agreement and that as a direct cause NectarLux was damaged

2   in the amount of at least $9,384,000.

3   **B.    The Facts Show Luxul Breached its Duty of Good Faith and Fair Dealing**

4       In every contract there is an implied covenant of good faith and fair dealing by each party

5   not to do anything which will deprive the other parties of the benefits of the contract, and a breach

6   of this covenant by failure to deal fairly or in good faith gives rise to an action for damages.

7   *Sutherland v. Barclays American/Mortgage Corp.*, 53 Cal. App. 4th 299, 314, (1997). The covenant

8   imposes on each party to the contract the duty to refrain from doing anything which would render

9   performance of the contract impossible by any act of his own, and also the duty to do everything

10  that the contract presupposes that each party will do to accomplish its purpose. *April Enters., Inc. v.*

11  *KTTV*, 147 Cal. App. 3d 805, 816 (1983). A party to a contract breaches the implied covenant of

12  good faith and fair dealing by interfering with or failing to cooperate with the plaintiff in the

13  performance of the contract. Witkin, Summary of California Law, Contracts, §744 (8th ed.); *see*

14  *also Sutherland v. Barclays American/Mortgage Corp.*, 53 Cal. App. 4th 299, 314 (1997). The breaching

15  party is liable for all damages proximately resulting from the conduct. *Quigley v. Pet, Inc.*, 162 Cal.

16  App. 3d 877, 887-88 (1984).

17      The undisputed facts here show that Luxul breached its duty of good faith and fair dealing.

18  As discussed above, when Luxul was caught by NectarLux breaching the Agreement, instead of

19  curing its breaches, or acting in good faith to cure its breaches, Luxul instead embarked on a mission

20  to breach its duty of good faith and fair dealing and to use some pretext to terminate the Agreement

21  and to exacerbate the damages suffered by NectarLux. As a result, NectarLux has been damaged in

22  in the amount of at least $9,384,000.

23  **C.    The Facts Show Luxul is Entitled to an Accounting**

24      The evidence shows NectarLux is entitled to an accounting. The Agreement provides that

25  NectarLux is entitled to compensation for all transactions made in NectarLux's protected territories

26  and its protected customers. Luxul has not provided NectarLux with complete and accurate

27

MOTION FOR SUMMARY JUDGMENT
CASE NO. 5:14-cv-03656

1  information concerning all the Luxul transactions made in connection with NectarLux's protected

2  territories and with NectarLux's protected accounts. To be sure, filed concurrently herewith is a

3  motion for terminating sanctions. That motion is supported by a declaration from Alycia Singleton.

4  She signed a declaration, subject to the penalty of perjury that reveals how Luxul and its counsel

5  Mindy Morton intentionally hid evidence to deprive NectarLux and the Court of the truth

6  concerning the amount of NectarLux's damages.[89] The bad faith, deception, and dishonesty are so

7  bad that NectarLux is concurrently moving for terminating sanctions. That said, the documents

8  and information produced in this lawsuit are sufficient to demonstrate NectarLux has suffered at

9  least $9,384,000 in damages. The true number is likely higher. The Singleton declaration, together

10  with all the other of evidence here that shows that NectarLux is entitled to an honest and

11  transparent accounting so that it may receive the full measure of damages it is entitled to receive as

12  a matter of law.

13  **VII.    CONCLUSION**

14      For all the reasons above, Defendants respectfully request the Court to grant summary

15  judgment in their favor over all of Luxul's causes of action. NectarLux respectfully requests the

16  Court to grant summary judgment in its favor and against Luxul for NectarLux's counterclaims

17  and to find that NectarLux has been damaged by Luxul in the amount of $9,384,000.

18

19  Dated:  April 12, 2016                         SCHNEIDER WALLACE COTTRELL
                                                    KONECKY WOTKYNS LLP
20

21                                                  /s/ Michael C. McKay
                                                    Todd M. Schneider (SBN 158253)
22                                                  Michael C. McKay (Pro Hac Vice)
                                                    Kyle G. Bates (SBN 299114)
23                                                  2000 Powell Street, Suite 1400
                                                    Emeryville, California 94608
24                                                  Telephone: (415) 421-7100
                                                    Facsimile: (415) 421-7105
25

26  _____
    [89] Singleton Decl. ¶¶ 11-13.
27
                                              - 25 -

tschneider@schneiderwallace.com
mmckay@schneiderwallace.com
kbates@schneiderwallace.com

Attorneys for NectarLux, LLC; James Keeney
Consulting, Inc.; and James Keeney

MOTION FOR SUMMARY JUDGMENT
CASE NO. 5:14-cv-03656

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 12, 2016, I electronically transmitted the attached document to the Office of the Clerk of the U.S. District Court using the CM/ECF System which will send notification of such filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants for this case.

/s/ Clarence Williams

MOTION FOR SUMMARY JUDGMENT
CASE NO. 5:14-cv-03656