1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11

12

LUXUL TECHNOLOGY INC.,

Case No. 14-CV-03656-LHK

13

Plaintiff,

**ORDER GRANTING IN PART AND
DENYING IN PART CROSS-MOTIONS
FOR SUMMARY JUDGMENT AND
DENYING CROSS-MOTIONS FOR
SANCTIONS**

14

v.

15

NECTARLUX, LLC, et al.,

16

Defendants.

Re: Dkt. Nos. 85, 92, 93, 94

17

18        Plaintiff and Counterdefendant Luxul Technology, Inc. ("Luxul") moves for summary

19   judgment and for sanctions against Defendants and Counterclaimants NectarLux LLC, JKenney

20   Consulting, Inc., and James Keeney (collectively, "NectarLux").  ECF Nos. 85 ("Luxul Sanctions

21   Mot."), 94 ("Luxul Summ. J. Mot.").  NectarLux also moves for summary judgment and for

22   sanctions against Luxul.  ECF Nos. 92 ("NectarLux Sanctions Mot."), 93 ("NectarLux Summ. J.

23   Mot.").  For the reasons explained below, the Court GRANTS IN PART and DENIES IN PART

24   Luxul's Motion for Summary Judgment; DENIES Luxul's Motion for Sanctions; GRANTS IN

25   PART and DENIES IN PART NectarLux's Motion for Summary Judgment; and DENIES

26   NectarLux's Motion for Sanctions.

27

1

28   Case No. 14-CV-03656-LHK
ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT
AND DENYING CROSS-MOTIONS FOR SANCTIONS

# I.     BACKGROUND

## A.  Factual Background

Plaintiff Luxul Technology Inc. is a California corporation with a principal place of business in Santa Clara, California.  Sec. Am. Compl. ("SAC"), ECF No. 38, ¶ 1.  Defendant NectarLux, LLC is a New York limited liability company with a principal place of business in Syracuse, New York.  *Id.* ¶ 2.  Luxul is a producer of energy efficient light emitting diode ("LED") products.  *Id.* ¶ 9.

### 1.  Luxul's Allegations against NectarLux

On April 6, 2014, Luxul entered into a written "Sales Representation and Marketing Consulting Agreement" ("April 2014 Agreement") with Defendant NectarLux.  *Id.* ¶ 13.; *see* ECF No. 116-2, Ex. 2.  Under the Agreement, NectarLux served as Luxul's "exclusive, independent representative for the sale of Luxul products" in certain regions, for certain customers.  SAC ¶ 13. NectarLux and Luxul were jointly obligated to "work together to ensure that Sales Commitments" were achieved and to meet regularly.  April 2014 Agreement ¶ 1.a.

The Agreement also provided for Luxul to disclose certain confidential information to NectarLux, including information relating to building science technologies, trade secrets, product design, manufacturing, pricing, marketing, distribution, business opportunities and relationships, industry experts, legal entities, and individuals.  SAC ¶ 16.  Under Section 3 of the Agreement, NectarLux agreed that Luxul was "the owner of all right, title, and interest in the Confidential information, including all tangible copies and . . . electronic versions thereof."  *Id.* ¶ 17. NectarLux agreed that it would not disclose confidential information unless necessary to satisfy its obligations under the Agreement.  *Id.* ¶ 18.

In April 2014, James Pan ("Pan"), Luxul's chief executive officer, and Adam Lilien, NectarLux's Managing Director of Nectar Energy, met with a potential manufacturer in New York.  *Id.* ¶ 27.  Luxul continued to negotiate directly with the New York manufacturer.  *Id.* Luxul alleges that in July 2014, Lilien and Keeney contacted the same New York manufacturer to discuss alternative proposals and set up meetings with competing LED companies.  *Id.* ¶ 28.

2

United States District Court
Northern District of California

On August 12, 2014, Luxul terminated the Agreement with NectarLux.  *Id.* ¶ 30.

### 2.  NectarLux's Allegations Against Luxul

NectarLux presents a different version of the allegations summarized above.  NectarLux agrees that parties entered into an Agreement related to sales of Luxul's LED bulbs through NectarLux's distribution network.  Countercl. ¶ 1.  However, NectarLux alleges that Luxul acquired NectarLux's propriety information, including "pricing, marketing and distribution, business opportunities, business relationships influential in purchasing decisions, business entities who may be interested in OEM/resale relationships, as well as other like terms," and then Luxul wrongfully terminated the parties' contracts.  *Id.* ¶ 1.  NectarLux alleges that Luxul "misappropriated NectarLux's information to employ these confidential strategies and to market and sell light bulbs in NectarLux's exclusive territorial regions and to NectarLux's protected clients without compensating NectarLux for the sales."  *Id.*

Additionally, NectarLux begins the allegations in its countercomplaint with reference to an earlier contract, entered into on January 29, 2014 ("January 2014 Agreement").  *Id.* ¶ 20 & Ex. 1. The counterclaims allege that the January 2014 Agreement was negotiated by Adam Lilien; Shawn Colvin, a Luxul representative; and Dennis Malone of DM Lighting.  *Id.* ¶¶ 15, 18, 19 ("Colvin, Malone, and Lilien discussed and negotiated a potential partnership between Luxul and NectarLux.").  According to the counterclaims, the January 2014 Agreement "appointed NectarLux as the exclusive representative for the sale of Luxul products" for certain clients and certain geographic areas.  *Id.* ¶ 20.  The counterclaims further allege that "[o]n or about March 18, 2014, Luxul informed NectarLux the contract was invalid because Colvin had no authority to execute contracts on behalf of Luxul."  *Id.* ¶ 22.  Thereafter, the parties entered into the April 2014 Agreement discussed above, but "Luxul and Pan used duress and wrongfully coerced NectarLux to materially modify the terms of the contract to Luxul's and Pan's benefit."  *Id.* ¶ 25.

The parties now agree that NectarLux was never a party to the January 2014 Agreement because the January 2014 Agreement was executed by Adam Lilien on behalf of a different

Case No. 14-CV-03656-LHK
ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT
AND DENYING CROSS-MOTIONS FOR SANCTIONS

United States District Court
Northern District of California

company named Nectar Partners and its affiliate Nectar Energy.  *See* January 2014 Agreement; Luxul Summ. J. Mot. at 4 ("NectarLux is not named as a party to the January 29, 2014 contract."); ECF No. 106 ("Opp. to Luxul Summ. J. Mot.") at 1 ("The first contract was executed by Nectar Partners and Luxul on January 29, 2014"); ECF No. 104 ("Opp. to Luxul Sanctions Mot.") at 3 ("The first contract was executed by *Nectar Partners* and [Luxul] on January 29, 2014.  There is no dispute the first contract was executed by these parties.").  The parties additionally agree that the April 2014 Agreement was a binding contract between Luxul and NectarLux.  Compl. ¶ 13 ("On or about April 6, 2014, Luxul entered into a written 'Sales Representation and Marketing Consulting Agreement' ('the Agreement') with NectarLux."); Ans. ¶ 13 ("Defendants admit the allegations in Paragraph 13"); *see also* Luxul Sanctions Mot. at 2 ("Luxul and NectarLux entered into a written 'Sales Representation and Marketing Consulting Agreement' dated April 6, 2014."); Opp. to Luxul Sanctions Mot. at 4 ("It is beyond dispute that Luxul and NectarLux agreed to terms and executed the second contract.").

NectarLux alleges that following execution of the April 2014 Agreement, "NectarLux continued to act in good faith" under the terms of the April 2014 Agreement.  Countercl. ¶ 26. NectarLux alleges that in August 2014, NectarLux discovered that Luxul had registered a fraudulent purchase order from NectarLux and "that Luxul was selling light bulbs directly and/or through third parties in NectarLux's territory and to NectarLux's clients without compensating NectarLux for the sales."  *Id.* ¶ 31.  When NectarLux requested compensation for these sales, "Luxul refused, terminated the contract, and severed all business ties with NectarLux."  *Id.*

### B.  Procedural History

Luxul filed its original Complaint on August 12, 2014.  ECF No. 1.  Luxul filed a First Amended Complaint ("FAC") pursuant to stipulation on October 31, 2014.  ECF No. 19. NectarLux filed a motion to dismiss on November 21, 2014.  ECF No. 21.  The Court granted in part and denied in part the motion to dismiss on January 26, 2015, ECF No. 36, and Luxul filed a Second Amended Complaint ("SAC") on February 13, 2015, ECF No. 38.  NectarLux filed an

United States District Court
Northern District of California

1    Answer to the Second Amended Complaint, Third Party Complaint against Pan, and

2    Counterclaims against Luxul on February 27, 2015.  ECF No. 42.  NectarLux's Answer alleged

3    four counterclaims against Luxul and four cross-claims against Pan.  *Id.*

4          Luxul and Pan filed a motion to strike and motion to dismiss on March 27, 2015.  ECF No.

5    45.  Luxul and Pan moved to strike portions of NectarLux's counterclaims and moved to dismiss

6    one of NectarLux's counterclaims and all of NectarLux's cross-claims.  *Id.*  The Court denied the

7    motion to strike and granted the motion to dismiss NectarLux's third counterclaim and all of

8    NectarLux's cross-claims.  ECF No. 61.

9          Luxul then filed an Answer to NectarLux's counterclaims on August 20, 2015, ECF No.

10   62, and an Amended Answer to NectarLux's counterclaims on September 10, 2015, ECF No. 65.

11         Luxul filed a motion for sanctions on April 11, 2016.  ECF No. 85 ("Luxul Sanctions

12   Mot.").  NectarLux filed an opposition on April 25, 2016.  ECF No. 104 ("Opp. to Luxul

13   Sanctions Mot.").  Luxul filed a reply on May 2, 2016.  ECF No. 128 ("Reply to Luxul Sanctions

14   Mot.").

15         Luxul filed a motion for summary judgment on April 12, 2016.  ECF No. 94 ("Luxul

16   Summ. J. Mot.").  NectarLux filed an opposition on April 26, 2016.  ECF No. 106 ("Opp. to Luxul

17   Summ. J. Mot.").  Luxul filed a reply on May 3, 2016.  ECF No. 138 ("Reply to Luxul Summ. J.

18   Mot.").

19         NectarLux filed a motion for sanctions on April 12, 2016.  ECF No. 92 ("NectarLux

20   Sanctions Mot.").  Luxul filed an opposition on April 26, 2016.  ECF No. 111 ("Opp. to

21   NectarLux Sanctions Mot.").  NectarLux filed a reply on May 3, 2016.  ECF No. 132 ("Reply to

22   NectarLux Sanctions Mot.").

23         NectarLux filed a motion for summary judgment on April 12, 2016.  ECF No. 93

24   ("NectarLux Summ. J. Mot.").  Luxul filed an opposition on April 26, 2016.  ECF No. 112 ("Opp.

25   to NectarLux Summ. J. Mot.").  NectarLux filed a reply on May 3, 2016.  ECF No. 134 ("Reply to

26   NectarLux Summ. J. Mot.").

27

28

United States District Court
Northern District of California

5

Case No. 14-CV-03656-LHK
ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT
AND DENYING CROSS-MOTIONS FOR SANCTIONS

United States District Court
Northern District of California

On April 28, 2016, the Court granted the parties' joint stipulation for dismissal with prejudice of Luxul's first, fifth, and sixth causes of action.  ECF No. 121.

Thus, Luxul's SAC has five remaining causes of action against NectarLux: (1) Claim Two for violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; (2) Claim Three for breach of contract; (3) Claim Four for breach of the implied covenant of good faith and fair dealing; (4) Claim Seven for copyright infringement in violation of 17 U.S.C. § 101 *et seq.*; (5) Claim Eight for account stated.  NectarLux's counterclaims have three remaining causes of action against Luxul: (1) Counterclaim One for breach of contract; (2) Counterclaim Two for breach of the implied covenant of good faith and fair dealing; (3) Counterclaim Four for an accounting.

## II.        LEGAL STANDARD

### A.  Summary Judgment

Summary judgment is appropriate if, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986).  At the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559-60 (2006).  A fact is "material" if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party, *id.*  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* (citations omitted).

The moving party bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323.  Where the moving party will have the burden of proof on an issue at trial,

6

it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party, but on an issue for which the opposing party will have the burden of proof at trial, the party moving for summary judgment need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325; *accord Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Once the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

## B. Sanctions

### 1. Rule 11 Sanctions

Rule 11 sanctions are appropriate "when a filing is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." *Estate of Blue v. Cty. of L.A.*, 120 F.3d 982, 985 (9th Cir. 1997). Accordingly, Rule 11 sanctions may be imposed: "[(1)] where a litigant makes a 'frivolous filing,' that is where he files a pleading or other paper which no competent attorney could believe was well grounded in fact and warranted by law; and [(2)] where a litigant files a pleading or paper for an 'improper purpose,' such as personal or economic harassment." *Greenberg v. Sala*, 822 F.2d 882, 885 (9th Cir. 1987).

A frivolous filing is one that is "*both* baseless *and* made without a reasonable and competent inquiry." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 434 (9th Cir. 1996). Thus, when a complaint is challenged under Rule 11, a district court must conduct a two-prong inquiry to determine whether the complaint is frivolous: "(1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Holgate v. Baldwin,* 425 F.3d 671, 676 (9th Cir. 2005); *see also Conn v. Borjorquez*, 967 F.2d 1418, 1421 (9th Cir. 1992) (noting that courts look to whether "a reasonable basis for the position exist[ed] in both law and in fact at the time the position [was] adopted"). The "baseless" and "reasonable inquiry" requirements are conjunctive, not disjunctive. Therefore, "[a]n attorney may not be sanctioned for a [filing] that is not well-

United States District Court
Northern District of California

founded, so long as she conducted a reasonable inquiry." *In re Keegan*, 78 F.3d at 434. By the same token, an attorney cannot "be sanctioned for a complaint which is well-founded, solely because she failed to conduct a reasonable inquiry." *Id.* (emphasis omitted).

When Rule 11 sanctions are party-initiated, the burden is on the moving party to demonstrate why sanctions are justified. *See Tom Growney Equip., Inc. v. Shelley Irrigation Dev., Inc.*, 834 F.2d 833, 837 (9th Cir. 1987). The Ninth Circuit has held that Rule 11 sanctions are "an extraordinary remedy, one to be exercised with extreme caution." *Operating Eng'rs Pension Trust v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988). Sanctions are reserved for "rare and exceptional case[s] where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Id.* at 1344. "Rule 11 must not be construed so as to conflict with the primary duty of an attorney to represent his or her client zealously." *Id.*

### 2. Discovery Sanctions

"There are two sources of authority under which a district court can sanction a party who has despoiled evidence: [1] the inherent power of federal courts to levy sanctions in response to abusive litigation practices, and [2] the availability of sanctions under Rule 37 against a party who 'fails to obey an order to provide or permit discovery.'" *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (quoting Fed. R. Civ. P. 37(b)(2)). Where the conduct for which sanctions are sought is not in violation of a specific discovery order governed by Rule 37, the district court must rely on its "inherent authority" to impose sanctions. *Id.*

The Court may dismiss a party's claims pursuant to the Court's inherent authority "when a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings." *Id.* (citing *Anheuser-Busch, Inc. v. Natural Beverages Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995)). Because dismissal is a harsh sanction, the Court must weigh five factors to determine whether dismissal is an appropriate sanction:

> (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic

United States District Court
Northern District of California

8

Case No. 14-CV-03656-LHK
ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT
AND DENYING CROSS-MOTIONS FOR SANCTIONS

sanctions.

*Anheuser-Busch*, 69 F.3d at 348 (citing *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948 (9th Cir. 1993)).  Dismissal is appropriate only upon a finding of "willfulness, fault, or bad faith."  *Leon*, 464 F.3d at 958.  Additionally, "[d]ue process concerns further require that there exist a relationship between the sanctioned party's misconduct and the matters in controversy such that the transgression threatens to interfere with the rightful decision of the case."  *Anheuser-Busch*, 69 F.3d at 348 (internal quotation marks and brackets omitted).

## III.    DISCUSSION

NectarLux moves for summary judgment on all eight of Luxul's claims and on all three of NectarLux's counterclaims.  NectarLux also moves for sanctions against Luxul.  Luxul moves for summary judgment on all three of NectarLux's counterclaims and for sanctions against NectarLux.  In opposition to NectarLux's motion, Luxul also raises evidentiary objections to several declarations submitted by NectarLux in support of NectarLux's motions and moves for additional sanctions against NectarLux.

The Court begins by addressing Luxul's evidentiary objections.  The Court next addresses both parties' summary judgment motions together.  The Court then turns to each of the motions for sanctions.

### A.  Luxul's Evidentiary Objections to Declarations Submitted by NectarLux in Support of NectarLux's Motions for Summary Judgment and Sanctions

In Luxul's opposition to NectarLux's motion for summary judgment, Luxul raises evidentiary objections to and moves to strike six of the declarations filed by NectarLux in support of NectarLux's motions for summary judgment and sanctions.  Opp. to NectarLux Summ. J. Mot. at 21-25.  Because the Court's conclusions on Luxul's evidentiary objections affect the evidence the Court considers in ruling on the pending motions, the Court begins its analysis by addressing Luxul's evidentiary objections to the NectarLux declarations.

#### 1.  Declaration of Michael C. McKay in Support of Motion for Summary Judgment

Luxul moves to strike the declaration of Michael C. McKay filed in support of

9

United States District Court
Northern District of California

1    NectarLux's motion for summary judgment ("McKay Declaration"), ECF No. 176-1, for failing to

2    comply with 28 U.S.C. § 1746.

3            To satisfy 28 U.S.C. § 1746, a declaration must include a statement in "substantially the

4    following form: . . . 'I declare (or certify, verify, or state) under penalty of perjury that the

5    foregoing is true and correct.'"  The Ninth Circuit has held that a declaration need only

6    "substantially comply with the statute's suggested language" for the Court to consider the

7    declaration as evidence.  *Commodity Futures Trading Com'n v. Topworth Intern., Ltd.*, 205 F.3d

8    1107, 1112 (9th Cir. 1999) (internal quotation marks omitted).  Substantial compliance requires

9    the declarant to make two assertions in the declaration: (1) that the statements in the declaration

10   were made "under penalty of perjury," and (2) "that the contents were true and correct."

11   *Schroeder v. McDonald*, 55 F.3d 454, 460 n.10 (9th Cir. 1995); *see also Nissho-Iwai Am. Corp. v.*

12   *Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988) (28 U.S.C. § 1746 "permits unsworn declarations to

13   substitute for an affiant's oath if the statement contained therein is made 'under penalty of perjury'

14   and verified as 'true and correct.' . . . [The declarant] never declared her statement to be true and

15   correct; therefore, her affidavit must be disregarded as summary judgment proof."); *Aviles v.*

16   *Quick Pick Express, LLC*, No. CV-15-5214-MWF (AGR), 2015 WL 5601824, at *2 (C.D. Cal.

17   Sept. 23, 2015) (refusing to consider declarations made "under penalty of perjury" with the

18   promise that the declarant "could and would testify" to the contents of the declaration if called as a

19   witness but missing an attestation of truth because "the notation of 'under penalty of perjury'

20   requires the corollary attestation that the declaration is true"); *United States v. 8 Gilcrease Lane,*

21   *Quincy Fla. 32351*, 587 F. Supp. 2d 133, 139 (D.D.C. 2008) ("[T]here are two statements that are

22   essential to a proper verification under § 1746: (i) an assertion that the facts are true and correct;

23   and (ii) an averment that the first assertion is made under penalty of perjury."); *Barroca v. Santa*

24   *Rita Jail*, No. C04-0482 VRW (PR), 2006 WL 571355 (N.D. Cal. Mar. 3, 2006) ("A declaration is

25   not admissible as evidence if not verified as true and correct and signed under penalty of

26   perjury."); *Sterling Fifth Assocs. v. Carpentile Corp., Inc.*, No. 03 Civ. 6569(HB), 2003 WL

27

28
Case No. 14-CV-03656-LHK
ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT
AND DENYING CROSS-MOTIONS FOR SANCTIONS

22227960, at *5 (S.D.N.Y. Sept. 26, 2003) ("Section 1746 permits an unsworn declaration made under penalty of perjury to substitute for a sworn affidavit, but only if the claimant states that its contents are true and correct."); *Kersting v. United States*, 865 F. Supp. 669, 676 (D. Haw. 1994) ("As long as an unsworn declaration contains the phrase 'under penalty of perjury' and states that the document is true, the verification requirements of 28 U.S.C. § 1746 are satisfied.").

Luxul objects to the McKay Declaration for failing to comply with Section 1746. However, Luxul does not explain in what way the McKay Declaration fails to comply with Section 1746. Opp. to NectarLux Summ. J. Mot. at 22. McKay states in the declaration: "I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and subject to the penalty of perjury under the laws of California." This satisfies both of the requirements of Section 1746. *See* 28 U.S.C. § 1746; *Commodity Futures Trading Com'n*, 205 F.3d at 1112. Therefore, Luxul's objection on this basis is overruled.

Luxul additionally objects to the contents of certain paragraphs within the McKay Declaration for "improperly characteriz[ing] the contents" of various exhibits attached to the McKay Declaration and for making "conclusory and argumentative statements regarding the contents of these exhibits." Opp. to NectarLux Summ. J. Mot. at 22. The Court concludes that the McKay Declaration accurately describes the exhibits attached to the declaration and that the descriptions are neither conclusory nor argumentative. For example, Luxul objects to the statement "A true and correct copy of Greg Frank's email thanking NectarLux and Luxul for visiting HTC is attached as Exhibit 24." McKay Declaration ¶ 25. Exhibit 24 is an email from Greg Frank of HTC (also known as Human Technologies Corporation) to Adam Lilien of NectarLux and James Pan of Luxul in which Greg Frank states "THANK YOU for visiting and for showing the confidence in Human Technologies, our mission, and our people." ECF No. 175-10, Ex. 24. Luxul does not explain why McKay's description of this email as "Greg Frank's email thanking NectarLux and Luxul for visiting HTC" is inaccurate, conclusory, or argumentative, and the Court concludes that the description is not inaccurate, conclusory, or argumentative.

1    Moreover, in its analysis, the Court does not rely upon McKay's description of the exhibits but

2    instead relies upon the exhibits themselves.

3          Therefore, the Court DENIES Luxul's motion to strike the declaration of Michael C.

4    McKay in support of NectarLux's motion for summary judgment.[1]  Many objections to the

5    McKay Declaration were made without a legal basis.  Accordingly, given the fact that trial is only

6    six weeks away, Luxul is strongly discouraged from renewing any such objections which have

7    caused an unnecessary expenditure of Court and party resources.

8          **2.  Declaration of Scott Evans in Support of Motion for Summary Judgment**

9          Luxul moves to strike the declaration of Scott Evans in support of NectarLux's motion for

10   summary judgment ("Evans Declaration"), ECF No. 176-2, for failure to comply with 28 U.S.C.

11   § 1746 because the "declaration lacks any attestation of truth required under 28 U.S.C. § 1746."

12   Opp. to NectarLux Summ. J. Mot. at 23.  The Evans Declaration serves to authenticate two

13   exhibits: Evans' Expert Report and Rebuttal Report prepared for the instant case.  Evans Decl.

14   ISO NectarLux Summ. J. Mot. ¶¶ 2-4.  Evans states in his declaration that the declaration is made

15   "under penalty of perjury," and for each of the attached exhibits, Evans declares that the attached

16   exhibit is "[a] true and correct copy" of the relevant report.  *Id.* ¶¶ 2-3.  Evans additionally

17   declares that his "qualifications to serve as an expert in this case, along with [his] opinions and the

18   basis for those opinions as well as the facts and data [he] considered are accurately set forth" in the

19   attached reports.  *Id.* ¶ 4.  Thus, although Evans does not use the exact language suggested by

20   Section 1746, the Evans Declaration contains a statement that the declaration is made "under

21   penalty of perjury" and multiple statements that the declaration's contents—in this case, the

22   attached exhibits—are true and correct.  This satisfies the requirement that the declaration

23   substantially comply with Section 1746.  *See Commodity Futures Trading Com'n*, 205 F.3d at

24

25   _____

26   [1] Additionally, Luxul has filed evidentiary objections to NectarLux's Reply to its Motion for
     Sanctions and the Declaration of Michael McKay in Support of NectarLux's Reply to its Motion
27   for Sanctions.  ECF No. 145.  Because the Court denies NectarLux's Motion for Sanctions on
     other grounds, the Court does not reach the merits of these evidentiary objections.

28   Case No. 14-CV-03656-LHK
     ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT
     AND DENYING CROSS-MOTIONS FOR SANCTIONS

United States District Court
Northern District of California

United States District Court
Northern District of California

1112 (declarations need only substantially comply with 28 U.S.C. § 1746 to be admissible); *Schroeder*, 55 F.3d at 460 n.10 (substantial compliance with 28 U.S.C. § 1746 requires two assertions: (1) that the statements in the declaration were made "under penalty of perjury," and (2) "that the contents were true and correct").

Additionally, Evans filed a second declaration in support of NectarLux's reply to NectarLux's motion for summary judgment, in which Evans incorporated by reference the entirety of the Evans declaration in support of NectarLux's motion for summary judgment.  ECF No. 134-3.  Evans' reply declaration attests that it was made "under penalty of perjury" and that the statements in the declaration are "true and correct," thus satisfying 28 U.S.C. § 1746.  *Id.*  Luxul did not file any objections to Evans' reply declaration.

Therefore, the Court DENIES Luxul's motion to strike the declaration of Scott Evans in support of NectarLux's motion for summary judgment.  The objection to the Evans Declaration was made without a legal basis.  Accordingly, given the fact that trial is only six weeks away, Luxul is strongly discouraged from renewing any such objections which have caused an unnecessary expenditure of Court and party resources.

### 3. Declaration of Adam Lilien in Support of Motion for Summary Judgment

Luxul moves to strike the declaration of Adam Lilien in support of NectarLux's motion for summary judgment ("Lilien Declaration"), ECF No. 93-5, for failure to comply with 28 U.S.C. § 1746 because the "declaration lacks any attestation of truth required under 28 U.S.C. § 1746."  Opp. to NectarLux Summ. J. Mot. at 23.

The Lilien Declaration consists primarily of Lilien's account of his dealings with Luxul on behalf of NectarLux.  Lilien Decl. ISO NectarLux Summ. J. Mot.  The Lilien Declaration states that it was made "under penalty of perjury," but the only attestations of truth in the declaration are that the four exhibits attached to the declaration are "true and correct" copies of the original documents.  *Id.*

However, Lilien filed a second declaration in support of NectarLux's reply to NectarLux's

13

United States District Court
Northern District of California

1   motion for summary judgment, in which Lilien incorporated by reference the entirety of Lilien's

2   declaration in support of NectarLux's motion for summary judgment.  ECF No. 134-2.  Lilien's

3   reply declaration attests that it was made "under penalty of perjury" and that the statements in the

4   declaration, including all of the statements in Lilien's original declaration incorporated by

5   reference, are "true and correct," thus satisfying 28 U.S.C. § 1746.  *Id.*  Luxul did not file any

6   objections to Lilien's reply declaration.

7          Therefore, based on the attestations of truthfulness made under penalty of perjury in the

8   Lilien declaration in support of NectarLux's reply to NectarLux's motion for summary judgment,

9   the Court DENIES Luxul's motion to strike the Lilien declaration in support of NectarLux's

10  motion for summary judgment.

11         Luxul additionally objects to the contents of paragraphs 11 and 12 of the Lilien declaration

12  in support of NectarLux's motion for summary judgment as lacking documentary support,

13  impermissible hearsay not subject to an exception, irrelevant, lacking foundation, and contrary to

14  the best evidence rule.  As the Court does not rely upon paragraphs 11 and 12 in its analysis, the

15  Court does not reach the merits of Luxul's objections.

16         **4.  Declaration of Joshua Novak in Support of Motion for Summary Judgment**

17         Luxul moves to strike the declaration of Joshua Novak in support of NectarLux's motion

18  for summary judgment ("Novak Decl."), ECF No. 93-7, for failure to comply with 28 U.S.C.

19  § 1746 because the "declaration lacks any attestation of truth required under 28 U.S.C. § 1746."

20  Opp. to NectarLux Summ. J. Mot. at 24.

21         The Novak Declaration does not contain any attestation of truthfulness.  However, Novak

22  filed a second declaration in support of NectarLux's reply to NectarLux's motion for summary

23  judgment, in which Novak incorporated by reference the entirety of Novak's declaration in

24  support of NectarLux's motion for summary judgment.  ECF No. 134-4.  Novak's reply

25  declaration attests that it was made "under penalty of perjury" and that the statements in the

26  declaration, including all of the statements in Novak's original declaration incorporated by

27

28  Case No. 14-CV-03656-LHK
    ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT
    AND DENYING CROSS-MOTIONS FOR SANCTIONS

United States District Court
Northern District of California

1    reference, are "true and correct," thus satisfying 28 U.S.C. § 1746.  *Id.*  Luxul did not file any

2    objections to Novak's reply declaration.

3         Therefore, based on the attestations of truthfulness made under penalty of perjury in the

4    Novak declaration in support of NectarLux's reply to NectarLux's motion for summary judgment,

5    the Court DENIES Luxul's motion to strike the Novak declaration in support of NectarLux's

6    motion for summary judgment.

7         Luxul additionally objects to paragraph 5 of the Novak Declaration as irrelevant.   In

8    paragraph 5 of the Novak Declaration, Novak, who is the president of Hillcrest America

9    ("Hillcrest"), declares that prior to Luxul's termination of its relationship with NecterLux,

10   "Hillcrest anticipated working with NectarLux to market and sell Luxul products."  Novak Decl.

11   ¶ 5.   This is relevant to NectarLux's claim for damages from Luxul's allegedly wrongful

12   termination of the April 2014 Agreement.   Therefore, the Court overrules Luxul's objection to

13   paragraph 5 of the Novak Declaration.

14        **5.  Declaration of Enzo Caruso in Support of Motion for Summary Judgment**

15        Luxul moves to strike the declaration of Enzo Caruso in support of NectarLux's motion for

16   summary judgment ("Caruso Declaration"), ECF No. 93-8, for failure to comply with 28 U.S.C.

17   § 1746 because the "declaration lacks any attestation of truth required under 28 U.S.C. § 1746."

18   Opp. to NectarLux Summ. J. Mot. at 24.

19        The Caruso Declaration does not contain any attestation of truthfulness, and unlike Evans,

20   Lilien, and Novak, Caruso has not filed a further declaration attesting to the truthfulness of the

21   Caruso declaration.  Therefore, the Court GRANTS Luxul's motion to strike the Caruso

22   Declaration.  *Schroeder*, 55 F.3d at 460 n.10 (substantial compliance with 28 U.S.C. § 1746

23   requires statements (1) that the statements in the declaration were made "under penalty of

24   perjury," and (2) "that the contents were true and correct"); *see also Aviles*, 2015 WL 5601824, at

25   *2 (refusing to consider declarations made "under penalty of perjury" with the promise that the

26   declarant "could and would testify" to the contents of the declaration if called as a witness but

27

28
     Case No. 14-CV-03656-LHK
     ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT
     AND DENYING CROSS-MOTIONS FOR SANCTIONS

missing an attestation of truth because "the notation of 'under penalty of perjury' requires the corollary attestation that the declaration is true").

### 6. Declaration of Alycia Singleton in Support of Motion for Sanctions

Luxul moves to strike the declaration of Alycia Singleton in support of NectarLux's motion for sanctions ("Singleton Declaration"), ECF No. 172-1, for failure to comply with 28 U.S.C. § 1746 because the "declaration lacks any attestation of truth required under 28 U.S.C. § 1746."  Opp. to NectarLux Summ. J. Mot. at 25.

The Singleton Declaration does not contain any attestation of truthfulness, and unlike Evans, Lilien, and Novak, Singleton has not filed a further declaration attesting to the truthfulness of the Singleton declaration.  Therefore, the Court GRANTS Luxul's motion to strike the Singleton declaration in support of NectarLux's motion for sanctions.  *Schroeder*, 55 F.3d at 460 n.10 (substantial compliance with 28 U.S.C. § 1746 requires statements (1) that the statements in the declaration were made "under penalty of perjury," and (2) "that the contents were true and correct"); *see also Aviles*, 2015 WL 5601824, at *2 (refusing to consider declarations made "under penalty of perjury" with the promise that the declarant "could and would testify" to the contents of the declaration if called as a witness but missing an attestation of truth because "the notation of 'under penalty of perjury' requires the corollary attestation that the declaration is true").

With the foregoing rulings on Luxul's objections to NectarLux's declarations in mind, the Court turns to the merits of the parties' motions for summary judgment.

### B.  Cross-Motions for Summary Judgment

NectarLux moves for summary judgment on each of Luxul's eight claims against NectarLux and on each of NectarLux's three counterclaims against Luxul.  Luxul moves for summary judgment on each of NectarLux's three counterclaims against Luxul.  The Court first addresses each of Luxul's eight claims and then addresses each of NectarLux's three counterclaims.

Case No. 14-CV-03656-LHK
ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT
AND DENYING CROSS-MOTIONS FOR SANCTIONS

United States District Court
Northern District of California

United States District Court
Northern District of California

### 1.   Luxul's Claims One, Five, and Six

NectarLux's motion for summary judgment asks the Court to grant summary judgment to NectarLux on Luxul's Claims One, Five, and Six for false designation of origin in violation of 15 U.S.C. § 1125(a), false advertising in violation of 15 U.S.C. § 1125(a), and false advertising in violation of Cal. Bus. & Prof. Code § 17500 *et seq.*  NectarLux Summ. J. Mot at 17.  After the parties filed their oppositions to the cross-motions for summary judgment, the parties filed a stipulation dismissing Luxul's Claims One, Five, and Six with prejudice.  ECF No. 117.  The Court approved the parties' stipulation.  ECF No. 121.  Accordingly, NectarLux's motion for summary judgment is DENIED AS MOOT as to Luxul's Claims One, Five, and Six.

### 2.   Luxul's Claim Two: Violation of the UCL

NectarLux moves for summary judgment as to Luxul's Claim Two for violation of the UCL on the grounds that Luxul has failed to establish that it suffered an economic injury in connection with the conduct Luxul alleges constitutes a UCL violation.  NectarLux Summ. J. Mot. at 18.

To have standing to pursue a claim under the UCL, a plaintiff must "have suffered injury in fact and have lost money or property as a result of the unfair competition."  *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013) (quoting Cal. Bus. & Prof. Code § 17204) (internal quotation marks and alterations omitted).  The "lost money or property" requirement "requires a plaintiff to demonstrate some form of economic injury as a result of his transactions with the defendant."  *Id.* (citing *Kwikset Corp. v. Super. Ct.*, 51 Cal.4th 310, 323 (2011).

In the instant case, Luxul's claim for violation of the UCL is based on the following alleged conduct by NectarLux: "(1) without permission, license or consent, rebranding Luxul LED tubular lamps as 'Nectar' products; and (2) wrongfully and unfairly represented [sic] to third parties that Luxul's business and/or products are affected by legal issues which do not exist."  SAC ¶ 42.  NectarLux argues that the record is devoid of any evidence of economic injury to Luxul as a result of the foregoing alleged wrongful conduct.  NectarLux Summ. J. Mot. at 18.  In support of its motion for summary judgment, NectarLux attaches Luxul's interrogatory response.

17

1    In response to an interrogatory asking Luxul to identify the basis and amount of its damages

2    associated with its UCL claim, Luxul stated that NectarLux "will obtain the requested information

3    through Luxul's expert report."  McKay Decl., Ex. 3 at 3:26-27, 4:6-9.  NectarLux additionally

4    proffers the report of Luxul's damages expert, Bonnie J. Goldsmith.  *Id.*; *see also* ECF No. 162-27

5    ("Goldsmith Report").

6         In the SAC, Luxul alleges that NectarLux violated the UCL by: "(1) without permission,

7    license or consent, rebranding Luxul LED tubular lamps as 'Nectar' products; and (2) wrongfully

8    and unfairly represented [sic] to third parties that Luxul's business and/or products are affected by

9    legal issues which do not exist."  SAC ¶ 42.  However, Goldsmith does not identify any damages

10   owed to Luxul as a result of NectarLux "rebranding Luxul LED tubular lamps as 'Nectar'

11   products" or "wrongfully and unfairly represent[ing] to third parties that Luxul's business and/or

12   products are affected by legal issues which do not exist."  *See id.*; Goldsmith Report ¶¶ 15-25.

13        By contrast, Goldsmith opined that Luxul is entitled to $36,489 in damages from

14   NectarLux stemming from three alleged wrongful acts: (1) $13,477 to account for

15   undercompensation to Luxul from NectarLux's alleged wrongful purchase of Luxul products from

16   a third party—Tim Gayvert—using a discount available to Gayvert but not to NectarLux; (2)

17   $7,797 in invoices for Luxul products allegedly purchased by NectarLux through Gayvert for

18   which Gayvert did not pay Luxul; and (3) $15,215 in unpaid invoices for Luxul products allegedly

19   purchased by NectarLux directly from Luxul.  *See* Goldsmith Report ¶¶ 15-25.  Likewise, at

20   Goldsmith's deposition, Goldsmith confirmed that Luxul's damages for "unfair competition"

21   stemmed from NectarLux's "purchasing product through another distributor [Gayvert] at a lower

22   price than it would have gotten if it had purchased directly from Luxul," and did not identify any

23   bases for UCL damages other than those identified in the Goldsmith Report.  ECF No. 162-35 at

24   40:6-9.  None of the conduct identified by Goldsmith as a basis for damages is identified in the

25   SAC as a basis for Luxul's UCL claim, and indeed, no allegations related to alleged purchases of

26   Luxul products from Gayvert, or any other third party, appear in the SAC at all.  *See* SAC.

27

28

Case No. 14-CV-03656-LHK
ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT
AND DENYING CROSS-MOTIONS FOR SANCTIONS

United States District Court
Northern District of California

In opposition, Luxul has not identified any evidence in the record that Luxul suffered an economic injury in connection with NectarLux "rebranding Luxul LED tubular lamps as 'Nectar' products" or "wrongfully and unfairly represent[ing] to third parties that Luxul's business and/or products are affected by legal issues which do not exist." Instead, Luxul argues that the conduct identified by Goldsmith in her expert report constitutes the "unfair business practices" supporting Luxul's UCL claim. Opp. to NectarLux Summ. J. Mot. at 8-9. However, the conduct identified by Goldsmith is not the conduct alleged in the SAC as a UCL violation.

The Ninth Circuit has held that "when issues are raised in opposition to a motion to summary judgment that are outside the scope of the complaint," the Court should "construe[] the matter raised as a request . . . to amend the pleadings out of time." *Desertrain v. City of L.A.*, 754 F.3d 1147, 1154 (9th Cir. 2014). Because the deadline to amend the pleadings was April 3, 2015—more than a year prior to the date Luxul filed its opposition to NectarLux's motion for summary judgment—Luxul must first show "good cause" for amendment under Rule 16(b), then if "good cause" is shown, Luxul must demonstrate that amendment is proper under Rule 15. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992). Under Rule 15, the Court may deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (brackets and internal quotation marks omitted).

In the instant case, Luxul has made no showing of good cause to amend the SAC, nor has Luxul shown that amendment would be proper under Rule 15. Furthermore, the Court finds that Luxul unduly delayed by waiting until more than a year after the April 3, 2015 deadline to amend the complaint. Fact discovery closed eight months ago on October 16, 2015, and expert discovery closed five months ago on January 22, 2016. The pretrial conference is in three weeks on July 7, 2016. Trial begins in six weeks on August 1, 2016. The Court finds that it would unduly

Case No. 14-CV-03656-LHK
ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT
AND DENYING CROSS-MOTIONS FOR SANCTIONS

United States District Court
Northern District of California

prejudice NectarLux to permit Luxul to amend the SAC at this late stage of the proceedings. Accordingly, the Court will not permit Luxul to amend the SAC to assert Luxul's new, previously unalleged bases for its UCL claim.

Because NectarLux's purchases from Gayvert and NectarLux's allegedly unpaid invoices do not form the basis of Luxul's UCL claim, and because there is no evidence in the record of any economic injury to Luxul from the conduct that does form the basis of Luxul's UCL claim, Luxul has not demonstrated economic injury resulting from the alleged UCL violation. Therefore, Luxul lacks standing to pursue its UCL claim against NectarLux, and the Court GRANTS NectarLux's motion for summary judgment as to Luxul's Claim Two for violation of the UCL. *See Kwikset Corp.*, 51 Cal.4th at 323 (plaintiff must demonstrate economic injury to have standing to bring a UCL claim).

### 3. Luxul's Claims Three and Four: Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing

NectarLux argues that it is entitled to summary judgment on Luxul's claims for breach of contract and breach of the implied covenant of good faith and fair dealing because Luxul has not shown that it suffered any damages as a result of the alleged breaches. NectarLux Summ. J. Mot. at 18-19.

Under California law, "the elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). To establish contractual damages, a plaintiff must establish "appreciable and actual damage." *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000); *Patent Scaffolding Co. v. William Simpson Const. Co.*, 256 Cal. App. 2d 506, 511 (1967) ("A breach of contract without damage is not actionable."). Nominal damages, speculative harm, or threat of future harm do not suffice to show legally cognizable injury. *See Aguilera*, 223 F.3d at 1015; *see also Ruiz v. Gap, Inc.*, 622 F. Supp. 2d 908, 917 (N.D. Cal. 2009).

United States District Court
Northern District of California

20

In the SAC, Luxul alleges that NectarLux breached the explicit and implied terms of the April 2014 Agreement by engaging in the following conduct:

- "[A]ltering Luxul LED tubular lamp products to bear the name 'Nectar' without permission, consent or license from Luxul."  SAC ¶ 48.

- "[D]isplaying images derived from Luxul marketing materials and the Luxul website and without permission, representing said images as those of and/or affiliated with NectarLux." *Id.*

- "[R]epresenting that Mr. Pan, as the inventor of the technology, had conducted research and development for NectarLux by including statements on the NectarLux website purportedly made by Dr. Pan about LED tubular lamp technology." *Id.*

- "[M]isrepresenting Luxul technology as developed, manufactured and branded by NectarLux." *Id.*

- "[S]elling or offering to sell Luxul products to customers by misappropriating the Luxul name and logo in order to profit from the sale directly."  *Id.*

- "[R]epresenting that NectarLux has the license, consent and authority to duplicate Luxul promotional material and set it forth as its own." *Id.*

- "[F]ailing to 'manage and maintain a positive brand image in the lighting industry' by falsely representing to third parties that Luxul had legal problems when no such problems existed." *Id.* ¶ 49.

- "[A]pproaching Luxul customers and attempting to sell, offer to sell and/or broker the sale of LED lighting products by third parties that were not Luxul."  *Id.* ¶¶ 50, 58.

- "[M]odifying Luxul product images and marketing materials and passing them off as 'Nectar' branded products and materials, thereby attempting to obtain a direct financial benefit and frustrate Luxul's ability to realize sales of its own products."  *Id.* ¶ 57.

- "[F]alsely representing to third parties that Luxul was experiencing 'legal problems' when no such legal issues existed."  *Id.* ¶ 59.

United States District Court
Northern District of California

1    NectarLux argues that the record is devoid of any evidence of damages incurred by Luxul as a

2    result of any of the foregoing conduct, and that all of Luxul's evidence of damages pertains to

3    conduct not related to the conduct alleged in the SAC.

4         Luxul argues that it has produced evidence of damages pertaining to its claims for breach

5    of contract and breach of the implied covenant of good faith and fair dealing.  Opp. to NectarLux

6    Summ. J. Mot. at 16.  Specifically, Luxul argues that the expert report of Bonnie Goldsmith sets

7    forth Luxul's breach of contract damages.  *Id.*  However, as described in Section III.B.2, *supra*,

8    the Goldsmith Report describes damages related only to NectarLux's alleged wrongful purchase of

9    Luxul products from Tim Gayvert, Gayvert's failure to pay certain invoices, and NectarLux's

10   failure to pay certain invoices.  *See* Goldsmith Report ¶¶ 15-25.  The Goldsmith Report contains

11   no evidence of any damages associated with any of the conduct alleged in the SAC as a breach of

12   contract or breach of the implied covenant of good faith and fair dealing.  *See id.*  Luxul has not

13   identified any evidence in the record of any damages associated with the conduct alleged in the

14   SAC as a breach of contract, nor has the Court in its own review of the record.

15        Instead, Luxul appears to argue that the Court should treat the conduct upon which

16   Goldsmith relied as the basis of Luxul's claims for breach of contract and breach of the implied

17   covenant of good faith and fair dealing, despite the fact that none of that conduct was alleged in

18   the SAC as a breach of contract or breach of the implied covenant of good faith and fair dealing,

19   and despite the fact that the SAC in fact contains no allegations related to the alleged purchases

20   from Gayvert.[2]  The Court treats this as a request "to amend the pleadings out of time,"

21   *Desertrain*, 754 F.3d at 1154, which requires Luxul to show both "good cause" for amendment

22   under Rule 16(b) and that amendment is proper under Rule 15, *Johnson*, 975 F.2d at 607-08 (9th

23   Cir. 1992).

24        In the instant case, Luxul has made no showing of good cause to amend the SAC, nor has

25

26   [2] The SAC does contain allegations regarding NectarLux's allegedly unpaid invoices, but those
27   allegations pertain to Luxul's Claim Eight for an account stated, not to Luxul's Claims Three and
     Four for breach of contract and breach of the implied covenant of good faith and fair dealing.

28   Case No. 14-CV-03656-LHK
     ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT
     AND DENYING CROSS-MOTIONS FOR SANCTIONS

22

United States District Court
Northern District of California

1  Luxul shown that amendment would be proper under Rule 15.  Furthermore, the Court finds that

2  Luxul unduly delayed by waiting until more than a year after the April 3, 2015 deadline to amend

3  the complaint, and that it would unduly prejudice NectarLux to permit Luxul to amend the SAC at

4  this late stage of the proceedings.  The case has been pending for nearly two years, fact and expert

5  discovery have closed, and the trial is scheduled to begin in six weeks.  Accordingly, the Court

6  will not permit Luxul to amend the SAC to assert Luxul's new, previously unalleged bases for its

7  breach of contract and breach of the implied covenant of good faith and fair dealing claims.  *See*

8  *Leadsinger*, 512 F.3d at 532.

9        Because NectarLux's purchases from Gayvert and NectarLux's allegedly unpaid invoices

10  do not form the basis of Luxul's claims for breach of contract and breach of the implied covenant

11  of good faith and fair dealing, and because there is no evidence in the record of any damages to

12  Luxul from the conduct that does form the basis of Luxul's breach of contract and breach of the

13  implied covenant of good faith and fair dealing claims, Luxul has not demonstrated that

14  NectarLux's alleged breaches resulted in damage to Luxul.  Therefore, Luxul cannot show

15  damages, an essential element of Luxul's breach of contract claims, and the Court GRANTS

16  NectarLux's motion for summary judgment as to Luxul's Claims Three and Four for breach of

17  contract and breach of the implied covenant of good faith and fair dealing.  *See Patent Scaffolding*,

18  256 Cal. App. 2d at 511 ("A breach of contract without damage is not actionable.").

19        **4.  Luxul's Claim Seven: Copyright Infringement**

20        NectarLux argues that it is entitled to summary judgment on Luxul's Claim Seven for

21  copyright infringement on the grounds that Luxul has no damages or other available relief

22  associated with the alleged copyright infringement.  NectarLux Summ. J. Mot. at 17; Reply to

23  NectarLux Summ. J. Mot. at 2-4.  Although NectarLux does not concede that it infringed Luxul's

24  copyrights, Reply to NectarLux Summ. J. Mot. at 4 n.13, NectarLux argues that summary

25  judgment is appropriate solely because the undisputed facts show that Luxul is not entitled to

26  damages or any equitable relief.

27

28

Case No. 14-CV-03656-LHK
ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT
AND DENYING CROSS-MOTIONS FOR SANCTIONS

United States District Court
Northern District of California

1    In support of its argument that Luxul has no available remedy for alleged copyright

2    infringement, NectarLux directs the Court to the testimony of Luxul's Rule 30(b)(6) deponent,

3    James Pan, who was unable to identify any damages associated with Luxul's copyright

4    infringement claim when asked to do so at his deposition.  McKay Decl., ECF No. 178, Ex. 33 at

5    203:1-205:15.  NectarLux also proffers the testimony of Luxul's damages expert, Bonnie

6    Goldsmith, who testified that she did not calculate any damages associated with copyright

7    infringement despite having been asked to do so because any such damages were "too speculative

8    to consider."  McKay Decl., Ex. 1 at 26:7-27:1.  Goldsmith accordingly did not include any

9    damages for copyright infringement in her expert report.  *See* Goldsmith Report ¶¶ 15-25.

10   Furthermore, in response to an interrogatory asking Luxul to identify the basis and amount of its

11   damages associated with the copyright infringement claim, Luxul stated that NectarLux "will

12   obtain the requested information through Luxul's expert report."  McKay Decl., Ex. 3 at 7:22-23.

13   The expert report, however, contains no calculation of damages for copyright infringement, and no

14   other calculation of copyright damages has been identified.

15       NectarLux additionally argues that Luxul is not entitled to equitable relief because

16   NectarLux has already "removed and/or destroyed all of the allegedly infringing materials."

17   Lilien Decl. ISO Reply to NectarLux Summ. J. Mot., ECF No. 134-2, ¶ 6.  Indeed, at the Rule

18   30(b)(6) deposition of James Pan, Pan and Luxul's attorney both acknowledged that NectarLux's

19   website, where the alleged infringement had occurred, was no longer available online.  McKay

20   Decl. ISO NectarLux Summ. J. ¶ 34, Ex. 33 at 203:10-204:1 ("[Question:] [D]o you know

21   whether these images are even on the NectarLux website?  [Objection from Luxul's attorney:] I'm

22   just going to object on the grounds that the website doesn't exist anymore.  It's not up on the Web

23   at all. . . .  [Question:] But you understand you're asking the judge to force NectarLux to take the

24   website down, and the website is not even in existence?  [Answer:] Because, even if it does not

25   exist today doesn't mean that it cannot exist tomorrow.").

26       Although Luxul states in its opposition that "Plaintiff submits there is sufficient evidence

27

28   Case No. 14-CV-03656-LHK
     ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT
     AND DENYING CROSS-MOTIONS FOR SANCTIONS

1  produced in discovery that creates a material fact dispute" regarding whether Luxul is entitled to

2  relief on its copyright infringement claim, Luxul identifies no such evidence in the record.  Opp. to

3  NectarLux Summ. J. Mot. at 7-8.  The Court in its review of the record also has not identified any

4  evidence that Luxul is entitled to damages on its copyright infringement claim.  The Court thus

5  concludes that the undisputed evidence shows that Luxul is not entitled to damages on its

6  copyright infringement claim.  Additionally, the undisputed evidence shows that NectarLux has

7  already removed and destroyed all of the allegedly infringing materials, such that Luxul's request

8  for injunctive relief is now moot.  *See Seven Words LLC v. Network Solutions*, 260 F.3d 1089,

9  1100 (9th Cir. 2001) (claim for injunctive relief is moot when injunctive relief is no longer

10  available).  Therefore, the Court GRANTS NectarLux's motion for summary judgment as to

11  Luxul's Claim 7 for copyright infringement.

12      **5.  Luxul's Claim Eight: Account Stated**

13      NectarLux moves for summary judgment on Luxul's claim for an account stated because,

14  according to NectarLux, Luxul's accounts are inaccurate, and NectarLux does not owe Luxul for

15  any unpaid invoices due to Luxul's recall of the covered products.  NectarLux's sole evidentiary

16  support for NectarLux's argument that Luxul keeps inaccurate accounts is the Singleton

17  Declaration, which the Court does not consider as evidence in ruling on NectarLux's motion, *see*

18  Section III.C.6, *supra*.

19      As to whether Luxul recalled the products covered by the allegedly unpaid invoices,

20  NectarLux has produced an email from Luxul dated July 25, 2014 in which Luxul offered to

21  refund NectarLux for any products recalled by Luxul.  McKay Decl., Ex. 6.  The email

22  specifically states that Luxul "decide[d] to be responsible and withdraw from all of your projects,

23  and recall all of the products we have shipped to you. . . . Luxul will refund all of the payments we

24  received from your projects. . . . Please give me a list of projects and Luxul products you would

25  like to return to us, Luxul will take full charge and recall all of the products you would like to

26  return."  *Id.*  NectarLux also attaches the declaration of Adam Lilien stating that "[w]hen James

27

28  Case No. 14-CV-03656-LHK
ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT
AND DENYING CROSS-MOTIONS FOR SANCTIONS

Pan recalled all of the products Luxul shipped to NectarLux and offered to refund all of the payments Luxul received from NectarLux, I accepted his offer. . . . Luxul, however, did not refund any of the payments NectarLux made for those products."  Lilien Decl. ISO Reply to NectarLux Summ. J. Mot., ECF No. 134-2, ¶ 7.  Although the recall offer from Luxul gave NectarLux discretion to decide which "Luxul products you would like to return to us," McKay Decl., Ex. 6, Lilien does not explain which or how many products NectarLux returned to Luxul.  In opposition, Luxul submits evidence that, as of July 18, 2014, NectarLux owed Luxul a balance of $18,764.47.  Morton Decl. ISO Opp. to NectarLux Summ. J. Mot, ECF No. 162, Ex. 25.  Thus, there is evidence in the record that Luxul shipped products to NectarLux for which NectarLux had not reimbursed Luxul as of July 18, 2014, and that NectarLux subsequently returned at least some or all of Luxul's products to Luxul pursuant to Luxul's recall offer.  However, the parties have not identified, and the Court has not found evidence in the record showing what products NectarLux returned to Luxul, nor what the offset would be on the unpaid invoices for the recalled products.  Accordingly, there is a material factual dispute regarding what, if anything, remains to be paid by NectarLux to Luxul on the July 18, 2014 invoice, so summary judgment is not appropriate on Luxul's claim for an account stated.

Thus, the Court DENIES NectarLux's motion for summary judgment on Luxul's Claim Eight for account stated.

### 6.  NectarLux's Counterclaim One: Breach of Contract

Luxul argues that it is entitled to summary judgment on NectarLux's first counterclaim for breach of contract because, according to Luxul, NectarLux's counterclaim addresses breach of only the January 2014 Agreement to which NectarLux was not a party.  *See* Luxul Summ. J. Mot. at 7-9; Reply to Luxul Summ. J. Mot. at 2-6.

The parties now agree that NectarLux was not a party to the January 2014 Agreement, and that NectarLux accordingly may not seek damages for any breach by Luxul of the January 2014 Agreement.  *See* Luxul Summ. J. Mot. at 4 ("NectarLux is not named as a party to the January 29,

Case No. 14-CV-03656-LHK
ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT
AND DENYING CROSS-MOTIONS FOR SANCTIONS

United States District Court
Northern District of California

2014 contract."); Opp. to Luxul Summ. J. Mot. at 1 ("The first contract was executed by Nectar Partners and Luxul on January 29, 2014"); Opp. to Luxul Summ. J. Mot. at 2 ("NectarLux, however, is only seeking damages associated with Luxul's breach of the second contract."). However, Luxul is correct that portions of NectarLux's first counterclaim appear to seek damages for Luxul's alleged breach of the January 2014 Agreement.  Specifically, NectarLux alleges that "Luxul materially breached the contract in March when it claimed that Colvin was not authorized to execute contracts on behalf of Luxul and thereafter Luxul refused to honor the contract." Countercl. ¶ 34.  This allegation refers exclusively to the January 2014 Agreement and the events that led the parties to enter into the April 2014 Agreement.  Because NectarLux was not a party to the January 2014 Agreement, however, NectarLux may not recover damages for any breach of the January 2014 Agreement.  *See Hatchwell v. Blue Shield of Cal.*, 198 Cal. App. 3d 1027, 1034 (1988) ("Someone who is not a party to the contract has no standing to enforce the contract or to recover extra-contract damages for wrongful withholding of benefits to the contracting party."). Therefore, the Court GRANTS Luxul's motion for summary judgment as to NectarLux's allegations regarding breach of the January 2014 Agreement.

However, NectarLux's counterclaim for breach of contract additionally alleges that Luxul breached the April 2014 Agreement.  Specifically, NectarLux admits in its Answer to the SAC that it entered the April 2014 Agreement with Luxul.  Ans. ¶ 13.  NectarLux then alleges that "NectarLux continued to act in good faith" under the April 2014 Agreement.  Countercl. ¶ 26. NectarLux alleges that NectarLux took numerous steps to perform pursuant to the April 2014 Agreement, including successfully securing customers on behalf of Luxul in May 2014.  *Id.* ¶¶ 26-30.  NectarLux alleges, however, that in August 2014, NectarLux discovered a fraudulent purchase order entered in Luxul's records in NectarLux's name, and that NectarLux discovered that "Luxul was selling light bulbs directly and/or through third parties in NectarLux's territory and to NectarLux's clients without compensating NectarLux for the sales." *Id.* ¶ 31.  These allegations, if true, would violate the April 2014 Agreement, which was the operative contract in

Case No. 14-CV-03656-LHK
ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT
AND DENYING CROSS-MOTIONS FOR SANCTIONS

1  summer 2014.  *See* April 2014 Agreement ¶ 1.  Accordingly, NectarLux alleges that Luxul

2  "materially breached the contract when it sold light bulbs in NectarLux's territory and to

3  NectarLux's protected clients without providing NectarLux with an accounting or any

4  compensation for the sales."  Countercl. ¶ 34.  These allegations that Luxul breached the contract

5  in August 2014 correspond to a breach of the April 2014 Agreement, which was the operative

6  contract at the time.

7     NectarLux further alleges that Luxul breached the contract by failing to: (1) "[m]aintain

8  manufacturing quality;" (2) "[m]anage and maintain a positive brand presence;" (3) "[w]ork with

9  NectarLux to resolve challenges with product performance in a timely manner;" (4) "[m]anage

10 other Representative/Partner agreements to not conflict with the NectarLux contract;" (5) "[w]ork

11 together with NectarLux to ensure that sales commitments were achieved;" (6) "[m]eet regularly

12 to successfully work through challenges;" (7) "[m]aintain confidential information for the sole

13 purpose of advancing both parties' profitability;" (8) "[m]aintain non-compete covenants;" and (9)

14 "[m]aintain non-circumvent covenants."  *Id.* ¶ 35.  Although NectarLux's counterclaim does not

15 specify whether these alleged breaches occurred under the January 2014 Agreement or the April

16 2014 Agreement, all of these alleged breaches correspond to explicit contract terms in the April

17 2014 Agreement.  *See* April 2014 Agreement ¶¶ 1-7, 9.

18    Therefore, because NectarLux's counterclaim for breach of contract alleges that Luxul

19 breached the April 2014 Agreement, the Court DENIES Luxul's motion for summary judgment as

20 to NectarLux's allegations regarding breach of the April 2014 Agreement.

21    NectarLux additionally argues that it is entitled to summary judgment because the

22 undisputed evidence is that Luxul breached the April 2014 Agreement.  *See* NectarLux Summ. J.

23 Mot. at 20-24.  Luxul disputes NectarLux's evidence that Luxul breached the April 2014

24 Agreement.  Opp. to NectarLux Summ. J. Mot. at 17-20.  The Court finds that there are material

25 factual disputes regarding whether Luxul breached the April 2014 Agreement such that summary

26 judgment for NectarLux is not appropriate.

27

28
Case No. 14-CV-03656-LHK
ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT
AND DENYING CROSS-MOTIONS FOR SANCTIONS

United States District Court
Northern District of California

1    For example, there is a material factual dispute regarding whether Luxul breached the

2    April 2014 Agreement by paying NectarLux a commission for sales Luxul made to AT&T.  The

3    April 2014 Agreement provides that NectarLux would be the "exclusive independent

4    representative of Luxul for . . . the solicitation of sales of the Luxul products" within NectarLux's

5    defined territory and for NectarLux's defined accounts.  April 2014 Agreement ¶ 1.  The contract

6    permitted NectarLux to be compensated through NectarLux's direct profits or through a

7    commission "to be negotiated in good faith."  *Id.*  NectarLux has produced a Luxul internal email

8    chain from June 2014 in which Luxul executives, including James Pan, discussed Luxul's plan to

9    sell Luxul products to AT&T (a protected NectarLux account) through a sale that was not solicited

10    by NectarLux.  McKay Decl., ECF No. 178, Ex. 12. NectarLux argues that Luxul breached the

11    April 2014 Agreement by proceeding with the AT&T sales because the sales were not solicited by

12    NectarLux and NectarLux did not agree to receive a commission in exchange for Luxul

13    proceeding with the AT&T sales.  NectarLux Summ. J. Mot. at 21.

14    By contrast, Luxul provides evidence that, in June 2014 prior to the AT&T sales,

15    NectarLux and Luxul engaged in email negotiations regarding appropriate commissions.  Morton

16    Decl. ISO Opp. to NectarLux Summ. J. Mot., ECF No. 162, Ex. 48.  Luxul argues that the

17    commission paid to NectarLux for the AT&T sales was the highest commission amount requested

18    by NectarLux in these negotiations, supporting the conclusion that the commission paid to

19    NectarLux on the AT&T sales was the product of good faith negotiations.  Opp. to NectarLux

20    Summ. J. Mot. at 17.  Luxul further provides an email chain between Luxul and NectarLux

21    purportedly showing commissions paid to NectarLux after the AT&T sales.  Morton Decl. ISO

22    Opp. to NectarLux Summ. J. Mot., Ex. 25.  Thus, the evidence in the record creates a material

23    factual dispute regarding whether NectarLux and Luxul negotiated a commission pursuant to the

24    April 2014 Agreement that would apply to the AT&T sales.

25    Therefore, because there is a material factual dispute regarding whether Luxul breached

26    the April 2014 Agreement, the Court DENIES NectarLux's motion for summary judgment as to

27

28    Case No. 14-CV-03656-LHK
ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT
AND DENYING CROSS-MOTIONS FOR SANCTIONS

1    NectarLux's allegations regarding breach of the April 2014 Agreement.

2        **7.  NectarLux's Counterclaim Two: Breach of the Implied Covenant of Good Faith and Fair Dealing**

3        Luxul argues that NectarLux's counterclaim for breach of the implied covenant of good

4    faith and fair dealing should be dismissed because it is based upon the January 2014 Agreement to

5    which NectarLux was not a party and because it is duplicative of NectarLux's breach of contract

6    counterclaim.  Luxul Summ. J. Mot. at 9-12.

7        Every contract contains an implied-in-law covenant of good faith and fair dealing.  *Foley v.*

8    *Interactive Data Corp.*, 47 Cal. 3d 654, 683-84 (1988).  "Simply stated, the burden imposed is that

9    neither party will do anything which will injure the right of the other to receive the benefits of the

10   agreement . . . the implied covenant imposes upon each party the obligation to do everything that

11   the contract presupposes they will do to accomplish its purpose."  *Careau & Co. v. Sec. Pac. Bus.*

12   *Credit, Inc.*, 222 Cal. App. 3d 1371, 1393 (1990) (citations, quotations, and alterations omitted).

13   However, the law is clear that there can be no duty of good faith arising from the implied covenant

14   where there is no underlying contract.  *See Foley*, 47 Cal. 3d at 684; *Smith v. City & Cty. of S.F.*,

15   225 Cal. App. 3d 38, 49 (1990) ("The prerequisite for any action for breach of the implied

16   covenant of good faith and fair dealing is the existence of a contractual relationship between the

17   parties, since the covenant is an implied term in the contract.").

18       Like NectarLux's breach of contract counterclaim, NectarLux's implied covenant

19   counterclaim includes certain allegations—namely that Luxul breached the implied covenant by

20   "claiming that Colvin was not authorized to execute the contract," NectarLux Countercl. ¶ 40—

21   that relate to the January 2014 Agreement.  Because NectarLux was not a party to the January

22   2014 Agreement, *see supra*, the Court GRANTS Luxul's motion for summary judgment as to

23   NectarLux's implied covenant counterclaim as to the January 2014 Agreement.

24       However, NectarLux's implied covenant counterclaim also includes allegations that relate

25   to the April 2014 Agreement.  In particular, NectarLux alleges that "[i]mplicit in the NectarLux

26   contract are provisions prohibiting Luxul from terminating the contract without good cause, or

27                                                    30

from terminating the contract to circumvent paying NectarLux for light bulb sales." NectarLux Countercl. ¶ 39. NectarLux additionally alleges that the April 2014 Agreement "implicitly prohibits Luxul from acquiring NectarLux's labor, client lists, marketing strategy, sales presentations, and other intellectual property and then terminating the contract so it can profit from NectarLux's labor and intellectual property without compensating NectarLux as anticipated by the contract." *Id.* Accordingly, NectarLux alleges in its implied covenant counterclaim that "Luxul breached the implied covenant of good faith and fair dealing by refusing to honor the NectarLux contract, . . . and misappropriating [NectarLux's] labor and intellectual property for its own profit without compensating NectarLux as anticipated by the contract." *Id.* ¶ 40. NectarLux further alleges that Luxul terminated the contract in August 2014; the operative contract at that time was the April 2014 Agreement. *Id.* ¶ 31. Thus, these allegations of Luxul's breach of the implied covenant of good faith and fair dealing pertain to the April 2014 Agreement, not the January 2014 Agreement.

Furthermore, NectarLux's implied covenant counterclaim is not duplicative of its breach of contract counterclaim. Although the California Supreme Court has held that a plaintiff may bring both a claim for breach of contract and a claim for breach of the implied covenant of good faith and fair dealing, the California Supreme Court has made clear that when both causes of action cite the same underlying breach, the implied covenant cause of action will be superfluous with the contract cause of action. *See Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 327 (2000) ("[W]here breach of an actual term is alleged, a separate implied covenant claim, based on the same breach is superfluous."). In other words, a claim alleging breach of the implied covenant of good faith and fair dealing cannot be "'based on the same breach' as the contract claim." *Daly v. United Healthcare Ins. Co.*, No. 10-CV-03032-LHK, 2010 WL 4510911, at *4 (N.D. Cal. Nov. 1, 2010) (quoting *Guz*, 24 Cal. 4th at 327). However, a claim for breach of the implied covenant of good faith and fair dealing is not superfluous with a breach of contract claim when the covenant claim is based "on a different breach than the contract claim." *Id.*

31

United States District Court
Northern District of California

1   Here, NectarLux's counterclaim for breach of the implied covenant of good faith and fair

2 dealing is based on a different breach than the contract claim.  NectarLux's breach of contract

3 counterclaim is based on Luxul's alleged breach of the explicit terms of the April 2014 Agreement

4 from April through August 2014, while the April 2014 Agreement was still in effect.  *See* Section

5 III.B.6, *supra*.  By contrast, NectarLux's implied covenant counterclaim is based primarily on

6 Luxul's alleged wrongful termination of the April 2014 Agreement in August 2014 without good

7 cause.  *See* Countercl. ¶¶ 39-40.  Although the April 2014 Agreement specifies that its duration

8 would be until at least January 29, 2016, the April 2014 Agreement does not contain any explicit

9 discussion of what would constitute good cause to terminate the contract.  April 2014 Agreement

10 ¶ 11 (discussing contract duration).  Thus, because no explicit contract term discusses good cause

11 for termination, NectarLux's allegations that Luxul breached the April 2014 Agreement by

12 terminating the contract without good cause in order to avoid paying NectarLux allege a violation

13 of the implied covenant of good faith and fair dealing.

14   Therefore, the Court DENIES Luxul's motion for summary judgment as to NectarLux's

15 allegations regarding breach of the implied covenant of good faith and fair dealing with respect to

16 the April 2014 Agreement.

17   NectarLux additionally argues that it is entitled to summary judgment on NectarLux's

18 counterclaim for breach of the implied covenant of good faith and fair dealing based on the same

19 evidence NectarLux proffers in support of NectarLux's motion for summary judgment on

20 NectarLux's counterclaim for breach of contract.  NectarLux Summ. J. Mot. at 20-24.  As

21 described in Section III.B.6, *supra*, there are material factual disputes regarding whether Luxul

22 breached the April 2014 Agreement.  Therefore, the Court DENIES NectarLux's motion for

23 summary judgment as to NectarLux's counterclaim for breach of the implied covenant of good

24 faith and fair dealing.

25 **8.  NectarLux's Counterclaim Four: Accounting**

26   Luxul moves for summary judgment on NectarLux's counterclaim for an accounting on

27

28 Case No. 14-CV-03656-LHK
ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT
AND DENYING CROSS-MOTIONS FOR SANCTIONS

United States District Court
Northern District of California

1   the grounds that the accounting counterclaim, like the breach of contract and breach of the implied

2   covenant counterclaims, is based exclusively on the January 2014 Agreement to which NectarLux

3   was not a party and on the grounds that NectarLux has an adequate remedy at law and thus may

4   not bring a claim for an accounting.  Luxul Summ. J. Mot. at 12-14.  NectarLux moves for

5   summary judgment on NectarLux's accounting counterclaim on the grounds that the Singleton

6   Declaration demonstrates that Luxul is hiding evidence regarding NectarLux's damages.

7   NectarLux Summ. J. Mot. at 24-25.

8       NectarLux's accounting counterclaim seeks an accounting based on the breaches of

9   contract and the implied covenant of good faith and fair dealing described in NectarLux's first two

10  counterclaims.  *See* Countercl. ¶¶ 41-43.  For the reasons described above, NectarLux's first two

11  counterclaims are not based exclusively on the January 2014 Agreement.  *See* Sections III.B.6-7,

12  *supra.*  Accordingly, the Court turns to address the parties' arguments regarding whether

13  NectarLux has an adequate remedy at law.

14      A claim for accounting "may be brought to require a defendant to account to a plaintiff for

15  money or property: (1) where a fiduciary relationship exists between the parties, or (2) where,

16  though no fiduciary relationship exists, the accounts are so complicated that an ordinary legal

17  action demanding a fixed sum is impracticable."  *Lee v. U.S. Bank*, No. C 10-1434 RS, 2010 WL

18  2635777, at *12 (N.D. Cal. June 30, 2010) (citing *Civic W. Corp. v. Zila Indus., Inc.*, 66 Cal. App.

19  3d 1 (1977)).  "[N]o action for accounting may be maintained if there is an adequate remedy at

20  law."  *Cty. of Santa Clara v. Astra USA, Inc.*, No. C 05-03740 WHA, 2006 WL 2193343, at *5

21  (N.D. Cal. July 28, 2006) (citing *Faivre v. Daley*, 93 Cal. 664, 673 (1892); *Civic W. Corp.*, 66 Cal.

22  App. 3d at 14).

23      Luxul argues that it is entitled to summary judgment because the undisputed facts show

24  that no fiduciary relationship exists between the parties, the accounts in question are not "so

25  complicated that an ordinary legal action demanding a fixed sum is impracticable," and NectarLux

26  has an adequate remedy at law.  Luxul Summ. J. Mot. at 12-13.  There is no evidence in the record

27

28  Case No. 14-CV-03656-LHK
    ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT
    AND DENYING CROSS-MOTIONS FOR SANCTIONS

United States District Court
Northern District of California

33

1    of a fiduciary relationship between the parties, and NectarLux does not contend otherwise in its

2    counterclaims or briefing.  *See* Countercl.; Opp. to Luxul Summ. J. Mot.; NectarLux Summ. J.

3    Mot.

4           Additionally, NectarLux's own evidence includes the report of NectarLux's damages

5    expert, Scott E. Evans, in which Evans calculates NectarLux's contract damages.  ECF No. 176-2

6    ("Decl. of Scott Evans ISO NectarLux Summ. J. Mot."), Ex. 1.  NectarLux's sole argument to the

7    contrary is that the declaration of Alycia Singleton in support of NectarLux's motion for summary

8    judgment shows that Luxul is hiding evidence of damages such that an accounting is necessary.

9    However, for the reasons discussed in Section III.A.6, *supra*, the Court strikes the Singleton

10   Declaration and does not consider the Singleton Declaration in its analysis.

11          Moreover, to the extent NectarLux argues that an accounting is necessary because Luxul

12   failed to produce documents related to Radiant Lighting, NectarLux is incorrect because the

13   undisputed evidence shows that Luxul did produce documents related to Radiant Lighting.  ECF

14   No. 163-13 ¶¶ 3-9 (describing production of Radiant Lighting documents to NectarLux and

15   attaching exhibits documenting the production).  To the extent NectarLux's argument is instead

16   that an accounting is necessary because the Singleton Declaration is evidence that NectarLux is

17   entitled to damages for sales of products to Radiant Lighting as part of NectarLux's claims for

18   breach of contract and breach of the covenant of good faith and fair dealing, this is an argument

19   only that NectarLux is entitled to additional contract damages, not that "the accounts are so

20   complicated that an ordinary legal action demanding a fixed sum is impracticable."  *Lee*, 2010 WL

21   2635777, at *12  NectarLux may present its evidence that it is entitled to damages for sales Luxul

22   made to Radiant Lighting to the fact-finder at trial as part of NectarLux's request for contract

23   damages.  Thus, the undisputed evidence demonstrates that the accounts in question may be

24   settled by ordinary contract damages, such that NectarLux has an adequate remedy at law for any

25   breach and is not entitled to an accounting.  *See Cty. of Santa Clara*, 2006 WL 2193343, at *5

26   ("[N]o action for accounting may be maintained if there is an adequate remedy at law.").

27

28   Case No. 14-CV-03656-LHK
     ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT
     AND DENYING CROSS-MOTIONS FOR SANCTIONS

United States District Court
Northern District of California

1   Therefore, the Court GRANTS Luxul's motion for summary judgment and DENIES

2   NectarLux's motion for summary judgment as to NectarLux's counterclaim for an accounting.

3   The Court turns now to the parties' motions for sanctions.

4   **C.  Luxul's Motion for Sanctions**

5   Luxul moves for sanctions against NectarLux and NectarLux's attorneys under Rule 11 on

6   the grounds that NectarLux's counterclaims "are factually frivolous, legally frivolous, and

7   presented for an improper purpose because NectarLux was not—nor could it have been—a party

8   to the January 29, 2014 contract."  Luxul Sanctions Mot. at 8.

9   In the instant case, Luxul has not met its burden of showing that sanctions are justified.

10   *See Tom Growney Equip., Inc.*, 834 F.2d at 837.  The Court has found that NectarLux's

11   counterclaims are not based exclusively on the January 2014 Agreement.  *See supra*.

12   Additionally, the Court has found that NectarLux's counterclaims are not factually or legally

13   frivolous because the Court has denied Luxul's motion for summary judgment as to NectarLux's

14   first two counterclaims for breach of contract and breach of the implied covenant of good faith and

15   fair dealing.  *Id.*  Therefore, the Court DENIES Luxul's motion for sanctions.

16   **D.  NectarLux's Motion for Sanctions**

17   In NectarLux's motion for sanctions, NectarLux asks the Court to dismiss all of Luxul's

18   claims against NectarLux as a sanction for Luxul's alleged failure to produce documents related to

19   Radiant Lighting.  NectarLux Sanctions Mot.  NectarLux's sole evidence of Luxul's purported

20   despoliation of evidence is the Singleton Declaration.  *See id.* at 2-4.  However, the Court has

21   granted Luxul's motion to strike the Singleton Declaration for failure to comply with 28 U.S.C.

22   § 1746 because the Singleton Declaration does not contain any attestation that its contents are true.

23   *See* Section III.A.6, *supra*.

24   Moreover, the Court notes that, contrary to Singleton's statement in her declaration that

25   she does not believe Luxul produced any documents related to Radiant Lighting during discovery,

26   Singleton Decl. ¶ 12, and contrary to NectarLux's assertion in its motion for sanctions that "Luxul

27

28
Case No. 14-CV-03656-LHK
ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT
AND DENYING CROSS-MOTIONS FOR SANCTIONS

1    produced no documents that relate to Radiant Lighting," NectarLux Sanctions Mot. at 4, the

2    evidence shows that Luxul did produce documents related to Radiant Lighting to NectarLux

3    during discovery.  *See* ECF No. 163-13 ¶¶ 3-9 (describing production of Radiant Lighting

4    documents to NectarLux and attaching exhibits documenting the production).  Indeed, in its reply

5    brief, NectarLux does not dispute that Luxul produced documents related to Luxul's sales to

6    Radiant Lighting.  Reply to NectarLux Sanctions Mot. at 2.  Therefore, NectarLux's alleged basis

7    for its request for sanctions is belied by the undisputed facts in the record.  Accordingly, the Court

8    DENIES NectarLux's motion for sanctions.

9        **E.  Luxul's Request for Sanctions in Opposition to NectarLux's Motion for Sanctions**

10        In Luxul's opposition to NectarLux's motion for sanctions, Luxul requests that the Court

11    sanction NectarLux's attorneys pursuant to 28 U.S.C. § 1927 for "fail[ing] to take basic, simple

12    steps to verify whether [Luxul] produced documents regarding Radiant."  Opp. to NectarLux

13    Sanctions Mot. at 14-18.  Civil Local Rule 7-8 requires all requests for sanctions to be filed as

14    separate motions.  Luxul's request for sanctions, which is included within Luxul's opposition to

15    NectarLux's motion for sanctions, does not comply with this requirement.  Accordingly, the Court

16    DENIES Luxul's request for sanctions.  *See Haar v. City of Mountain View*, No. 10-CV-02995-

17    LHK, 2010 WL 4919478, at *4 (N.D. Cal. Nov. 12, 2010) (denying request for sanctions because

18    it was not separately filed).

19        Furthermore, the Court notes that both parties' requests for sanctions caused an

20    unnecessary expenditure of Court and party resources and should not have been filed.  As we

21    approach the August 1, 2016 trial, the Court requests that the parties be mindful of the limited

22    resources of the Court.

23    **IV.    CONCLUSION**

24        For the foregoing reasons, the Court rules as follows on the parties' cross-motions for

25    summary judgment and cross-motions for sanctions:

26    •    The Court DENIES AS MOOT NectarLux's motion for summary judgment as to Luxul's

27

28    Case No. 14-CV-03656-LHK
     ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT
     AND DENYING CROSS-MOTIONS FOR SANCTIONS

*United States District Court*
*Northern District of California*

36

United States District Court
Northern District of California

1    Claims One, Five, and Six for false designation of origin in violation of 15 U.S.C. § 1125,

2    false advertising in violation of 15 U.S.C. § 1125(a), and false advertising in violation of Cal.

3    Bus. & Prof. Code § 17500 *et seq.* because the parties filed a stipulation to dismiss these

4    claims with prejudice after the parties filed oppositions to the cross-motions for summary

5    judgment, and the Court approved the parties' stipulation.

6    • The Court GRANTS NectarLux's motion for summary judgment as to Luxul's Claim Two for

7      violation of the UCL.

8    • The Court GRANTS NectarLux's motion for summary judgment as to Luxul's Claim Three

9      for breach of contract.

10   • The Court GRANTS NectarLux's motion for summary judgment as to Luxul's Claim Four for

11     breach of the implied covenant of good faith and fair dealing.

12   • The Court GRANTS NectarLux's motion for summary judgment as to Luxul's Claim Seven

13     for copyright infringement.

14   • The Court DENIES NectarLux's motion for summary judgment as to Luxul's Claim Eight for

15     an account stated.

16   • The Court GRANTS Luxul's motion for summary judgment as to NectarLux's Counterclaim

17     One for breach of the January 2014 Agreement.  The Court DENIES Luxul's motion for

18     summary judgment as to NectarLux's Counterclaim One for breach of the April 2014

19     Agreement.  The Court DENIES NectarLux's motion for summary judgment as to

20     NectarLux's Counterclaim One for breach of contract.

21   • The Court GRANTS Luxul's motion for summary judgment as to NectarLux's Counterclaim

22     Two for breach of the implied covenant of good faith and fair dealing as to the January 2014

23     Agreement.  The Court DENIES Luxul's motion for summary judgment as to NectarLux's

24     Counterclaim Two for breach of the implied covenant of good faith and fair dealing as to the

25     April 2014 Agreement.  The Court DENIES NectarLux's motion for summary judgment as to

26     NectarLux's Counterclaim Two for breach of the implied covenant of good faith and fair

27

28   Case No. 14-CV-03656-LHK
     ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT
     AND DENYING CROSS-MOTIONS FOR SANCTIONS

1   dealing.

2   • The Court GRANTS Luxul's motion for summary judgment and DENIES NectarLux's motion

3      for summary judgment as to NectarLux's Counterclaim Three for an accounting.

4   • The Court DENIES Luxul's motion for sanctions.

5   • The Court DENIES NectarLux's motion for sanctions.

6          Thus, the following three claims remain for trial:

7   1.   Luxul's Claim Eight for an account stated.

8   2.   NectarLux's Counterclaim One for breach of the April 2014 Agreement.

9   3.   NectarLux's Counterclaim Two for breach of the implied covenant of good faith and fair

10      dealing as to the April 2014 Agreement.

11  **IT IS SO ORDERED.**

12

13  Dated: June 16, 2016

14                                         _____

15                                         LUCY H. KOH
                                           United States District Judge
16

17

18

19

20

21

22

23

24

25

26

27                                         38

28  Case No. 14-CV-03656-LHK
    ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT
    AND DENYING CROSS-MOTIONS FOR SANCTIONS